IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Accident Insurance Company, Inc., a South Carolina Corporation, | ) | Civil Action No. 3:16-cv-2621-JMC |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| U.S. Bank National Association and U.S. Bank Trust N.A., | ) | |
| | ) | |
| Defendants | ) | |

---

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT U.S. BANK NATIONAL ASSOCIATION'S MOTION TO DISMISS

---

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT......................................................................................... 1

BACKGROUND FACTS................................................................................................. 3

   I.    The Parties...................................................................................................... 3

   II.   U.S. Bank Entered Into the Reinsurance Trust Agreement to Serve as Trustee
for the Sole Benefit of AIC................................................................................. 3

   III.  U.S. Bank Breached its Duties to AIC................................................................. 4

LEGAL STANDARD....................................................................................................... 6

ARGUMENT.................................................................................................................... 7

   I.    The Complaint Properly Alleges U.S. Bank Breached Its Contractual
Obligations........................................................................................................ 7

       A. U.S. Bank Breached its Duty to Perform a Pre-Admission Determination
for all Assets Offered for Inclusion in the AIC Trust..................................... 9

       B. U.S. Bank Breached its Duty to Determine that Substituted Assets Were of
Equivalent Value Prior to Allowing Substitution........................................... 11

         1.   Deposit of Assets into the Trust Account................................................. 11

         2.   Withdrawal of Assets from the Trust Account…….............................. 12

         3.   Redemption, Investment and Substitution of Assets................................ 12

       C. U.S. Bank Breached its Duty to Provide an Accounting of AIC Trust's
Assets………………………………………………………………………… 13

   II.   The Complaint Properly Alleges U.S. Bank Breached Its Fiduciary Duties...... 15

       A. U.S. Bank and AIC had a Fiduciary Relationship.......................................... 16

       B. AIC May Allege Contract _and_ Fiduciary Duty Claims.................................. 21

       C. The Trust Agreement does not Eliminate U.S. Bank's Fiduciary Duty......... 23

i

III.   The Complaint Properly Alleges U.S. Bank was Negligent/Grossly Negligent.   25

IV.    The Complaint Properly Alleges a Claim for Negligent Misrepresentation.......   27

CONCLUSION.................................................................................................................   30

## TABLE OF AUTHORITIES

**Federal Cases**                                                                                 **Page(s)**

*Ashby & Geddes, P.A. v. Brandt,*
    806 F. Supp. 2d 752 (D. Del. 2011)…………………............……………………...   16, 24

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)..........................................................................................................   7

*Bailey v. Virginia High Sch. League, Inc.,*
    488 F. App'x 714 (4th Cir. 2012) …………………............……………………...   6

*Bell v. Twombly,*
    550 U.S. 544 (2007)..........................................................................................................   7

*Companion Prop. & Cas. Ins. Co. v. U.S. Bank Nat'l Ass'n,*
    Civil Action No. 3:15-cv-01300-JMC, 2015 WL 7568613
    (D.S.C. Nov. 24, 2015)…………………………………………......………………....   8, 10-11, 29

*Companion Prop. & Cas. Ins. Co. v. U.S. Bank Nat'l Ass'n,*
    Civil Action No. 3:15-cv-01300-JMC, 2016 WL 3027552
    (D.S.C. May 27, 2016)....................................................................................................   29

*Francis v. Giacomelli*
    588 F.3d 186 (4th Cir. 2009)..........................................................................................   6

*In re Oakwood Homes Corp.,*
    340 B.R. 510 (Bankr. D. Del. 2006)....................……………………………………....   24

*Menton v. Nestle Prepared Foods Co.,*
    No. 7:14-cv-02542-JMC, 2015 WL 1038121 (D.S.C. Mar. 10, 2015)..........................   7

*Micro Focus (US), Inc. v. Ins. Servs. Office, Inc.,*
    125 F. Supp. 3d 497 (D. Del. 2015).................................................................................   8

*Mylan Labs, Inc. v. Matkari,*
    7 F.3d 1130 (4th Cir. 1993)…………………............……………………………...   6

*Ostrzenski v. Seigel,*
    177 F.3d 245 (4th Cir. 1999)........................……………………………………   6

*Republican Party of N.C. v. Martin,*
    980 F.2d 943 (4th Cir. 1992)...........................................................................................   6

*Szulik v. State Street Bank & Trust Co.,*
    935 F. Supp. 2d 240 (D. Mass. 2013)……….......………………………………… 14 - 15

*Wright v. N.C.,*
    787 F.3d 256, 263 (4th Cir. 2015)......................…………………………...... 7

**State Cases**

*Abbott Laboratories v. Owens,*
    2014 WL 8407613 (Del. Super. Ct. 2014)…………………………………............. 26

*AM Gen. Holdings, LLC v. Renco Group, Inc.,*
    C.A. No. 7639-VCN, 2013 WL 5863010 (Del. Ch. Oct. 31, 2013)…….....................… 22 - 23

*Anglo Am. Sec. Fund, L.P. v. S.R. Global Int'l Fund, L.P.,*
    829 A.2d 143 (Del. Ch. 2003).............…………………………………………… 17, 21

*Auriga Capital Corp. v. Gatz Props.,*
    40 A.3d 839 (Del. Ch. 2012)…….............…………………………………….. 16

*Beard Research, Inc. v. Kates,*
    8 A.3d 573 (Del. Ch. 2010)...........…………………………………………… 17

*Bomarko, Inc. v. Int'l Telecharge, Inc.,*
    794 A.2d 1161 (Del. Ch. 1999)…………………………...............…………………… 17

*Cargill, Inc. v. JWH Special Circumstance, LLC,*
    959 A.2d 1096 (Del. Ch. 2008) …………………………...............………………… 26

*Christiana Marine Service Corp. v. Texaco Fuel and Marine Marketing, Inc.,*
    2002 WL 1335360 (Del. Super. Ct. 2002) ……………………………….............. 28

*Coleman v. Newborn,*
    948 A.2d 422 (Del. Ch. 2007) …….......…………………………........................ 16

*Edelstein v. Goldstein,*
    2011 WL 721490 (Del. Super. Ct. 2011)..…………………………………............. 26

*Estate of Eller v. Bartron,*
    31 A.3d 895 (Del. 2011)…….............…………………………………….. 16

*Feeley v. NHAOCG, LLC,*
    62 A.3d 649 (Del. Ch. 2012)…….............…………………………………….. 16, 23

*Grunstein v. Silva,*
    C.A. No. 3932-VCN, 2009 WL 4698541 (Del. Ch. Dec. 8, 2009)………..................…..    22

*Harris v. Carter,*
    582 A.2d 222 (Del. Ch. 1990)……………...…………………………………………..    26

*Hogg v. Walker,*
    622 A.2d 648 (Del. 1993)……………………………………………...............…..…    26

*In re USA Cafes, L.P. Litig.,*
    600 A.2d 43 (Del. Ch. 1991)…........……………………………..………………    17

*Interim Healthcare, Inc. v. Spherion Corp.,*
    884 A.2d 513 (Del. Super. 2005)……………………………...........…………………    8

*Joyce v. Cuccia,*
    No. CIV. A. 14953, 1997 WL 257448 (Del. Ch. May 14, 1997)……..........................…..    17

*Lee v. Pincus,*
    C.A. No. 8458-CB, 2014 WL 6066108 (Del. Ch. Nov. 14, 2014).....................…………    22

*Lorillard Tobacco Co. v. Am. Legacy Found.,*
    903 A.2d 728 (Del. 2006)……..............…………………………………………………    14

*Malone v. Brincat,*
    722 A.2d 5 (Del. 1998)……...............……………………………………………………    17, 21

*McMahon v. New Castle Assocs.,*
    532 A.2d 601 (Del. Ch. 1987)………...............……………………………………………    16, 24

*Mennen v. Wilmington Trust Co.,*
    C.A. No. 8432-ML, 2015 WL 1914599 (Del. Ch. Apr. 24, 2015)…..................……...    21

*Metro Ambulance, Inc. v. E. Med. Billing, Inc.,*
    Civ. A. No. 13929, 1995 WL 409015 (Del. Ch. July 5, 1995)………...................……..    16

*Mills Acquisition Co. v. Macmillan, Inc.,*
    559 A.2d 1261 (Del. Super. 1988)...............……………………………………………..    17

*Nemec v. Shrader,*
    991 A.2d 1120 (Del. 2010)……...............…………………………………………………    21 - 23

