# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# COLUMBIA DIVISION

| | |
|---|---|
| Accident Insurance Company, Inc., a South Carolina Corporation, | )<br>)<br>) |
| Plaintiff, | ) Civil Action No.: 3:16-cv-2621-JMC<br>)<br>) |
| v. | )<br>) **ORDER AND OPINION** |
| U.S. Bank National Association and U.S. Bank Trust N.A., | )<br>)<br>) |
| Defendants. | )<br>) |

Plaintiff Accident Insurance Company, Inc. ("Plaintiff") filed this action against Defendant U.S. Bank National Association ("Defendant") for: (1) breach of contract, (2) breach of fiduciary duty, (3) negligence/gross negligence, and (4) negligent misrepresentation.

This matter is before the court on Defendant's Motion to Dismiss for Failure to State a Claim ("Motion to Dismiss") pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 11.) Plaintiff opposes Defendant's Motion, asserting it should be denied. For the following reasons, the court **DENIES** Defendant's Motion to Dismiss (ECF No. 11).

## I. JURISDICTION

The court has jurisdiction over this action pursuant to 28 U.S.C. § 1332. Plaintiff is organized and incorporated in the State of South Carolina, with its principal place of business in Lexington County, South Carolina. (ECF No. 1 at 1.) Defendant is a wholly owned subsidiary of U.S. Bancorp, and is a national chartered bank with its principal place of business and headquarters in the State of Minnesota. (*Id.*) U.S. Bank Trust ("USBT")[1] is a wholly owned subsidiary of U.S.

---

[1] On September 25, 2017, the court dismissed USBT for lack of personal jurisdiction. (ECF No. 63.)

Bancorp and an affiliate of U.S. Bank. (*Id.*) Its principal place of business is in Wilmington, Delaware. (*Id.*) The amount in controversy in this matter exceeds $75,000.00. (*Id.* at 2.)

## II. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is an insurance company with its principal place of business in South Carolina. (ECF No. 1 ¶ 1.) In April 2013, Plaintiff and Freestone entered into a reinsurance contract known as the "Program Agreement." (*Id.* ¶ 24; ECF No. 1-1.) Freestone, formerly known as Dallas National Insurance Company, was an indirect subsidiary of Southport Lane, L.P. ("Southport Lane"), a New York private equity firm owned and controlled by Alexander Chatfield Burns. (ECF No.1 ¶ 8-10; *see also* ECF No. 1-1 § 21.)

The relationship between Plaintiff and Freestone is known as a fronted insurance program. (ECF No. 1 ¶ 24.) One company (here, Plaintiff) acts as the front, and all policies are issued in its name, but another insurer (here, Freestone) bears the risk of loss. (*Id.*; ECF No. 1-1.) Plaintiff received a fee for allowing its name and paper to be used as the front, but shifted to Freestone the insurance and financial risks under the policies. (ECF No. 1 ¶¶ 24, 26, 29; ECF No. 1-1 §§ 2, 4, 5, 8, 14, 15, 16.)

To ensure that Freestone could make good on its coverage and to protect Plaintiff from having to pay claims, the Program Agreement required Freestone to supply collateral to secure its obligations. (ECF No. 1 ¶¶ 27-28; ECF No. 1-1 § 12.) State regulations generally require that assets serving as reinsurance collateral are liquid and marketable, allowing them to be converted quickly into cash to pay claims. (ECF No. 1 ¶ 28.) In September 2013, after Plaintiff and Freestone had been running their fronted insurance program for five months, they brought in Defendant to serve as the trustee on the trust ("AIC Trust") that supported their reinsurance relationship. (ECF No. 1 ¶ 30.) Under the trust agreement, Plaintiff is the beneficiary, Freestone is the grantor, and

Defendant is the trustee. (ECF No. 1-2 at 1.) Each party's rights and duties are set forth by contract. (*Id*. § 1(b).) The trust agreement is subject to and governed by Delaware law. (*Id*. § 13.)