*OTK Assocs., LLC v. Friedman,*
    85 A.3d 696 (Del. Ch. 2014)……………………...............……………………………    23

*Paradee v. Paradee,*
    C.A. No. 4988-VCL, 2010 WL 3959604 (Del. Ch. Oct. 5, 2010)…...................….....    21

*RJ Assoc., Inc. v. Health Payors' Org. Ltd. P'ship,*
    1999 WL 550350 (Del. Ch. July 16, 1999)……….....................…………………    21

*Schuss v. Penfield Partners, L.P.,*
    2008 WL 2433842 (Del. Ch. June 13, 2008)...................……………………………    22

*Stewart v. Wilmington Trust SP Servs., Inc.,*
    112 A.3d 271 (Del. Ch. 2015)………….............…………………………………….    16 - 17

*VLIW Tech., LLC v. Hewlett-Packard Co.,*
    840 A.2d 606 (Del. 2003)……...........…………………………………………….    8

*White v. Lamborn,*
    Civil A. No. 4471, 1977 WL 9612 (Del. Ch. Mar. 15, 1977)………...............….......    16

**Federal Statutes**

§ Rule 10(b) and 10(b)-5 of the Securities and Exchange Act of 1934………...........….......    30

**State Statutes**

12 Del. C. § 3303(a)…..…………………………………………………………………    25

12 Del. C. § 3316......…………………………………………………………………    13

**Rules**

Fed. R. Civ. P. 8(a)…..................................................................................................    2, 5-6,
                                                                                                                                13-14

Fed. R. Civ. P. 12(b)(6)...............................................................................................    2, 6, 8

**Other Authority**

*Black's Law Dictionary* (10th ed. 2014)…………………………………………...........    14

Restatement (Second) of Torts § 552.........................................................................    27

Plaintiff Accident Insurance Company, Inc. ("AIC"), a South Carolina corporation, respectfully submits this memorandum of law in opposition to the Defendant U.S. Bank National Association's ("U.S. Bank") Motion to Dismiss (ECF No. 11).

## PRELIMINARY STATEMENT

This case is about U.S. Bank's failures in its role as trustee over AIC's reinsurance trust. That trust was created with the expressed intent for it to contain only cash or "Eligible Securities" – liquid, freely-negotiable stocks and bonds. However, U.S. Bank failed to perform its essential trustee function of maintaining trust assets by engaging in various acts of wrongdoing in violation of common law and the operative trust agreement ("AIC Trust Agreement") between U.S. Bank and AIC. Between January 2014 and February 2014, while U.S. Bank was purportedly acting as a trustee (and receiving fees), the trust account was depleted of freely-negotiable assets and blue chip securities and replaced with investments that were not negotiable and had little or no value, in direct contravention of the terms of the AIC Trust Agreement.

There can be no dispute that the assets held in trust were worth far less than the value stated by U.S. Bank on the account statements provided to AIC. As a result of these breaches, AIC sustained significant damage. Relying on U.S. Bank's statements, AIC built liabilities under a reinsurance program that was not adequately capitalized, as required by South Carolina law. As a result, AIC was unable to access or take credit for necessary capital in the trust account, and it lost the ability to unwind the transactions – leaving it with many worthless assets that cannot be monetized.

AIC's Complaint allegations are straightforward: U.S. Bank breached its duties to AIC as trustee, which were imposed by the AIC Trust Agreement. Specifically, U.S. Bank failed to determine that assets deposited into the trust account were freely negotiable and failed to provide

statements that accurately represented the asset values. (Compl. ¶¶ 32(a)-(b), citing Sections 8(a) and 8(b) of the Trust Agreement dated September 25, 2013, and attached as Exhibit 2 to the Complaint).

U.S. Bank's response to these claims is to raise numerous factual issues regarding its conduct in an attempt to dismiss – at the Rule 12(b)(6) stage – well-pleaded legal claims. In essence, U.S. Bank asserts that it was paid fees to act as a passive overseer of the trust account without any responsibilities. This assertion defies the actual terms of the AIC Trust Agreement, and the Complaint alleges sufficient allegations to support the breach of contract claim.

AIC's Complaint also adequately alleges U.S. Bank breached common law duties by engaging in tortious conduct. U.S. Bank argues that it owes no fiduciary duty to AIC because the AIC Trust Agreement did not expressly create a fiduciary duty. (Memo. in Supp. pp. 11-12, ECF 11-1). As set forth below, the AIC Trust Agreement does not foreclose a fiduciary duty claim. The Complaint also adequately states claims for relief under other tort theories, including negligence/gross negligence and negligent misrepresentation. U.S. Bank formed a relationship of trust and undertook fiduciary duties as trustee. U.S. Bank's negligent performance of its duties arising from this relationship far surpass the requisite pleading at this this stage of litigation.

In sum, U.S. Bank served as a trustee; it owed contractual duties imposed by the AIC Trust Agreement and tort-based duties arising out of its special relationship with AIC. U.S. Bank breached those duties. U.S. Bank's motion to dismiss should be denied.

## BACKGROUND FACTS

### I.    The Parties

AIC.  AIC is an insurance company organized under the laws of South Carolina and with its principal place of business in Lexington County, South Carolina. (Compl. ¶ 1).

U.S. Bank.  Defendant U.S. Bank is a nationally chartered bank with its principal place of business in Minnesota.  (*Id.* ¶ 2).  Freestone Insurance Company (formerly known as Dallas National Insurance Company) is a reinsurance company with which AIC entered into a "fronted" insurance program ("the Program").  (*Id.* ¶¶ 10, 11, and 24).  In fronted insurance arrangements, the reinsurer (here, Freestone) bears the actual risk of program performance and the insurance company (here, AIC) receives a fee.  (*Id.* ¶ 24)

U.S. Bank is a trustee and fiduciary to AIC pursuant to the AIC Trust Agreement, which identifies Freestone as Grantor, and AIC as Beneficiary.  (*Id.* ¶ 30, Ex. 2).  Additionally, U.S. Bank is the custodian of and is involved in the management of certain Destra Unit Investment Trusts ("Destra UITs"), as well as Camelot Holdings Trust shares ("Camelot").  (*Id.* ¶¶ 42-43).

### II.    U.S. Bank Entered Into the Reinsurance Trust Agreement to Serve as Trustee for the Sole Benefit of AIC.

Under the AIC Trust Agreement, U.S. Bank held certain assets in a Trust Account for the sole benefit of AIC.  (*Id.* ¶¶ 33, 35.)  The account's assets provided collateral for the fronted insurance program between AIC and Freestone and secured the Freestone's obligations under the program. (*Id.* ¶ 27.)  The trust's purpose was to provide liquid, readily available collateral assets to AIC to satisfy all of Freestone's reinsurance obligations in the event Freestone became insolvent.  (*Id.* ¶ 28).

Only cash, certificates of deposit, and other Eligible Securities[1] could be deposited into the Trust Account. (*Id.* ¶ 31, Ex. 2, ¶ 2(b)). As trustee and fiduciary, U.S. Bank was required to determine, before accepting any asset submitted for deposit, that AIC would be able to freely negotiate the proposed asset without consent or signature from Freestone, or any person or entity other than U.S. Bank. (*Id.* ¶ 32(b), Ex. 2, ¶ 8(b)). U.S. Bank also was required to furnish AIC monthly statements with an accounting of all trust assets in the Trust Account. (*Id.* ¶ 32(a)).

Also under the AIC Trust Agreement, U.S. Bank accepted duties and liabilities for losses or harm to AIC arising out of either the existence, genuineness, or value of any of the assets in the Trust Account if such losses or harm were caused by *any* "action or omission constitut[ing] negligence, lack of good faith or willful misconduct on the part of" U.S. Bank as trustee. (*Id.*, Ex. 2, ¶ 8(l)).

### III.     U.S. Bank Breached its Duties to AIC.

At the beginning of U.S. Bank's role as trustee in January 2014, the trust account contained only cash and other Eligible Securities, thereby adequately protecting AIC's obligations. (*Id.* ¶ 35). Specifically, the trust account contained assets valued at more than $9 million. (*Id.*).

In January 2014, U.S. Bank approved numerous transactions, including: (1) the substitution of assets for an investment in Camelot; and (2) the substitution of assets for an investment in the Destra UITs. (*Id.* ¶ 37-39). By February 28, 2014, the trust account held: (1) approximately $87.70 in cash; (2) Destra UITs purportedly worth $6,891,423.29, but worth substantially less; (3) Camelot Shares purportedly worth $193,000.00; and (4) Cook County II series A municipal bonds valued at $2,604,408.05. (*Id.* at ¶ 55).