In March 2013, Freestone was acquired by Southport Lane (together with its affiliates and subsidiaries, "Southport"). (ECF No. 1 ¶ 9.) By 2014, Freestone was insolvent. (*Id*. ¶¶ 106-08.) At the beginning of Defendant's role as trustee in January 2014, the trust account contained only cash and other eligible securities, thereby adequately protecting Plaintiff's obligations. (*Id*. ¶ 35.) Specifically, the trust account contained assets valued at more than $9 million. (*Id*.) In January 2014, Defendant approved multiple transactions, including: (1) the substitution of assets for an investment in Camelot, and (2) the substitution of assets for an investment in the Destra Targeted Income Unit Investment Trust ("Destra UIT"). (*Id*. ¶¶ 37-39.) By February 28, 2014, the trust account held: (1) approximately $87.70 in cash, (2) the Destra UIT units purportedly worth $6,891,423.29, but worth substantially less, (3) the Camelot Shares purportedly worth $193,000.00, and (4) the Cook County II series A municipal bonds valued at $2,604,408.05. (*Id*. ¶ 55.)

On July 22, 2016, Plaintiff filed a Complaint for a jury trial against Defendant. (ECF No. 1.) Plaintiff alleges that Defendant breached various duties as trustee of the Destra UIT, and asserts claims for: (1) breach of contract (Count 1), (2) breach of fiduciary duty (Count 2), (3) negligence/gross negligence (Count 3), and (4) negligent misrepresentation (Count 8).[2] (*Id*.)

**Breach of contract**. In asserting breach of contract, Plaintiff alleges that Defendant accepted units of the Destra UIT without validating the Committee on Uniform Securities

---

[2] Plaintiff has voluntarily dismissed Count 6 against Defendant, which asserted a claim under Section 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10(b)(5). (ECF No. 42 at 37.)

3

Identification Procedures ("CUSIP")[3] numbers, and also did not properly document the transfer of the units to the trust account, in accordance with its obligations under Section 8(a) of the trust agreement requiring it adequately "account" for all assets. (*Id.* ¶¶ 116-17.) As a result, Plaintiff asserts, Defendant did not satisfy its contractual duty under Section 8(b) of the trust agreement requiring it to determine that the units were in a form such that Plaintiff could negotiate them without someone else's consent. (*Id.*; *see also* ECF No. 1-2 § 8(b).)

**Breach of fiduciary duty**. In asserting breach of fiduciary duty, Plaintiff again alleges a breach of Section 8(b). (ECF No. 1 ¶ 122(a).) Plaintiff also faults Defendant for two alleged failures to disclose. First, Plaintiff asserts that Defendant failed to disclose the alleged relationship among USBT, Administrative Agency Services, LLC ("AAS")[4], Burns, the Southport entities, Freestone, and the Destra Fund. (*Id.* ¶ 122(b).) Second, Plaintiff alleges that Defendant failed to disclose that the Destra UIT units "were valueless and did not constitute 'Eligible Assets.'" (*Id.* ¶ 122(c).) Finally, Plaintiff alleges that Defendant incorrectly listed the Destra UIT units under the heading of "taxable bonds" on an account statement in January 2014. (*Id.* ¶ 122(d); *see also* ECF 11-2.)

**Negligence/Gross Negligence**. In asserting negligence/gross negligence, Plaintiff repeats the allegations underlying its claim for breach of fiduciary duty, except that Plaintiff adds the adjectives "negligently, grossly negligently, recklessly, willfully, and wantonly." (ECF No. 1 ¶ 126.)

---

[3] CUSIPs are alphanumeric codes that identify financial instruments and are used to facilitate the clearance and settlement process of securities. (ECF No. 1 ¶ 45 n.5.) CUSIP numbers are a component of how a trust's assets are identified by investors and accounted for by parties in Defendant's position. (ECF No. 42 at 13.)
[4] AAS is the administrative agent of the Destra Funds that was responsible for the valuation of the portfolio securities in the Destra Funds. (ECF No. 1 ¶ 66.)

**Negligent misrepresentation**. In asserting negligent misrepresentation, Plaintiff again alleges that Defendant misrepresented the value of the Destra UIT units, the status of the Destra UIT units as "taxable bonds" and "Eligible Assets," and the alleged relationship among USBT, AAS, Burns, the Southport entities, Freestone, and the Destra UIT. (*Id*. ¶ 176(a)-(c).)

On September 9, 2016, Defendant filed a Motion to Dismiss for Failure to State a Claim. (ECF No. 11.) On November 17, 2016, Plaintiff filed a response in opposition to Defendant's Motion. (ECF No. 42.) On December 23, 2016, Defendant filed a Reply to Plaintiff's response. (ECF No. 50.)