---

[1] "Eligible Securities" is defined by the AIC Trust Agreement to include certificates of deposit along with other high quality securities so long as they are not issued by Freestone or U.S. Bank's parent or subsidiary entities. AIC Trust Agreement § 12(f).

These substitutions violated the AIC Trust Agreement because U.S. Bank (the Trustee) was required to meet the following contractual obligations to AIC (Beneficiary) under the Trust Agreement:

1. [U.S. Bank] shall receive Assets from [Freestone], deposit the Assets into the Trust Agreement and hold the Assets in the Trust Account for safekeeping, subject to the terms of this Agreement. All of the Assets of the Trust Account shall be held by [U.S. Bank] in physical or customary book entry form at [U.S. Bank's] offices in the United States. (*Id.*, Ex. 2 ¶ 2(a));

2. Before accepting any Asset for deposit into the Trust Account, [U.S. Bank] shall determine that such Asset is in such form that [AIC] whenever necessary may, or [U.S. Bank] upon direction by [AIC] will, negotiate such Asset without consent or signature from [Freestone] or any person or entity other than [U.S. Bank] in accordance with the terms of this Agreement. (*Id.* ¶ 32, Ex. 2 ¶ 8(b)); and

3. [U.S. Bank] shall furnish to [Freestone] and [AIC] an accounting of all Assets in the Trust Account upon its inception and thereafter at intervals no less frequent by providing a monthly "statement of all Assets." (*Id.* ¶ 32, Ex. 2, ¶ 8(a)).

The substitutions permitted by U.S. Bank in the form of investments in Destra UITs and other stocks and securities violated these provisions because U.S. Bank did not make any determination that the substituted assets were freely negotiable by AIC. (*Id.* ¶ 47). The assets in the Trust Account are not freely negotiable and worth significantly less than the amounts shown on U.S. Bank's statements. (*Id.* ¶ 110). AIC has demanded that U.S. Bank liquidate and negotiate the Destra UITs in the Trust Account, but U.S. Bank has refused to liquidate and negotiate these investments on the basis that (1) third-party entities, not parties to the Trust Agreement, would be required to liquidate and negotiate the Destra UITs; and (2) there was an issue with the documentation related to the transfer of the Destra UITs in the Trust Account. U.S. Bank was responsible for ensuring that funds in the Trust Account were negotiable. (*Id.* ¶¶ 57-58).

Given U.S. Bank's role as trustee, AIC reasonably and justifiably relied on U.S. Bank's conduct and representations and continued the reinsurance fronting Program under the mistaken belief that the losses were adequately protected by collateral in the Trust Account. As a direct and proximate cause of U.S. Bank's failures, the Trust Account had significantly less value than it did prior to the asset substitution because Destra UITs are worthless. *Id.*

AIC commenced this action to right the wrongs committed by U.S. Bank.[2]

## LEGAL STANDARD

A Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted); *see also Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) . . . does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."). To be legally sufficient, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

The Court should not grant a Rule 12(b)(6) motion unless it appears certain that a plaintiff can prove no set of facts that would support the claim and entitle relief. *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). When considering a Rule 12(b)(6) motion, the Court should accept as true all well-pled allegations and should view the complaint in the light most favorable to the plaintiff. *Ostrzenski v. Seigel*, 177 F.3d 245, 251 (4th Cir. 1999); *Mylan Labs.*, 7

---

[2] In ruling on U.S. Bank's motion to dismiss, the Court should not consider any matters outside the Complaint or documents not attached to and integral to the Complaint or it will convert the Motion into a motion for summary judgment. *Bailey v. Virginia High Sch. League, Inc.,* 488 F. App'x 714, 716 (4th Cir. 2012). To the extent the Krauss Declaration attached to U.S. Bank's motion to dismiss refers to documents that are not referenced in or integral to the issues raised in the Complaint, those documents should not be considered at the motion to dismiss stage.

F.3d at 1134.  A complaint will prevail over a motion to dismiss when it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell v. Twombly*, 550 U.S. 544, 570 (2007)).  Courts can determine that a claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 551 U.S. at 556).

A complaint "is to be construed liberally so as to do substantial justice."  *Wright v. N.C.*, 787 F.3d 256, 263 (4th Cir. 2015). A court should not grant a motion to dismiss "unless it appears certain that the plaintiff can prove no set of facts that would support her claim and would entitle her to relief." *Menton v. Nestle Prepared Foods Co*., No. 7:14-cv-02542-JMC, 2015 WL 1038121, at *4 (Childs, J.) (D.S.C. Mar. 10, 2015).

## ARGUMENT

U.S. Bank seeks dismissal of all claims, including: (1) breach of contract, (2) breach of fiduciary duty, (3) negligence/gross negligence, (4) violation of Rules 10(b) and 10(b)-5 of the Securities and Exchange Act of 1934, and (5) negligent misrepresentation.  For the following reasons, U.S. Bank's motion should be denied.

### I.     The Complaint Properly Alleges U.S. Bank Breached Its Contractual Obligations.

The Complaint sufficiently pleads all elements of breach of contract.  Specifically, AIC alleges U.S. Bank accepted Destra UITs into the AIC Trust without the required pre-acceptance negotiability determination mandated by the AIC Trust Agreement.  (Compl. ¶¶ 47-48, 117).  AIC also alleges U.S. Bank failed to provide an accounting of all the Trust's assets since the monthly account statements generated by U.S. Bank did not include security identification numbers corresponding to the assets the trust actually contained.  (*Id.*, ¶¶ 45-46, 117).  Each of these failures

violates a specific duty U.S. Bank agreed to accept upon entering the AIC Trust Agreement.  In the Complaint, AIC alleges all required elements of a breach of contract claim under Delaware law.  Moreover, this Court denied U.S. Bank's motion to dismiss similar claims last year involving the same unnegotiable Destra units and a similarly-situated South Carolina insurer.  *Companion Prop. & Cas. Ins. Co. v. U.S. Bank Nat'l Ass'n*, Civil Action No. 3:15-cv-01300-JMC, 2015 WL 7568613, at \*3-6 (D.S.C. Nov. 24, 2015).  Accordingly, U.S. Bank's motion to dismiss AIC's breach of contract claim should be denied.

Under Delaware law, a breach of contract claim arises from proof of the defendant's contractual obligation as well as proof the defendant's failure to meet that obligation caused the plaintiff damage.  *Interim Healthcare, Inc. v. Spherion Corp.*, 884 A.2d 513, 548 (Del. Super. 2005).  To defeat a motion to dismiss, a breach of contract complaint must allege: (1) the existence of a contract; (2) breach of an obligation imposed by the contract; and (3) resulting damage to the plaintiff.  *Micro Focus (US), Inc. v. Ins. Servs. Office, Inc.*, 125 F. Supp. 3d 497, 500 (D. Del. 2015) (citing *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003)).  In fact, "detailed factual allegation[s] concerning the extent and effect of the breach is not required by the plausibility standard" Rule 12(b)(6) imposes.  *VLIW Tech., LLC*, 125 F. Supp. 3d at 501. Additionally, U.S. Bank may not support its motion by taking issue with AIC's interpretation of the AIC Trust Agreement's terms or by arguing it did not actually breach the contract.  *Id.* (explaining a defendant's dispute over a contract's meaning to be "a question for another day").

### A. U.S. Bank Breached its Duty to Perform a Pre-Admission Determination for all Assets Offered for Inclusion in the AIC Trust.

U.S. Bank consistently portrays its role in the AIC Trust Agreement as little more than scrivener for AAS valuations and powerless bystander to Freestone's asset manipulations. However, the AIC Trust Agreement does "mean[] what it says" (Def. U.S. Bank Mem. at 10) when it imposes on U.S. Bank an obligation to determine a key component of any asset before accepting it into the AIC Trust:

> *Before accepting any Asset for deposit to the Trust Account*, [U.S. Bank] shall determine that such Asset is in such form that [AIC] whenever necessary may, or [U.S. Bank] upon direction by [AIC] will, negotiate such Asset without consent or signature from [Freestone] or any person or entity other than [U.S. Bank] in accordance with the terms of this Agreement.

(Compl. ¶¶ 32(b), 116) (quoting AIC Trust Agreement § 8(b)) (emphasis added).