### III. LEGAL STANDARD

A Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted); *see also Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) . . . does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."). To be legally sufficient, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

A Rule 12(b)(6) motion "should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). When considering a Rule 12(b)(6) motion, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff. *Ostrzenski v. Seigel*, 177 F.3d 245, 251 (4th Cir. 1999). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556).

IV. ANALYSIS

In its Motion to Dismiss, Defendant seeks dismissal of the following claims: (1) breach of contract, (2) breach of fiduciary duty, (3) negligence/gross negligence, and (4) negligent misrepresentation. (ECF No. 11-1.)

1. Breach of Contract (Count 1)

Plaintiff asserts Defendant breached its contractual obligations to it by: (1) accepting the Destra UIT units in the trust account without validating the CUSIP numbers, and (2) by failing to properly document the transfer of the units to the trust account. (ECF No. 1 ¶ 117.) Defendant asserts that Plaintiff's allegation does not state a claim for breach of its "actual—and limited—obligations under the trust agreement." (ECF No. 11-1 at 9.) In support, Defendant references the contract stating that Defendant has no duty or responsibility "with respect to the qualification, character, or valuation of the Assets; for the existence, genuineness or value of any of the Assets[5]; to determine whether any Assets are or remain Eligible Securities; or to determine if the value of the Assets satisfies Plaintiff's requirements." (ECF No. 1-2 §§ 2(b), 5(c), 8(c), 8(l), 12(f).)

Under Delaware law, a breach of contract claim arises from proof of the defendant's contractual obligation as well as proof that the defendant's failure to meet that obligation caused

---

[5] The court acknowledges that the full provision of the contract states that Defendant "shall not be responsible for the existence, genuineness or value of any of the Assets . . . except to the extent that such action or omission constitutes negligence, lack of good faith or willful misconduct." (ECF No. 1-2 ¶ 8(i), ¶ 8(l).)

6

the plaintiff damage. *Interim Healthcare, Inc. v. Spherion Corp.*, 884 A.2d 513, 548 (Del. Super. 2005). To defeat a motion to dismiss, a breach of contract complaint must allege: (1) the existence of a contract, (2) breach of an obligation imposed by the contract, and (3) resulting damage to the plaintiff. *Micro Focus (US), Inc. v. Ins. Servs. Office, Inc.*, 125 F. Supp. 3d 497, 500 (D. Del. 2015) (citing *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003)). In fact, "detailed factual allegation[s] concerning the extent and effect of the breach is not required by the plausibility standard" Rule 12(b)(6) imposes. *Micro Focus (US), Inc.*, 125 F. Supp. 3d at 501. Additionally, Defendant may not support its Motion by taking issue with Plaintiff's interpretation of the trust agreement's terms. *Id.* (explaining a defendant's dispute over a contract's meaning to be "a question for another day").

The Complaint sufficiently pleads all elements for breach of contract. Specifically, Plaintiff alleges Defendant accepted the Destra UIT units into the AIC Trust without the required pre-acceptance negotiability determination mandated by the trust agreement. (ECF No. 1 ¶¶ 47-48, 117.) Under the trust agreement:

> *Before accepting any Asset for deposit to the Trust account*, [Defendant] shall determine that such Asset is in such form that [Plaintiff] whenever necessary may, or [Defendant] upon direction by [Plaintiff] will, negotiate such Asset without consent or signature from [Freestone] or any person or entity other than [Defendant] in accordance with the terms of this Agreement.

(*Id.* ¶¶ 32 (b), 116) (quoting ECF No. 1-2 § 8(b)) (emphasis added).

Plaintiff alleges Defendant breached this duty willfully and in bad faith by failing to ensure that the Destra UIT units presented for inclusion in the AIC Trust in January 2014 complied with the contractually required form. (ECF No. 1 ¶¶ 47-48, 117.) In fact, after Freestone's financial distress became evident and Plaintiff made efforts to liquidate and negotiate the Destra UIT units,

7

Defendant refused to do so, citing paperwork issues that impaired the units' negotiability. (*Id*. ¶ 58.)