AIC alleges U.S. Bank breached this duty willfully and in bad faith by failing to ensure the Destra UITs presented for inclusion in the AIC Trust in January 2014 complied with the contractually required form.  (*Id.* ¶¶ 47-48, 117).   In fact, after Freestone's financial distress became evident and AIC made efforts to liquidate and negotiate AIC Trust's Destra units, U.S. Bank refused to do so, citing paperwork issues that impaired the units' negotiability.  (*Id.* ¶ 58). U.S. Bank effectively admitted its Section 8(b) violation by denying AIC's demand to negotiate Destra units and taking the position that only a third party could make such a demand. (*Id.* ¶ 57).

As the Complaint alleges, U.S. Bank's breach of its Section 8(b) duty was a substantial factor in the depletion of AIC Trust's legitimate assets. (*Id.* ¶ 49).  Had U.S. Bank made the initial determination Section 8(b) mandated, then it would have known Destra UITs were ineligible for inclusion in AIC Trust for multiple reasons, including their noncompliance with Section 8(b)'s negotiability standard.  *Id.*  U.S. Bank's failure to honor its contractual obligations caused AIC substantial losses.  When Freestone sustained its Destra-induced financial collapse, it defaulted on

obligations to AIC under its insurance fronting arrangement and left AIC with the duty to pay claims. (*Id.* ¶ 110). AIC Trust, for which U.S. Bank served as trustee, was AIC's protection from financial injury in the event of Freestone's insolvency. (*Id.* ¶ 28). AIC Trust was valuable to AIC *only* if its assets could be easily converted to cash to process and pay insurance claims. (*Id.* ¶¶ 27-28). U.S. Bank was well aware of AIC Trust's express purpose when it agreed to serve as trustee. AIC Trust Agreement at 1, Recital No. 2 (stating that trust assets were to "secure payments" AIC may be required to make "in connection with the Reinsurance Agreements").

Since AIC Trust contained overvalued, unnegotiable Destra UITs that U.S. Bank improperly admitted to the trust, AIC did not have access to the collateral it was relying on when Freestone defaulted. (*Id.* ¶ 112). As a result, AIC has been forced to turn to its own reserves and operating funds to meet claim obligations arising from its fronting arrangement with Freestone. (*Id.* ¶ 113). The resulting financial strain has damaged AIC's standing throughout the insurance industry—especially with insurance rating agencies and prospective customers. Ultimately, U.S. Bank's failure to meet its Section 8(b) duty directly caused AIC substantial damages, including loss of collateral, operating losses, lost profits, and reputational harm. (*Id.* ¶ 119).

Additionally, U.S. Bank cannot credibly argue it does not have the pre-admission negotiability determination duty Section 8(b) imposes or that the Complaint fails to allege a plausible claim for its violation. The Complaint properly alleges all required elements of this claim. Moreover, in *Companion Property and Casualty Insurance Co. v. U.S. Bank National Association*, this Court held that a similarly-situated insurer stated a breach of contract claim against U.S. Bank based on contract language nearly identical to Section 8(b). *See* 2015 WL 7568613, at *4 n.4. There, U.S. Bank acknowledged the insurer's Complaint plausibly alleged the required elements of a breach of contract claim. *Id.* (noting U.S. Bank's admission that the

insurer's breach of contract claim "cannot be dismissed").[3]  What U.S. Bank conceded in *Companion* applies with equal force to AIC's breach of contract claim.  While U.S. Bank may dispute the substance of AIC's allegations, the Complaint alleges the three required elements of a breach of contract cause of action and U.S. Bank's motion should be denied.

> ### B.  U.S. Bank Breached its Duty to Determine that Substituted Assets Were of Equivalent Value Prior to Allowing Substitution.

U.S. Bank incorrectly argues that it had no duty to value the Destra UITs that were deposited into the Trust Account, relying on the exculpatory provision of Section 2(b) of AIC Trust Agreement.   That provision discusses the original deposit of assets after the Trust Account is first established, and provides:

> ### Deposit of Assets into the Trust Account.
>
> Section 2(a):   [U.S. Bank] shall receive Assets from [Freestone], deposit the Assets into the Trust Account and hold the Assets in the Trust Account for safekeeping, subject to the terms of this Agreement. All of the Assets of the Trust Account shall be held by [U.S. Bank] in physical or customary book entry form at the [U.S. Bank's] offices in the United States.
>
> Section 2(b):   The Assets shall consist only of cash (United States tender) and Eligible Securities (as hereinafter defined). **[U.S. Bank] shall have no duty or responsibility with respect to the qualification, character or valuation of the Assets deposited in the Trust Account**, except to determine whether the Assets are in such form that [AIC], or [U.S. Bank] upon direction of the [AIC], may whenever necessary negotiate any such Assets without consent or signature from the [Freestone] or any other person or entity. (Emphasis added)

However, once the Trust Account is established, and the Trustee receives and deposits the original assets from Freestone, the exculpatory language of Section 2(b) is not controlling.  AIC

---

[3] U.S. Bank did challenge the breach of contract claim in *Companion*, based on a purportedly insufficient connection between the assets for which U.S. Bank was trustee and the reinsurance obligations they were intended to secure.  2015 WL 7561613, at *4-5.  U.S. Bank does not make that argument in this case.

does not allege that U.S. Bank breached a duty or responsibility with respect to the qualification, character, or valuation of the assets deposited when the Reinsurance Trust was first established. Instead, AIC takes issue with U.S. Bank's conduct upon substituting the original assets for the Destra UITs.

Once the Trust is established, the Trustee shall not allow any substitutions unless the substitution is subject to Section 3(a) and Section 5 of the Trust Agreement.

### Withdrawal of Assets from the Trust Account.

> Section 3(c):  Subject to paragraph (a) of Section 3 and Section 5 of this Agreement, [U.S. Bank] **shall allow no substitution <u>or</u> withdrawal of any Assets from the Trust Account**.  (Emphasis added).

Sections 3(a) of AIC Trust Agreement provides the circumstances under which AIC may *withdraw* assets from the Trust Account after it is established, and provides:

> Section 3(a):  Without notice or consent of [Freestone], [AIC] shall have the right, at any time, to withdraw from the Trust Account, upon written notice to [U.S. Bank] (a <u>Withdrawal Notice</u>), such Assets as are specified in the Withdrawal Notice.  *** [AIC] will need present no statement or document in addition to a Withdrawal Notice in order to withdraw any Assets.

Section 5 of AIC Trust Agreement provides the circumstances under which U.S. Bank can accept *substitute* assets at the direction of Freestone:

### Redemption, Investment and Substitution of Assets.

> Section 5(b):  [Freestone] may direct [U.S. Bank] to accept substitute Assets for other Assets held in the Trust Agreement.

> Section 5(c):    [Freestone] represents and warrants that each Investment Order or Asset substitution will involve an investment in Eligible Securities satisfying the requirements of Applicable Law regarding investments in the Trust Account.  [U.S. Bank] has no responsibility for determining whether any Assets invested pursuant to an Investment Order or Asset substitution are made in Eligible Securities that comply with the requirements of Applicable Law regarding investments in the Trust Account.

When the power to substitute is the power chosen to create an intentionally defective income trust, Delaware law confirms that, notwithstanding the terms of a governing instrument, the fiduciary responsible for investment decisions has a "fiduciary duty" to determine that the substituted property is of equivalent value to the property withdrawn. *See* 12 Del. C. § 3316 ("Except as otherwise expressly provided by the terms of a governing instrument, if a trustor has a power to substitute property of equivalent value, the fiduciary responsible for investment decisions has a fiduciary duty to determine that the substituted property is of equivalent value prior to allowing the substitution.").

In this case, Delaware law supplies the valuation duty because the paragraphs relating to U.S. Bank's acceptance of substituted assets does not provide otherwise.   This is a proper basis for AIC's breach of contract cause of action, such that the claim should not be dismissed.

### C.  U.S. Bank Breached its Duty to Provide an Accounting of AIC Trust's Assets.

AIC also alleges U.S. Bank breached its duty under Section 8(a) of AIC Trust Agreement. (*Id.*, ¶ 116 (citing AIC Trust Agreement §§ 8(a)-(b)); *see also* Compl. ¶ 32(a)).  Pursuant to this section, U.S. Bank was required to furnish AIC with "an accounting of all Assets in the Trust Account" by providing a monthly "statement of all Assets."  The Complaint focuses on the account statement covering January 2014, the period in which Destra units were fraudulently substituted into AIC Trust. (*Id.* at ¶¶ 44-45).  The January 2014 statement cannot be said to provide an accounting of all AIC Trust's assets because it did not even accurately or consistently identify assets the trust contained.