As the Complaint alleges, Defendant's breach of its Section 8(b) duty was a substantial factor in the depletion of the AIC Trust's legitimate assets. (*Id*. ¶ 49.) Plaintiff asserts that had Defendant made the initial determination Section 8(b) mandated, it would have known the Destra UIT units were ineligible for inclusion in the AIC Trust for multiple reasons, including their noncompliance with Section 8(b)'s negotiability standard. *Id*. When Freestone sustained its Destra-induced financial collapse, it defaulted on obligations to Plaintiff under its insurance fronting arrangement and left Plaintiff with the duty to pay claims. (ECF No. 1 ¶ 110.) The AIC Trust, for which Defendant served as trustee, was Plaintiff's protection from financial injury in the event of Freestone's insolvency. (*Id*. ¶ 28.) The AIC Trust was valuable to Plaintiff only if its assets could be easily converted to cash to process and pay insurance claims. (*Id*. ¶¶ 27-28.) Defendant was well aware of the AIC Trust's express purpose when it agreed to serve as trustee. (ECF No. 1-2 at 2) (stating that trust assets were to "secure payments" Plaintiff may be required to make "in connection with the Reinsurance Agreements").

Plaintiff asserts that since the AIC Trust contained overvalued, unnegotiable Destra UIT units that Defendant admitted to the trust, Plaintiff did not have access to the collateral it was relying on when Freestone defaulted. (*Id*. ¶ 112.) As a result, Plaintiff has been forced to turn to its own reserves and operating funds to meet claim obligations arising from its fronting arrangement with Freestone. (*Id*. ¶ 113.) Ultimately, Plaintiff asserts that Defendant's failure to meet its Section 8(b) duty directly caused Plaintiff substantial damages, including loss of collateral, operating losses, lost profits, and reputational harm. (*Id*. ¶ 119.)

Plaintiff also contends that Defendant failed to provide an accounting of all the AIC Trust's assets because the monthly account statements generated by Defendant did not include security identification numbers corresponding to the assets the trust actually contained. (*Id.* ¶¶ 45-46, 117.) Under the trust agreement:

> The Trustee shall furnish to Grantor and Beneficiary an accounting of all Assets in the Trust account upon its inception and thereafter at intervals no less frequent than as of the end of each calendar month. Such accounting shall include a statement of all Assets in the Trust account and shall be given as soon as practicable, but in no event later than fifteen (15) days after such date.

(ECF No. 1-2 § 8(a).)

The court acknowledges that Section 8(b) did not explicitly impose a duty on Defendant to validate and confirm the CUSIPs on the Destra UIT units. (ECF No. 1-2 § 8(b).) However, at the very least, the duty to provide an "accounting" required Defendant to submit a "rendition of [the] account" and the assets it contained. *Black's Law Dictionary* (10th ed. 2014); *see also Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 738 (Del. 2006) (holding that courts may use a dictionary to determine an undefined contract term's plain and ordinary meaning). The Complaint focuses on the account statement covering January 2014, the period in which the Destra UIT units were substituted into the AIC Trust. (*Id.* at ¶¶ 44-45.) The January 2014 statement cannot be said to provide an accounting of all the AIC Trust's assets because it did not accurately or consistently identify the assets the trust contained.[6] (ECF No. 42 at 13.)

---

[6] For example, "all of the Destra UIT units were listed on the trust account bank statements sent to Plaintiff with purported CUSIP numbers which were invalid and false." (ECF No. 1 ¶ 45.) Further, "the January 2014 bank statement provided by Defendant to Plaintiff on the trust account indicated that the Destra Series IV and Destra Series V UIT units, purportedly worth $5,000,000.00, had not been valued since November 23, 2013, and annotated that "[n]o current price was available."" (*Id.* ¶ 46.)

Both failures violate a specific duty Defendant agreed to accept upon entering the trust agreement. Therefore, Plaintiff adequately alleges all required elements of a breach of contract claim under Delaware law.[7]

2. Breach of Fiduciary Duty (Count 2)

Plaintiff alleges that Defendant breached its fiduciary duty by: "(1) failing to determine and ensure that each Asset it accepted in the trust account was in such form that it could be negotiated whenever necessary without consent or signature from anyone besides Defendant before it accepted the Asset, (2) failing to disclose the relationship between its affiliate, USBT, AAS, Burns, the Southport entities, the Destra UIT, and Freestone, in breach of the duty of loyalty to Defendant owed to Plaintiff, (3) failing to disclose to Plaintiff that the Destra funds were valueless and did not constitute "Eligible Assets" when, upon information and belief, Defendant was aware of such fact, and (4) misrepresenting the Destra UIT units as "taxable bonds" in the bank statements to Plaintiff." (ECF No. 1 ¶ 122.)