Financial instruments, including unit investment trusts, are classified and identified by alphanumeric markers created by the Committee on Uniform Securities Identification Procedures ("CUSIP"). (*Id.* ¶ 45 and n. 5).  CUSIP numbers are a crucial component of how a trust's assets

are identified by investors and accounted for by parties in U.S. Bank's position. At the very least, the duty to provide an "accounting" required U.S. Bank to submit a "rendition of [the] account" and the assets it contained. *Black's Law Dictionary* (10th ed. 2014); *see also Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 738 (Del. 2006) (holding that courts may use a dictionary to determine an undefined contract term's plain and ordinary meaning). U.S. Bank breached its Section 8(a) duty to "account" by forming and submitting to AIC an account statement pegging AIC's Destra unit holdings to CUSIP numbers that referred to non-trust assets or to no asset at all. (Compl. ¶¶ 45, 47). AIC relied on statements it received from U.S. Bank, and AIC's financial losses were proximately caused by U.S. Bank's failure to account for AIC Trust's assets. (Compl. ¶¶ 119, 151, 162).

Courts have held that similar allegations properly state a claim for breach of contract. In *Szulik v. State Street Bank & Trust Co.*, 935 F. Supp. 2d 240 (D. Mass. 2013), the plaintiffs alleged their bank and trust company was liable for losses they sustained when the plaintiffs' investment advisor drained their trust account of valuable assets and inserted suspicious, illiquid replacements. *Id.* at 249. The bank had a contractual obligation to provide periodic statements accounting for the assets, and the plaintiffs alleged the duty was breached when the statements identified the suspicious replacement securities with fake CUSIP numbers. *Id.* at 248, 252. The plaintiffs alleged in their complaint that the bank listed CUSIP numbers for all of the account's holdings even though the CUSIP issuing agency never assigned numbers to the assets. The complaint also alleged a CUSIP number is "the hallmark of a legitimate domestic security." *Id.* at 265. Finally, the complaint alleged the bank's decision to assign false CUSIP numbers created an air of legitimacy for the suspicious assets that contributed to the plaintiffs' damages. *Id.*

The *Szulik* court held these allegations properly stated a claim for violation of the bank's contractual duty to provide account statements. *Id.* Even without an explicit contractual duty to provide accurate CUSIP numbers, the bank breached its more general duty to provide account statements when it chose to insert fraudulent CUSPIDs. *Id.* at 265-66. Accordingly, the court found that such allegations were more than sufficient to survive the defendant bank and trust company's motion to dismiss.

Here, U.S. Bank had an analogous duty to provide account statements. AIC alleges similar use of false CUSIP numbers in an effort to confer legitimacy on worthless Destra UITs. Thus, the Complaint properly alleges U.S. Bank breached its duty under Section 8(a) of the AIC Trust Agreement, which proximately caused AIC's damages. Therefore, U.S. Bank's motion to dismiss AIC's breach of contract claim should be denied in its entirety.

## II.    The Complaint Properly Alleges U.S. Bank Breached Its Fiduciary Duties.

When U.S. Bank became trustee for AIC Trust, a relationship of trust arose between U.S. Bank and AIC—the trust's sole beneficiary. A trustee–beneficiary relationship is the classic example of a fiduciary relationship. By accepting the trustee role, U.S. Bank was charged with duties of candor, honesty, and loyalty, as well as a duty to act in AIC's best interests. The Complaint alleges U.S. Bank ignored these duties by willfully misrepresenting Destra UITs as negotiable securities when, in fact, they were worthless. U.S. Bank also refused to disclose the unduly close relationship between Destra UITs' sponsor and the entity that assigned Destra its grossly inflated valuation. U.S. Bank's abdication of a trustee's inherent fiduciary duties caused AIC distinct harms that threatened the company's future. Nothing in the Trust Agreement or Delaware law immunizes U.S. Bank for its misconduct, and its motion to dismiss AIC's fiduciary duty claims should be denied.

15

### A. U.S. Bank and AIC had a Fiduciary Relationship.

To state a claim for breach of fiduciary duty, AIC's Complaint must only allege sufficient facts to support the existence of a fiduciary duty and evidence of its breach. *Stewart v. Wilmington Trust SP Servs., Inc.*, 112 A.3d 271, 297 (Del. Ch. 2015); *Estate of Eller v. Bartron*, 31 A.3d 895, 897 (Del. 2011). The Complaint alleges a fiduciary duty owed by U.S. Bank to AIC based on the parties' trustee-beneficiary relationship, not on the AIC Trust Agreement. (Compl. ¶ 121).

Fiduciary relationships arise from any situation "where one person reposes a special trust in and reliance on the judgment of another or where a special duty exists on the part of one person to protect the interests of another." *Feeley v. NHAOCG, LLC*, 62 A.3d 649, 661 (Del. Ch. 2012). Fiduciary duties arise in a wide variety of situations, including general partnerships, corporations, and estates. *Ashby & Geddes, P.A. v. Brandt*, 806 F. Supp. 2d 752, 757 (D. Del. 2011). The crux of such duty exists where the parties' relationship "is of such a confidential or dependent nature as to rise to fiduciary status." *Coleman v. Newborn*, 948 A.2d 422, 429 (Del. Ch. 2007) (quoting *White v. Lamborn*, Civil A. No. 4471, 1977 WL 9612, at *4 (Del. Ch. Mar. 15, 1977)).

Significantly, Delaware courts have held that fiduciary duties arise and apply to trusts more than any other legal relationship. *Ashby & Geddes,* 806 F. Supp. 2d at 757; *see also Auriga Capital Corp. v. Gatz Props.*, 40 A.3d 839, 850 (Del. Ch. 2012); *Metro Ambulance, Inc. v. E. Med. Billing, Inc.*, Civ. A. No. 13929, 1995 WL 409015, at *3 (Del. Ch. July 5, 1995) ("The traditional relationships recognized by equity as 'special' are express trustees and corporate officers and directors"); *McMahon v. New Castle Assocs.*, 532 A.2d 601, 604 (Del. Ch. 1987) (finding "the accountability of trustees" to trust beneficiaries to be the "classic example" of a fiduciary relationship). In fact, fiduciary duties are derived from the law of trusts. *Stewart*, 112 A.3d at 297. Thus, it is well-settled that a trustee can be held liable for a breach of a fiduciary duty given

16

the nature of its relationship, as alleged in this matter. AIC has properly alleged U.S. Bank owed AIC fiduciary duties by alleging the creation of AIC Trust, U.S. Bank's status as its trustee, and AIC's position as its sole beneficiary. (*Id.* ¶¶ 33, 121).

By entering a fiduciary relationship, U.S. Bank agreed to seek AIC's interests in managing the AIC Trust assets. A fiduciary has duties of reasonable care and loyalty, and the fiduciary must act in the best interest of the trust property's beneficial owner. *Stewart*, 112 A.3d at 297 (citing *In re USA Cafes, L.P. Litig.*, 600 A.2d 43, 48 (Del. Ch. 1991)). A trustee must be loyal to the beneficiary and may not engage in any self-interested transaction. *Joyce v. Cuccia*, No. CIV. A. 14953, 1997 WL 257448, at *5 (Del. Ch. May 14, 1997). A fiduciary's duty to remain loyal to a beneficiary bars the fiduciary from undertaking any "unfair, fraudulent, or wrongful act." *Beard Research, Inc. v. Kates*, 8 A.3d 573, 602 (Del. Ch. 2010). A fiduciary also owes a duty of candor and may not use its superior knowledge of events to mislead a beneficiary. *Bomarko, Inc. v. Int'l Telecharge, Inc.*, 794 A.2d 1161, 1180 (Del. Ch. 1999) (quoting *Mills Acquisition Co. v. Macmillan, Inc.*, 559 A.2d 1261, 1280 (Del. Super. 1988)). At its core, U.S. Bank's fiduciary duty required it to be honest in communicating with AIC on all matters pertinent to their relationship. *Anglo Am. Sec. Fund, L.P. v. S.R. Global Int'l Fund, L.P.*, 829 A.2d 143, 157 (Del. Ch. 2003) (citing *Malone v. Brincat*, 722 A.2d 5, 10-11 (Del. 1998)). The crux of AIC's Complaint is that U.S. Bank breached this specific duty.