*A. Defendant and Plaintiff had a fiduciary relationship.*

Neither party contests that a fiduciary relationship existed between Plaintiff and Defendant. To state a claim for breach of fiduciary duty, Plaintiff's Complaint must only allege sufficient facts to support the existence of a fiduciary duty and evidence of its breach. *Stewart v. Wilmington Trust SP Servs., Inc.*, 112 A.3d 271, 297 (Del. Ch. 2015); *Estate of Eller v. Bartron*, 31 A.3d 895, 897 (Del. 2011). The Complaint alleged a fiduciary duty owed by Defendant to Plaintiff based on the parties' trustee-beneficiary relationship, not on the trust agreement. (ECF No. 1 ¶ 121.)

---

[7] In its opposition, for the first time, Plaintiff asserted that Defendant breached the trust agreement by failing to determine that assets "substituted" into the account were of equivalent value to the assets they replaced. (ECF No. 42 at 18-20.) The court acknowledges that Plaintiff did not allege this breach in its Complaint, and thus the court will not address it.

10

Fiduciary relationships arise from any situation "where one person reposes a special trust in and reliance on the judgment of another or where a special duty exists on the part of one person to protect the interests of another." *Feeley v. NHAOCG, LLC*, 62 A.3d 649, 661 (Del. Ch. 2012). Delaware courts have held that fiduciary duties arise and apply to trusts more than any other legal relationship. *Ashby & Geddes, P.A. v. Brandt*, 806 F. Supp. 2d 752, 757 (D. Del. 2011); *see also Auriga Capital Corp. v. Gatz Props.*, 40 A.3d 839, 850 (Del. Ch. 2012); *Metro Ambulance Inc. v. E. Med. Billing, Inc.*, Civ. A. No. 13929, 1995 WL 409015, at *3 (Del. Ch. July 5, 1995) ("The traditional relationships recognized by equity as 'special' are express trustees and corporate officers and directors"); *McMahon v. New Castle Assocs.*, 532 A.2d 601, 604 (Del. Ch. 1987) (finding "the accountability of trustees" to trust beneficiaries to be the "classic example" of a fiduciary relationship).

By entering a fiduciary relationship, Defendant agreed to seek Plaintiff's interests in managing the AIC Trust's assets. (ECF No. 1-2 at 1.) A fiduciary has duties of reasonable care and loyalty, and the fiduciary must act in the best interest of the trust property's beneficial owner. *Stewart*, 112 A.3d at 297 (citing *In re USACafes, L.P. Litig.*, 600 A.2d 43, 48 (Del. Ch. 1991)). A trustee must be loyal to the beneficiary and may not engage in any self-interested transaction. *Joyce, on Behalf of CTC Minerals. Inc. v. Cuccia*, No. CIV. A. 14953, 1997 WL 257448, at *5 (Del. Ch. May 14, 1997). A fiduciary's duty to remain loyal to a beneficiary bars the fiduciary from undertaking any "unfair, fraudulent, or wrongful act." *Beard Research, Inc. v. Kates*, 8 A.3d 573, 602 (Del. Ch. 2010). A fiduciary also owes a duty of candor and may not use its superior knowledge of events to mislead a beneficiary. *Bomarko, Inc. v. Int'l Telecharge, Inc.*, 794, A.2d 1161, 1180 (Del. Ch. 1999) (quoting *Mills Acquisition Co. v. Macmillan, Inc.*, 559 A.2d 1261, 1280 (Del. Super. 1988)).

Plaintiff has properly alleged Defendant owed it fiduciary duties through the creation of the AIC Trust, Defendant's status as its trustee, and Plaintiff's position as its sole beneficiary. (ECF No. 1 ¶¶ 33, 121.)

B. *Plaintiff may allege contract and fiduciary duty claims.*

Defendant contends that Plaintiff cannot base a tort claim on an alleged breach of contractual duties because it has not identified an independent basis for that duty. (ECF No. 11-1 at 17.) "[W]here an action is based entirely on a breach of terms of a contract and not on a violation of an independent duty imposed by law, a plaintiff must sue in contract and not in tort." *Smyrnaa Hosp., LLC v. Petrucon Constr., Inc.*, C.A. No. N10C-01-061-CLS, 2013 WL 6039287, at *3 (Del. Super. Ct. Sept. 27, 2013) (quotation omitted) (applying rule to negligence claim).