Specifically, the Complaint alleges U.S. Bank breached its duties of loyalty, honesty, and candor by failing to disclose to AIC essential information U.S. Bank knew regarding the nature of Destra UITs and improper relationships between Freestone and the individual/entities that created Destra and assigned it an inflated value. (*Id.* ¶ 122). The worthless/non-negotiable Destra units made their way into AIC Trust as substitutes for valuable assets like municipal bonds only because

the creation, management, valuation, and marketing of Destra units to South Carolina insurers was carried out by an incestuous group of individuals and entities working in concert to overvalue Destra and to portray these worthless securities as valuable assets worth millions of dollars.

The scheme began when Alexander Chatfield Burns, through an entity known as Lonestar Holdco, LLC, purchased financially challenged Dallas National by making a $50 million capital investment. (*Id.* ¶¶ 9-12). Lonestar, a subsidiary of another Burns-controlled entity called Southport Lane, L.P., made the required capital investment by contributing to Dallas National a security called Beaconsfield, which carried a purported value of $50 million. (*Id.* ¶¶ 9, 13). Beaconsfield was created by a trust for which Defendant USBT served as trustee. (*Id.* ¶ 14). Beaconsfield was specifically and fraudulently created for the Dallas National acquisition and was worthless from its inception. (*Id.* ¶¶ 16-17). In essence, Southport/Lonestar/Burns used a fraudulent and worthless financial instrument they conjured to purchase a long-standing, Texas-based insurance company.

Upon acquisition, Lonestar changed Dallas National's name to Freestone Insurance Company and moved its operations to Delaware. (*Id.* ¶¶ 10, 23). Since Freestone's small size and history of financial problems made it difficult for the company to attract large scale or consistent business, Freestone sought to enter into insurance fronting arrangements with established insurance companies in South Carolina, including AIC. (*Id.* ¶ 24). Under the fronting agreement, AIC would be responsible for claim handling and payment only if Freestone became insolvent. (*Id.* ¶¶ 24-26). To guard against this risk, the fronting arrangement required Freestone to fund AIC Trust with millions of dollars' worth of easily negotiable and highly liquid assets AIC could quickly convert to cash in the event Freestone became insolvent. (*Id.* ¶¶ 27-28). Freestone initially funded AIC Trust with municipal bonds. (*Id.* ¶ 35).

18

Six months after using Beaconsfield—a worthless security—to enter the insurance market, the newly-named Freestone completed a pair of transactions with U.S. Bank to convert Beaconsfield to a different worthless financial instrument. (*Id.* ¶¶ 18-20). In late September 2013, Freestone sold Beaconsfield to U.S. Bank for $51.42 million. (*Id.* ¶ 19). The next day, U.S. Bank sold Freestone $50 million of a financial instrument known as Destra. (*Id.* ¶ 20). Destra was a unit investment trust, i.e. a financial offering in which investors purchase units representing an interest in a pool of assets. (*Id.* ¶ 64). Parties to the Destra Trust included USBT as trustee and another Burns-controlled entity called Administrative Agency Services, LLC ("AAS"), which served a crucial role in assigning a value to the trust's assets. (*Id.* ¶¶ 61, 65).

In January 2014, Freestone set out to replace AIC Trust's legitimate assets with units of the worthless Destra. (*Id.* ¶¶ 36-55). U.S. Bank, the same entity that assisted Freestone in the Beaconsfield to Destra conversion served as trustee for AIC Trust when Destra units were presented for admission to the trust as purportedly negotiable instruments with a purported value of over $ 9.5 million. (*Id.* ¶¶ 30, 36, 39). U.S. Bank accepted Destra units into AIC Trust *without determining whether they could be easily negotiated* and *without disclosing to AIC* (1) U.S. Bank's history with Destra; (2) U.S. Bank's knowledge of Destra's inflated value; or (3) the relationships among Freestone, the Southport entities directing the asset substitution, and Destra valuator AAS. (*Id.* ¶¶ 47-54).

Burns' control of all three of these entities presented an unmistakable setting for malfeasance. As the transactions were presented to Defendant U.S. Bank, the party bearing the burden of keeping AIC Trust funded with assets of a certain quality and value (Freestone) was controlled by the same parent corporations (Lonestar, Southport Lane) and individual (Burns) responsible for the entity now directing a transition to non-negotiable assets of negligible value

19

(Southport Lane Advisors, LLC).  The entity that determined the value of the substitute assets (AAS) was also controlled by the same parent companies and individual (Lonestar, Southport Lane, and Burns). (*Id.* ¶¶ 66-67).  Plus, Destra's imminently suspicious valuation was overseen by U.S. Bank affiliate USBT, the same company that served as trustee when a Burns-controlled entity (Lonestar) created the fraudulent Beaconsfield security.  Since AIC Trust was created for the specific purpose of ensuring AIC had access to easily negotiable, safe, and valuable securities (Trust Agreement at 1, Recital 2), information indicating the trust's assets were improperly valued and not easily negotiable are the among the most essential facts U.S. Bank had in its relationship with AIC.

Despite its unique position within this web of illicit transactions, U.S. Bank now argues it had no duty to bring any of this information to AIC's attention.  However, U.S. Bank breached its duties of candor and loyalty by remaining silent despite extensive knowledge of circumstances detrimental to AIC of which AIC could not have known.  U.S. Bank knew the municipal bonds that initially populated the AIC Trust were valuable, negotiable assets and that the Destra units offered as replacements were grossly overvalued. (*Id.*  ¶¶ 35, 52, 122(c)).  U.S. Bank knew the intertwined relationships described above among Freestone, Southport, AAS, Burns, and USBT. (*Id.* ¶ 101).  Armed with this information, U.S. Bank was fully aware that Destra's value was being misrepresented to AIC but disregarded the essence of its trustee role by failing to communicate its knowledge to AIC.  (*Id.*  ¶¶ 101, 122 (b)-(c)).

Notably, U.S. Bank's breach of its fiduciary duties is not limited to failures to disclose crucial facts about AIC Trust.  U.S. Bank affirmatively misrepresented the trust's assets. (*Id.* ¶ 122(d)).  In the critical January 2014 account statement recounting the transactions that depleted AIC Trust's legitimate assets, U.S. Bank cloaked the incoming Destra units with a false air of

20

legitimacy by labeling the worthless securities as "taxable bonds." (*Id.* ¶¶ 44, 54). As a trustee, U.S. Bank had a fiduciary obligation "at the very least, to be honest and truthful when communicating" with AIC. *Anglo Am. Sec. Fund, L.P.*, 829 A.2d at 157 (citing *Malone v. Brincat*, 722 A.2d 5, 10-11 (Del. 1998)). Even if the AIC Trust Agreement did not require U.S. Bank to make representations regarding Destra's origin or nature, that omission would not in any way protect U.S. Bank from liability for its affirmative misrepresentation of the assets. The January 2014 account statement and its misrepresentation of Destra units as "taxable bond" allowed Destra to enter AIC Trust and directly contributed to AIC's losses. (*Id.* ¶¶ 112-13).

### B.  AIC May Allege Contract <u>and</u> Fiduciary Duty Claims.

AIC's breach of fiduciary duty claims are not merely repackaged breach of contract claims as U.S. Bank suggests. (ECF 11-1, Def. U.S. Bank Mem. at p. 13 (citing *Nemec v. Shrader*, 991 A.2d 1120, 1129 (Del. 2010))). U.S. Bank incorrectly portrays *Nemec* as an absolute bar on fiduciary duty claims in suits also alleging breach of contract. Delaware courts do not construe *Nemec* so broadly. Delaware recognizes a fiduciary's responsibilities arise not only by contract but also by nature of the fiduciary relationship. In other words, a fiduciary is "twice-tested" with the court first weighing the fiduciary's actions against contractual duties and then determining "whether those actions—even if permitted by law—were a breach of the trustee's fiduciary obligations." *Mennen v. Wilmington Trust Co.*, C.A. No. 8432-ML, 2015 WL 1914599, at *22 (Del. Ch. Apr. 24, 2015); *see also Paradee v. Paradee*, C.A. No. 4988-VCL, 2010 WL 3959604, at *11 (Del. Ch. Oct. 5, 2010) (finding that a trustee's contractual right "does not answer the separate question of whether he breached his fiduciary duties"); *RJ Assoc., Inc. v. Health Payors' Org. Ltd. P'ship*, Case No. 16873, 1999 WL 550350, at *9-10 (Del. Ch. July 16, 1999) ("Conduct

by an entity that occupies a fiduciary position . . . may form the basis of both a contract and a breach of fiduciary duty claim").