However, Delaware recognizes a fiduciary's responsibilities arise not only by contract but also by nature of the fiduciary relationship. In other words, a fiduciary is "twice-tested," with the court first weighing the fiduciary's actions against contractual duties and then determining "whether those actions—even if permitted by law—were a breach of the trustee's fiduciary obligations." *Mennen v. Wilmington Trust Co.*, C.A. No. 8432-ML, 2015 WL 1914599, at *22 (Del. Ch. Apr. 24, 2015); *see also Paradee v. Paradee*, C.A. No. 4988-VCL, 2010 WL 3959604, at *11 (Del Ch. Oct. 5, 2010) (finding that a trustee's contractual right "does not answer the separate question of whether he breached his fiduciary duties"); *RJ Assoc., Inc. v. Health Payors' Org. Ltd. P'ship*, Case No. 16873, 1999 WL 550350, at *9-10 (Del. Ch. July 16, 1999) ("Conduct by an entity that occupies a fiduciary position . . . may form the basis of both a contract and a breach of fiduciary duty claim").

Delaware law only prohibits fiduciary duty claims that are wholly duplicative of contract claims. *Lee v. Pincus*, C.A. No. 8458-CB, 2014 WL 6066108, at *8 (Del. Ch. Nov. 14, 2014)

(finding that the *Nemec* principle, which states that courts dismiss fiduciary duty claims where the plaintiff seeks to impose obligations beyond the governing contract, is limited to alleged violation of right that is "solely a creature of contract"). Defendant's argument does not prevail because the "two claims [do not] overlap completely." *Grunstein v. Silva*, C.A. No. 3932-VCN, 2009 WL 4698541, at *6 (Del. Ch. Dec. 8, 2009) (citations omitted). There is no duplication and no basis for dismissal where the alleged fiduciary duty is based on additional facts or is broader in scope than the contractual obligations. *AM Gen. Holdings, LLC on behalf of Ilshar Capital LLC v. Renco Group, Inc.*, C.A. No. 7639-VCN, 2013 WL 5863010, at *10 (Del. Ch. Oct. 31, 2013). Here, the basis for Plaintiff's fiduciary duty claim is not the trust agreement, but rather the "special relationship of trust" formed with Defendant. (ECF No. 1 ¶121.) The court finds that the Complaint sufficiently alleges violations of the duty of loyalty (*Id.* ¶ 122(b)), candor (*Id.* ¶ 122(c)), and honesty (*Id.* ¶ 122(d)), and that such duties are inherent to the parties' relationship.

  *C. The trust agreement does not eliminate Defendant's fiduciary duty.*

Defendant relies on three of the trust agreement's provisions to suggest that all fiduciary duties inherent to its special relationship with Plaintiff have been eliminated by contract. (ECF 11-1 at 17) (citing ECF No. 1-2 § 1(b), 8(i), 8(n)). This argument must fail because the language of these provisions does not support Defendant's conclusions. None of the provisions refer to or could reasonably be interpreted to cover the fiduciary duties Defendant owed Plaintiff. Defendant first cites Section 1(b) under the trust agreement, which provides that:

> [t]he rights and duties of . . . the trustee under this Agreement are not subject to any conditions or qualifications not set forth in the Agreement.

(ECF No. 1-2 § 1(b).) This provision does not refer to fiduciary duties. Instead, it speaks only of Defendant's contractual duties ("duties . . . under this Agreement") and prevents trust parties from arguing Defendant had a contractual duty with non-contractual

13

components or an extra-contractual standard of care. In other words, Section 1(b) does not eliminate potential non-contractual duties; rather, it only limits the scope of existing contractual duties. Fiduciary duties arise from special relationships, not contract, and by its plain language, Section 1(b) does not affect the existence of such duties. *Ashby & Geddes*, 806 F. Supp. 2d at 757 (finding fiduciary duties are based on relationships).

Defendant then cites Section 8(n) under the trust agreement, which provides that:

> [Defendant's] duties and responsibilities shall be entirely administrative and not discretionary and determined only with reference to this Agreement and Applicable Insurance Law. [Defendant] is not charged with knowledge of any duties or responsibilities in connection with any other document or agreement.