Delaware law only prohibits fiduciary duty claims that are wholly duplicative of contract claims. *Lee v. Pincus*, C.A. No. 8458-CB, 2014 WL 6066108, at *8 (Del. Ch. Nov. 14, 2014) (finding *Nemec* principle limited to alleged violation of right that is "solely a creature of contract"). U.S. Bank's argument should only prevail if "the two claims overlap completely." *Grunstein v. Silva*, C.A. No. 3932-VCN, 2009 WL 4698541, at *6 (Del. Ch. Dec. 8, 2009) (citations omitted). There is no duplication and no basis for dismissal where the alleged fiduciary duty is based on additional facts or is broader in scope than the contractual obligations. *AM Gen. Holdings, LLC v. Renco Group, Inc.*, C.A. No. 7639-VCN, 2013 WL 5863010, at *10 (Del. Ch. Oct. 31, 2013). For example, a fiduciary engaging in self-dealing may be liable in a fiduciary duty claim independent of any underlying contractual obligations. *Grunstein*, 2009 WL 4698541, at *6 (citing *Schuss v. Penfield Partners, L.P.*, 2008 WL 2433842, at *10 (Del. Ch. June 13, 2008)). Similarly, a claim based on a fiduciary's violation of its loyalty duty may be alleged along with separate claims for specific contractual violations. *Lee*, 2014 WL 6066108 at *9.

Here, the basis of AIC's fiduciary duty claim is not the AIC Trust Agreement but rather the "special relationship of trust" formed with U.S. Bank. (Compl. ¶ 121). The Complaint sufficiently alleges violations of the duty of loyalty (*Id.* ¶ 122 (b)), candor (*Id.* ¶ 122(c)), and honesty (*Id.* ¶ 122(d)). *See also Lee*, 2014 WL 6066108 at *9 (calling alleged disloyalty a "quintessential[]" fiduciary duty claim). Since the duty is inherent to the parties' relationship,

AIC's fiduciary duty claim is not the duplicative contract claim[4] that the *Nemec* court intended to preclude. Therefore, the Court should deny U.S. Bank's motion to dismiss the fiduciary duty claim.

### C.  The AIC Trust Agreement does not Eliminate U.S. Bank's Fiduciary Duty.

U.S. Bank relies on three AIC Trust Agreement provisions to suggest that all fiduciary duties inherent to its special relationship with AIC have been eliminated by contract.  (ECF 11-1, Def. U.S. Bank Mem. at p. 12) (citing AIC Trust Agreement §§ 1(b), 8(i), 8(n)).  This argument must fail because the language of these provisions does not support U.S. Bank's conclusions.  None of the provisions refer to or could reasonably be interpreted to cover the fiduciary duties U.S. Bank owed AIC.  Ultimately, U.S. Bank's argument must be rejected because its interpretation of these provisions is unreasonable and inconsistent with their plain meaning.

U.S. Bank first cites AIC Trust Agreement § 1(b), which provides that "[t]he rights and duties of . . . the trustee under this Agreement are not subject to any conditions or qualifications not set forth in the Agreement."  This provision does not refer to fiduciary duties at all.  Instead, it speaks only of U.S. Bank's contractual duties ("duties . . . under this Agreement") and prevents trust parties from arguing U.S. Bank had a contractual duty with non-contractual components or an extra-contractual standard of care.  In other words, Section 1(b) does not eliminate potential non-contractual duties; rather, it only limits the scope of existing contractual duties.  Fiduciary duties arise from special relationships not any contract and, by its plain language, Section 1(b)

---

[4] Independent fiduciary claims also generally allege distinct damages. *AM Gen. Holdings, LLC,* 2013 WL 5863010 at *10.  While there is some overlap between the damages Plaintiff AIC alleges, there are additional remedies available for the fiduciary duty violation that are unavailable for the contract breach. *See OTK Assocs., LLC v. Friedman*, 85 A.3d 696, 716-17 (Del. Ch. 2014) (explaining fiduciary duty claims are equitable in nature and, upon proof of a breach of loyalty, the fiduciary may not be allowed to profit from its disloyal conduct); *see also Feeley v. NHAOCG, LLC*, 62 A.3d at 668.  The complaint alleges U.S. Bank made improper financial gains when violating its fiduciary obligations. (Compl. ¶¶ 56, 102).

does not affect the existence of such duties in this case at all. *Ashby & Geddes*, 806 F. Supp. 2d at 757 (finding fiduciary duties are based on relationships); *McMahon*, 532 A.2d at 604 (same); *see also In re Oakwood Homes Corp.*, 340 B.R. 510, 518 (Bankr. D. Del. 2006) (applying New York law) (citing Restatement (Second) of Torts § 874, cmt. b) ("fiduciary liability is not dependent solely on the contract; rather, liability rests on the nature of the relationship")).

U.S. Bank then cites AIC Trust Agreement § 8(n), which is not substantially different than Section 1(b). Section 8(n) states:

> [U.S. Bank's] duties and responsibilities shall be entirely administrative and not discretionary and determined only with reference to this Agreement and Applicable Insurance Law. [U.S. Bank] is not charged with knowledge of any duties or responsibilities in connection with any other document or agreement.

This provision rejects contractual duties based on other agreements. The first sentence merely refuses to expand U.S. Bank's contractual duties beyond the contract's terms. The second sentence states that U.S. Bank may not be liable for conduct that would violate other contracts. This is simply a formal recognition that it would be unfair to impose liability on U.S. Bank for violating contracts to which it is not a party and of which it may not even be aware. This sentence cannot be reasonably construed to reference a fiduciary duty because it specifically references any "other document or agreement." Fiduciary duties are not document-dependent and do not arise from any written agreement. They are relationship-based and inherent to U.S. Bank's status as trustee.

Finally, U.S. Bank relies on AIC Trust Agreement § 8(i), which is different than the other provisions cited but not in a way that affects U.S. Bank's fiduciary duties. Section 8(i) states: "The Trustee shall not be liable for any loss . . . incurred or made arising out of or in connection with the performance of its duties hereunder . . . unless such loss . . . [is] caused by its own negligence, willful misconduct, or lack of good faith." Section 8(i) also does not affect U.S. Bank's fiduciary

duties because, like Section 1(b), it expressly limits its effect to contractual duties—i.e. "duties hereunder in accordance with the provisions of this Agreement."  Section 8(i)'s expressed intent is to eliminate liability without fault for contract breaches.  Specifically, the provision eliminates liability for U.S. Bank's breaches of contract unless they are caused by "negligence, willful misconduct or lack of good faith." Delaware law allows a trust agreement to restrict a fiduciary's standard of care (12 Del. C. § 3303(a)) and that is all Section 8(i) accomplishes.

In sum, the Court should reject U.S. Bank's argument that its fiduciary duties to AIC are eliminated by the AIC Trust Agreement.  AIC acknowledges Delaware law allows fiduciary duties to be restricted or eliminated by contract.  12 Del. C. § 3303(a).[5]  However, none of the three provisions on which U.S. Bank relies may be reasonably interpreted to do so.  None of the provisions reference a "fiduciary" duty and, by their plain language, these provisions are intended only to limit the scope of contractual duties or restrict the standard of care for breaches of contractual duties.

### III.    The Complaint Properly Alleges U.S. Bank Was Negligent/Grossly Negligent.

U.S. Bank's negligent conduct was independent of any contractual duties, thereby sufficient to independently support a claim of negligence and gross negligence.   Contrary to U.S. Bank's assertions, AIC's Complaint sufficiently alleges duties independent from U.S. Bank's contractual duties to support its negligence claims.

"A breach of trust, or in other words of duty, by a trustee is a violation of a correlative right of the beneficiary, and gives rise to liability on the part of the trustee and correlative cause of action

---

[5] Even if the Court were to find the AIC Trust Agreement effectively disclaimed U.S. Bank's fiduciary duty, AIC's fiduciary duty claim may not be dismissed.  *See* 12 Del. C. § 3303(a) (noting a trust agreement may not disclaim a fiduciary's liability for willful misconduct).  The Complaint alleges U.S. Bank committed willful misconduct in its operation of AIC Trust. (Compl. at ¶¶ 113, 123).

on the part of the beneficiary for any loss of the trust estate." *Hogg v. Walker*, 622 A.2d 648, 653 (Del. 1993). "The rule is applicable to positive acts, as well as omissions or negligence, which constitute a breach of duty by the trustee." *Id.* Delaware courts have recognized that "those who control an entity owe a duty to the entity's constituents to perform proper due diligence during the sale of an entity, when the circumstances would alert a reasonably prudent person to a risk that that the buyer will harm the underlying entity." *Cargill, Inc. v. JWH Special Circumstance, LLC*, 959 A.2d 1096, 1130 (Del. Ch. 2008) (denying a motion to dismiss on similar facts in which the trust was looted when trust assets were sold); s*ee also Harris v. Carter*, 582 A.2d 222 (Del. Ch. 1990).