(ECF No. 1-2 § 8(n).) This provision rejects contractual duties based on other agreements. The first sentence refuses to explain Defendant's contractual duties beyond the contract's terms. The second sentence states that Defendant may not be liable for conduct that would violate other contracts. This is a formal recognition that it would be unfair to impose liability on Defendant for violating contracts to which it is not a party and of which it may not even be aware. This sentence cannot be reasonably construed to reference a fiduciary duty because it specifically references any "other document or agreement." Fiduciary duties are not document-dependent and do not arise from any written agreement; they are relationship-based and inherent to Defendant's status as trustee. *Ashby & Geddes*, 806 F. Supp. 2d at 757.

Finally, Defendant relies on Section 8(i) under the trust agreement, which provides that:

> The Trustee shall not be liable for any loss . . . incurred or made arising out of or in connection with the performance of its duties hereunder . . . unless such loss . . . [is] caused by its own negligence, willful misconduct, or lack of good faith.

(ECF No. 1-2 § 8(i).) Section 8(i) also does not affect Defendant's fiduciary duties because, like Section 1(b), it expressly limits its effect to contractual duties –i.e. "duties hereunder in accordance with the provisions of this Agreement." Section 8(i)'s expressed

14

intent is to eliminate liability without fault for contract breaches. Specifically, the provision eliminates liability for Defendant's breaches of contract unless they are caused by "negligence, willful misconduct or lack of good faith." (ECF No. 1-2 § 8(i).)

The court rejects Defendant's argument that its fiduciary duties to Plaintiff are eliminated by the trust agreement. The court acknowledges Delaware law allows fiduciary duties to be restricted or eliminated by contract:

> (a) [T]he terms of a governing instrument may expand, restrict, eliminate, or otherwise vary any laws of general application to fiduciaries, trusts and trust administration, including, but not limited to, any such laws pertaining to:
>
> (4) A fiduciary's powers, duties, standard of care, rights of indemnification and liability to persons whose interests arise from that instrument.

12 Del. C. § 3303(a)(4).

However, none of the three provisions on which Defendant relies may be reasonably interpreted to do so because there is no express modification of the standard of care. None of the provisions reference a "fiduciary" duty, and by their plain language, these provisions are intended only to limit the scope of contractual duties or restrict the standard of care for breaches of contractual duties. Further, under Delaware law, a trust agreement may not disclaim a fiduciary's liability for willful misconduct:

> [H]owever, [] nothing contained in this section shall be construed to permit the exculpation or indemnification of a fiduciary for the fiduciary's own willful misconduct.

12 Del. C. 3303(a). Plaintiff's Complaint alleges Defendant committed willful misconduct in its operation of the AIC Trust (ECF No. 1 ¶¶ 113, 123.) Accordingly, the court finds that Plaintiff has sufficiently alleged that there exists an independent duty of good faith and care, which supports Plaintiff's claim for breach of fiduciary duty.

3. Negligence/Gross Negligence (Count 3)

Plaintiff repeats the allegations underlying its claim for breach of fiduciary duty, adding the adjectives "negligently, grossly negligently, recklessly, willfully, and wantonly" to the allegations. (ECF No. 1 ¶ 126.) As discussed above, the court finds that Plaintiff has sufficiently alleged that there exists an independent duty of good faith and care, which supports Plaintiff's claim for negligence/gross negligence.

4. Negligent Misrepresentation (Count 8)

Plaintiff alleges that Defendant repeatedly made false representations to Plaintiff, including: (a) misrepresenting the value of the Destra UIT units, (b) misrepresenting that the Destra UIT units were "taxable bonds" and constituted "Eligible Assets," and (c) misrepresenting the relationship between Defendant, USBT, Freestone, the Southport Lane entities, the Destra Fund, AAS, and Burns. (ECF No. 1 ¶ 176.)

To plead negligent misrepresentation under Delaware law, a plaintiff must allege facts showing: "(1) the defendant had a pecuniary duty to provide accurate information, (2) the defendant supplied false information, (3) the defendant failed to exercise reasonable care in obtaining or communicating the information, and (4) the plaintiff suffered a pecuniary loss caused by justifiable reliance upon the false information." *Steinman v. Levine*, No. Civ. A. 19107, 2002 WL 31761252, at *15 (Del. Ch. Nov. 27, 2002), *aff'd*, 822 A.2d 397 (Del. 2003).