As AIC explained and pled in the Complaint, U.S. Bank had substantial dealings with the Destra UITs through its affiliate, Defendant USBT. U.S. Bank also knew that the Destra UITs could not be negotiated.

U.S. Bank contends that AIC's sole remedy sounds in contract because AIC seeks the same damages for both claims. This argument is misplaced. Under Delaware law, tort remedies are not available to a party where a loss arises out of contract. *Abbott Labs. v. Owens*, C/A No. 13C-09-186, 2014 WL 8407613 at *7 (Del. Super. Ct. Sept. 15, 2014). However, these claims may properly co-exist in an action where a "plaintiff allege[s] that the defendant breached a duty that is independent of the duties imposed by the contract." *Id.* The limitation of a contractual suit, pursuant to the economic loss doctrine, only occurs "where an action is based entirely on a breach of the terms of a contract between the parties and not on an independent duty imposed by law." *Edelstein v. Goldstein*, 2011 WL 721490 at *7 (Del. Super. Ct. 2011) (emphasis added) (internal citations and quotations omitted). Significantly, this does not apply to tort claims. *Id.*

U.S. Bank owed a duty to AIC separate from the contractual duties arising under the Trust Agreement. The terms of the Trust Agreement, in its own language, carved out explicit exceptions for independent legal duties, providing: "The Trustee shall not be liable *except for its own negligence*, willful misconduct or lack of good faith." (Compl., Ex. 2, at ¶ 8(i); ¶ 8(l)). (Emphasis added). Therefore, claims for negligence and gross negligence were properly pled, and U.S. Bank's motion to dismiss should be denied.

**IV.    The Complaint Properly Alleges The Claim For Negligent Misrepresentation.**

AIC's relationship with U.S. Bank was premised on the necessity and right to rely on U.S. Bank's throughout their dealings, including but not limited to the valuations of securities/assets. This reliance on a well-established relationship is the cornerstone of AIC's negligent misrepresentation claim.

Under Delaware law, a claim for negligent representation requires AIC to plead U.S. Bank had a particular duty to provide accurate information based on AIC's pecuniary interest in that information; U.S. Bank's supplying of false information; U.S. Bank's failure to exercise reasonable care in obtaining or communicating of information; and AIC's pecuniary loss caused by AIC's justifiable reliance on the false information U.S. Bank provided. *H-M Wexford, LLC v. Encorp, Inc.*, 832 A.2d 129, 147 n.44 (Del. Ch. 2003). This recognized duty is further supported by Delaware courts' adoption of § 552 of the Restatement (Second) of Torts for negligent misrepresentation, which states:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in the obtaining or communicating of information.

*Christiana Marine Serv. Corp. v. Texaco Fuel & Marine Mktg., Inc.*, 2002 WL 1335360 at *6 (Del. Super. Ct. 2002).  Thus, AIC must show that U.S. Bank supplied the information for use in business transactions and that U.S. Bank is in the business of supplying information.

U.S. Bank argues that it had no duty to provide information and its misrepresentations were disclaimed in the form of boilerplate language on the statements that the valuing information should not be relied upon by AIC.  Even if this were true, which AIC denies, this is not U.S. Bank's only misrepresentation claimed by AIC.  In addition to the misrepresentations in value, U.S. Bank also misrepresented that the Destra UITs were "taxable bonds" and the relationship between the entities, trusts, and assets involved.  U.S. Bank also made disclaimers on a January 2014 account statement.  By the time U.S. Bank had made these "disclaimers," AIC had already relied, and continued to rely, upon U.S. Bank to appropriately manage the assets in the trust, which it failed to do.

In *H-M Wexford, LLC v. Encorp, Inc.*, the Chancery Court for Delaware considered such a disclaimer under similar circumstances.  Where the disclosures did not obviate representations in a prior agreement, the court found they could not preclude justifiable reliance.  *H-M Wexford*, 832 A.2d at 146. Therefore, the U.S. Bank cannot rely upon any purported disclaimers here.

U.S. Bank undertook the duty to safe guard the assets in the Trust Agreement. (ECF No. 1-2, at 2(a)).  In the contract between the parties, U.S. Bank, as trustee, agreed to maintain assets of the trust, which were to be negotiable at any time.  These were the terms agreed upon by the parties, and U.S. Bank cannot alter these terms by placing boilerplate disclaimer language as to the value of the funds on the statement to absolve itself of contractual duties.  When AIC attempted to withdraw the assets of the Trust Account, U.S. Bank could not negotiate these assets.  Its valuations of these assets were meaningless figures, created by entities in which it also had an

28

interest.  It was added to a document that Accident Insurance had no negotiation or participation in its creation.

AIC properly pled reliance upon these representations in its Complaint.  (Compl., at ¶¶ 94-95).  It relied upon U.S. Bank's representations as an independent Trustee, when in actuality, it was affiliated with the parties involved with the Destra UIT transactions through its affiliate or subsidiary, U.S. Bank Trust ("USBT).  AIC continued to do business with Freestone based upon these valuations and representations set forth by U.S. Bank, all of which was set forth in its Complaint.

At the time these representations were made by U.S. Bank, AIC had no reason to doubt the value of these securities, as set forth by the U.S. Bank.  It continued to do business with Freestone, to its own detriment, suffering millions of dollars in damages.

Under almost identical circumstances, in a related case pending against U.S. Bank before this Court, this Court found that U.S. Bank's representations and directions to Companion, the plaintiff in that matter, constituted "'a representation and a warranty' that the fair market value of the assets was not less than the fair market value of the assets being replaced, and that statements of assets and their fair market value provided to Companion were considered 'a certification' that the fair market value was 'true and correct to its best information and belief.'" *Companion Prop. & Cas. Ins. Co. v. U.S. Bank Nat'l Ass'n*, Civil Action No. 3:15-cv-01300-JMC, 2016 WL 3027552, at *19 (D.S.C. May 27, 2016); *see also Companion Prop. & Cas. Ins. Co. v. U.S. Bank Nat'l Ass'n.*, Civil Action No. 3:15-cv-01300-JMC, 2015 WL 7568613 (D.S.C. Nov. 24, 2015). Similarly, AIC's allegations in its Complaint are sufficient to survive the motion to dismiss and to warrant further inquiry through discovery into the relationship between U.S. Bank and USBT, as well as these entities' relationships with Burns and his companies.

## CONCLUSION

For all of these reasons, the contract and tort claims against U.S. Bank should not be dismissed and the case should proceed to discovery.  In the alternative, AIC requests leave to amend should the court determine a re-pleading is required for any of the remaining claims against AIC.   However, AIC does hereby consent to dismissal without prejudice the Rule 10 and Rule 10b-5 claims against U.S. Bank.

Respectfully submitted,

s/ Susan F. Campbell
**MCGOWAN, HOOD & FELDER, LLC**
Susan F. Campbell (Fed Id. 9002)
Anna S. Magann (Fed Id. 11974)
232 King Street
Georgetown, South Carolina 29440
(843) 833-8082-Tel.
(843) 833-8092-Fax
scampbell@mcgowanhood.com
amagann@mcgowanhood.com

Chad A. McGowan (Fed Id. 6620)
S. Randall Hood (Fed Id. 6103)
Jordan C. Calloway (Fed Id. 11066)
1539 Health Care Drive
Rock Hill, SC 29732
(803) 327-7800 Tel.
(803) 328-5656 Fax
cmcgowan@mcgowanhood.com
rhood@mcgowanhood.com
jcalloway@mcgowanhood.com

Whitney Boykin Harrison (Fed Id. 11604)
1517 Hampton Street
Columbia, South Carolina   29201
(803) 779-0100 Tel.
(803) 256-0702 Fax
wharrison@mcgowanhood.com

**Attorneys for Plaintiff Accident Insurance Company, a South Carolina Corporation**

November 17, 2016