Attached as Exhibit A to Defendant's Motion to Dismiss is a copy of an account statement for the period from January 1, 2014 to January 31, 2014 (the "January 2014 Account Statement") for the trust account. (ECF No. 11-3.) In evaluating a motion to dismiss under Rule 12(b)(6), the court may consider "documents attached or incorporated into the complaint without converting the motion to dismiss into a motion for summary judgment." *Floyd v. Mgmt. Analysis & Utilization,*

16

*Inc.*, C.A. No. 7:13-01971-JMC, 2014 WL 971937, at *11 (D.S.C. Mar. 12, 2014) (quotation omitted). Moreover, "when a defendant attaches a document to its motion to dismiss, 'a court may consider it in determining whether to dismiss the complaint [if] it was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity.'" *Id.* (quoting *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004)). The January 2014 Account Statement may be properly considered by the court because it is integral to and explicitly relied on in the Complaint. Plaintiff repeatedly cites the January 2014 Account Statement, including its reference to "taxable bonds," and describes in detail transactions from the January 1, 2014 to January 31, 2014 time period. (*See* ECF No. 1 ¶¶ 36-39, 44, 46, 54, 122(d), 151, 153, 157, 176.)

Defendant asserts that it had no duty to provide information and its misrepresentations were disclaimed in the form of boilerplate language on the account statements stating that the valuing information should not be relied upon by Plaintiff. (ECF No. 11-1 at 18.) Specifically, Defendant points to the disclaimer in the January 2014 Account Statement which advised that Defendant did not hold or control the Destra UIT, and so "the description of the asset and its price (or value) should not be relied upon for any purpose." (ECF No. 11-2 at 3.)

In *H-M Wexford LLC v. Encorp, Inc.*, the Chancery Court for Delaware considered such a disclaimer under similar circumstances. 829 A.2d 129 (Del. Ch. 2003). Where the disclosures did not obviate representations in a prior agreement, the court found they could not preclude justifiable reliance. *H-M Wexford LLC*, 832 A.2d at 146. The court acknowledges Defendant's argument that under the trust agreement Defendant had "no duty or responsibility with respect to the qualification, character, or valuation of the Assets deposited into the trust account." (ECF No. 1-2 § 2(b).) However, in the contract between the parties, Defendant, as trustee, agreed to maintain

assets of the trust, which were to be negotiable at any time. (*Id*.) These were the terms agreed upon by the parties, and Defendant cannot alter these terms by placing boilerplate disclaimer language as to the value of the funds on the statement to absolve itself of contractual duties. When Plaintiff attempted to withdraw the assets of the trust account, Defendant could not negotiate these assets. (ECF No. 1 ¶ 58.)

Further, Plaintiff properly pled reliance upon these representations in its Complaint. (*Id*. ¶¶ 94-95.)[8] At the time these representations were made by Defendant, Plaintiff had no reason to doubt the value of these securities as presented by Defendant. (*Id*. ¶ 180.) Lastly, Plaintiff properly pled that it suffered a pecuniary loss caused by its reliance. (*Id*. ¶ 181.)

Therefore, Plaintiff's allegations in its Complaint are sufficient to survive the Motion to Dismiss.

---

[8] Plaintiff further asserts in support of its reliance argument that Defendant misrepresented "the relationship between the entities, trusts, and assets involved." (ECF No. 42 at 28.) However, the Complaint does not allege that Defendant stated anything about this "relationship." To the contrary, Plaintiff repeatedly faults Defendant for failure to disclose. (*See* ECF No. ¶¶ 50, 51, 122(b), 126(b).) Delaware law does not recognize negligent misrepresentation "premised on an omission of material fact." *Conway v. A.I DuPont Hosp. for Children*, C.A. No. 04-4862, 2007 WL 560502, at *7 (E.D. Pa. Dec. 14, 2007). Under Delaware law, "'liability for the tort of negligent misrepresentation is premised on defendant's supply of 'false information,' and not on the omission of material information.'" *Id*. (quoting *Brug v. Enstar Grp., Inc.*, 755 F. Supp. 1247, 1259 (D. Del. 1991)); *see also George v. Kuschwa*, 1986 WL 6588, at *4 (Del. Super. Ct. May 21, 1986) ("The Court finds no authority for the proposition that silence or non-action states a claim for negligent misrepresentation."), *aff'd*, 518 A.2d 983 (Del. 1986). Therefore, the court does not find that Defendant negligently misrepresented "its relationships."

## V. CONCLUSION

For the foregoing reasons, the court **DENIES** Defendant's Motion to Dismiss (ECF No. 11).

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

September 28, 2017
Columbia, South Carolina