IN THE UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

| | | |
|---|---|---|
| ACCIDENT INSURANCE COMPANY, INC., A SOUTH CAROLINA CORPORATION, | ) ) ) | Civil Action No. 3:16-cv-2621-JMC |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| U.S. BANK NATIONAL ASSOCIATION | ) ) | **FIRST AMENDED COMPLAINT** |
| Defendants, | ) ) | |
| U.S. BANK NATIONAL ASSOCIATION, | ) ) | |
| Third-Party Plaintiff, | ) ) | |
| v. | ) ) | |
| SOUTHPORT LANE ADVISORS, SOUTHPORT SPECIALTY FINANCE, ADMINISTRATIVE AGENCY SERVICES, and ALEXANDER CHATFIELD BURNS, | ) ) ) ) | |
| Third-Party Defendants. | ) ) | |
| _____ | ) | |

Plaintiff Accident Insurance Company alleges and avers as follows:

**<u>PARTIES</u>**

1.     Accident Insurance Company, Inc. ("AIC") is a company duly organized and in good standing under the laws of the State of South Carolina, with its principal place of business in Lexington County, South Carolina.

2.     Defendant U.S. Bank National Association ("U.S. Bank") is a wholly owned subsidiary of U.S. Bancorp, and is a nationally banking association organized under the laws of the United States with its principal place of business in Minneapolis, Minnesota.

3.     Defendant U.S. Bank's main office is in Cincinnati, Ohio.

4.      As set forth below, U.S. Bank engaged in actions or omissions that constitute negligence, lack of good faith or willful misconduct, with proximate injury to AIC in South Carolina.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, because the parties are citizens of different states and the amount in controversy exceeds $75,000.

6.      U.S. Bank has sufficient minimum contacts with South Carolina to support this Court's exercise of personal jurisdiction over them in this case, including but not limited to:

a.  U.S. Bank has offices in South Carolina and deliberately engages in significant and long-term business activities in South Carolina.  In doing so, U.S. Bank purposefully avail itself of the privilege of conducting business in South Carolina.

b.  U.S. Bank entered into a contract with AIC, a South Carolina corporation, requiring U.S. Bank to create a trust account for the sole use and benefit of AIC, which at that time was known to be a South Carolina-based insurance company.

c.  U.S. Bank communicated frequently with AIC in South Carolina regarding the contract and trust account, including sending monthly account statements to AIC in South Carolina.

d.  U.S. Bank maintains and operates several trust accounts for other South Carolina insurers.

e.  The claims in this case arise out of the conduct of U.S. Bank in regard to the contract and trust account created for the sole use and benefit of AIC.

f.  The conduct of U.S. Bank caused harm in South Carolina including but not limited to requiring a South Carolina corporation (AIC) to have to use its own funds to pay claims rather than rely upon the funds in the trust account.

g.  The conduct of U.S. Bank caused harm in South Carolina because the deposit of securities into trust accounts had South Carolina insurance companies as beneficiaries and substantially impacted South Carolina insureds.

h.  Because of the presence of U.S. Bank in South Carolina and the fact that the conduct complained of relates to a contract entered into with a South Carolina corporation, to be performed in whole or in part in South Carolina, U.S. Bank should have foreseen being sued in South Carolina.

i.  Because U.S. Bank filed a third-party complaint against other conspirators in this South Carolina civil action.

7.  Venue is proper in the District of South Carolina pursuant to 28 U.S.C. § 1391, because a substantial portion of the events giving rise to the dispute between AIC and U.S. Bank occurred in South Carolina.

## GENERAL ALLEGATIONS

### Freestone Insurance Company

8.  Dallas National Insurance Company ("DNIC") is a former Texas domestic insurance company.

9.  In March of 2013, DNIC was purchased by Lonestar Holdco, LLC, a wholly owned subsidiary of Southport Lane, L.P. ("Southport Lane"), a private equity firm owned and controlled by Alexander Chatfield Burns ("Burns").

10.  DNIC's name was subsequently changed to Freestone Insurance Company ("Freestone"), and DNIC is a domestic Delaware insurance company with its principal place of business in Wilmington, Delaware.  It is now in liquidation.

11.  Freestone succeeded to the contractual liabilities of DNIC, including the contractual relationship with AIC.

12.  Upon information and belief, as part of Lonestar Holdco, LLC's purchase, the Texas Department of Insurance required certain capital infusions by Lonestar Holdco, LLC to bolster the surplus of Freestone.

3

13.     Upon information and belief, as part of Lonestar Holdco, LLC's capital infusion, on or about March 12, 2013, Lonestar Holdco, LLC contributed a security known as Beaconsfield Funding ABS Trust 2011-1 ("Beaconsfield Fund") allegedly worth $50,000,000.00.

14.     Before January 1, 2014, U.S. Bank knew or should have known its affiliated entity, U.S. Trust, N.A. ("U.S. Trust") was a party to the Amended and Restated Trust Agreement dated May 3, 2013, between Beaconsfield Sponsor LLC as Seller, U.S. Trust as Owner Trustee, and Defendant U.S. Bank as Certificate Registrar (the "Beaconsfield Trust 2011-1 Agreement").

15.     Before January 1, 2014, Defendant U.S. Bank knew or should have known the Beaconsfield Fund was also affiliated with Southport Lane and Burns.

16.     Before January 1, 2014, Defendant U.S. Bank knew or should have known the Beaconsfield Fund was worth less than reported by its affiliate U.S. Trust.

17.     Before January 1, 2014, Defendant U.S. Bank knew or should have known the Beaconsfield Fund was a subterfuge and fraud used by Lonestar Holdco, LLC and Burns to enable Lonestar Holdco, LLC's purchase of DNIC.

18.     Before January 1, 2014, Defendant U.S. Bank knew or should have known the Beaconsfield Fund had to be liquidated because the fund became worthless and a filing with the Delaware Department of Insurance was upcoming to certify the value of the fund.

19.     Before January 1, 2014, Defendant U.S. Bank knew or should have known the Beaconsfield Fund was sold to a co-conspirator and/or affiliate of U.S. Bank in September 2013 for an alleged sales price of $51,420,001.

20.     Before January 1, 2014, Defendant U.S. Bank knew or should have known that the day after the sale of the Beaconsfield Funds, a co-conspirator and/or affiliate of U.S. Bank sold

$50,000,000.00 of Destra Funds (as defined herein) and $30,000,000.00 of a security known as Whiterock to Freestone.

21.     Before January 1, 2014, Defendant U.S. Bank knew or should have known the Destra Fund was also established and controlled by Burns and his affiliated entities.

22.     Before January 1, 2014, Defendant U.S. Bank knew or should have known of the relationship between the Destra Funds, Burns, Southport, and Freestone because its affiliated entity, U.S. Trust, served as the trustee of the Destra Funds. U.S. Bank served as Trustee or Custodian of all of the Southport-related insurance entities and participated in transfers of Destra units between all of the Southport entities.

23.     Upon information and belief, in or about March of 2013, Freestone was re-domesticated and formed as a Delaware domestic insurance company.

### The Fronted Insurance Program and Trust Agreement

24.     On or about April 2013, AIC contracted with DNIC, now known as Freestone, in a fronted insurance program memorialized by that certain Program Agreement (the "Program Agreement"). A true and correct copy of the Program Agreement was filed with the original complaint. *See* Docket No. 1, at Ex 1. Freestone succeeded to the contractual liabilities of DNIC. In fronted insurance programs, the insurance policies are issued in the name of the front (in this case AIC), but the reinsurer (in this case Freestone) bears the actual risk of the program performance. The insurance company (in this case, AIC) receives a fee, calculated on the premium written by reinsurer (Freestone) on AIC's policies.

25.     In order for AIC to have a successful "fronting" program with one or more of its fronting partners, it needed a sufficient rating from A.M. Best Company. At the time AIC and DNIC entered into the fronting insurance program, AIC's A.M. Best rating was A-.

26.     Freestone was responsible for the risk associated with such insurance policies issued in the name of AIC, including but not limited to the administration and payment of any claims made under those policies.

27.     Freestone's reinsurance obligations to AIC under the Program Agreement were secured by a reinsurance collateral trust ("**AIC Trust**") established for the sole benefit of AIC. U.S. Bank was the trustee under the Trust Agreement dated September 25, 2013 by and among Freestone as Grantor, Accident as Beneficiary, and U.S. Bank as Trustee trust agreement ("**Trust Agreement**").

28.     Before January 1, 2014, U.S. Bank knew or should have known the AIC Trust was intended to provide liquid, available collateral assets to AIC to satisfy all of Freestone's reinsurance obligations in the event that Freestone became insolvent. Before January 1, 2014, U.S. Bank knew or should have known that state regulations governing insurers and reinsurers generally require that assets serving as collateral be liquid and marketable, allowing them to be quickly converted to cash to pay claims. Such funds generally are known as "eligible securities."

29.     Pursuant to the Program Agreement, Freestone was required to pay AIC fees ("Fronting Fees") in the amount equal to no less than 7.5% of the "Written Premium" with respect to all Policies.[1]

30.     A true and correct copy of the Trust Agreement is attached to the original complaint. *See* Docket No. 1, at Exhibit 2.

31.     Before January 1, 2014, U.S. Bank knew or should have known that under the terms of the Trust Agreement, Freestone was supposed to deposit only cash and "Eligible Securities"

---

[1] "Policies" were those insurance policies issued by AIC under the Program Agreement. *See* Docket No. 1, at Ex. 1, ¶ 2.

into a trust account ("Trust Account") established at U.S Bank. Eligible Securities were defined to "mean and include certificates of deposit issued by a United States bank and payable in United States legal tender and securities representing investments of types specified in subsections (1), (2), (3), (4), (6), (8) and (10) of the New York Insurance Law; provided, however, that no such securities shall have been issued by a Parent[2] or a Subsidiary[3] of either the Grantor or the Beneficiary."

32.    Pursuant to Section 8 of the Trust Agreement, U.S. Bank agreed that it would, among other things:

> a.  Furnish to [Freestone and AIC] an accounting of all Assets[4] in the Trust Account upon its inception and thereafter at intervals no less frequent than as of the end of each calendar month. Such accounting shall include a statement of the Assets in the Trust Account and shall be given as soon as practicable, but in no event later than fifteen (15) days after such date.
>
> b.  Before accepting any Asset for deposit to the Trust Account, the Trustee shall determine that such Asset is in such form that [AIC] when necessary may, or the Trustee upon such direction by [AIC] will, negotiate such Asset without the consent or signature from [Freestone] or any person or entity other than [U.S. Bank] in accordance with the terms of this Agreement.

(Dockett No. 1, at Ex. 2, ¶ 8(a), (b)).

33.    Before January 1, 2014, U.S. Bank, as AIC's trustee and fiduciary, knew or should have known that it was required to hold only Eligible Assets in the Trust Account established by Freestone for the sole benefit and use of AIC. Pursuant to state law, U.S. Bank had a duty to act in good faith and in accordance with the purpose of the trust.

---

[2] "Parent" is defined as "an institution that, directly or indirectly, controls another institution." *See* Docket No. 1, at Ex. 2, ¶ 12(h).

[3] "Subsidiary" is defined as "an institution controlled, directly or indirectly, by another institution." *See* Ex. 2, ¶ 12(i).

[4] "Assets" is defined as "Eligible Securities received from [Freestone] or invested by [U.S. Bank] herein pursuant to the terms of this Agreement." Ex. 2, ¶ 12(c).

34.    Before January 1, 2014, U.S. Bank knew or should have known the Trust Agreement provides that U.S. Bank "shall not be responsible for the existence, genuineness or value of any of the Assets . . . except to the extent that such action or omission constitutes negligence, lack of good faith or willful misconduct." (Docket No. 1, at Ex. 2, ¶ 8(i); ¶ 8(l)).  Thus, U.S. Bank knew or should have known that it *would be* responsible for the existent, genuineness or value of any of the Assets if its own actions or omissions were negligent, lacked of good faith or amounted to willful misconduct. Upon information and belief, U.S. Bank did engage in acts and omissions that were negligent, lacked good faith, and amounted to willful misconduct under the applicable state law.

35.    In December of 2013, the Trust Account was opened at U.S. Bank and certain assets were held in the Trust Account, including New Mexico State Hospital bonds and Port of Seattle bonds valued at over $9,000,000.  Before January 1, 2014, U.S. Bank knew or should have known that the Trust Account was originally funded with Eligible Securities as required by the terms of the Trust Agreement.

### The Substitution of Assets and Purchase and Sale of Securities

36.    During the month of January 2014, Freestone's investment advisor, Southport Lane Advisors, LLC (an entity affiliated with Southport Lane and Alexander Chatfield Burns) converted the majority of AIC's liquid investments to illiquid investments known as Destra Target Income Unit Investment units ("Destra UITs").

37.    On or about January 13, 2014, U.S. Bank sold the New Mexico State Hospital bonds ("New Mexico Bonds") held in the Trust Account for $2,004,475, plus accrued interest of $45,787.50.   U.S. Bank failed to give AIC prior notice of the sale of these bonds.

38.     On or about January 14, 2014, U.S. Bank sold the Port of Seattle bonds ("Port of Seattle Bonds," and together with the New Mexico Bonds, the "Bonds") held in the Trust Account for $7,381,762.05, plus accrued interest of $152,472.92.  U.S. Bank failed to give AIC prior notice of the sale of these bonds.

39.     On January 16, 2014, U.S. Bank, in violation of the Trust Agreement, purchased the following assets which were then substituted and/or deposited into the Trust Account:

     i.    193 shares of Camelot Asset Holdings at $1,000.00 per share for a total of $193,000 ("Camelot Shares");

    ii.    1,487 units of Destra Targeted Income Unit Investment Trust Series I at $1,008.86 per unit for a total of $1,500,174.12;

   iii.    1,720 units of Destra Targeted Income Unit Investment Trust Series II at $1,023.52 per unit for a total of $1,760,454.40;

   iv.    1,099 units of Destra Targeted Income Unit Investment Series III at $1,028.93 per unit for a total of $1,130,797.07;

    v.    2,500 units of Destra Targeted Income Unit Investment Trust Series IV at $1,000.00 per unit for a total of $2,500,000.00;

   vi.    2,500 units of Destra Targeted Income Unit Investment Trust Series V at $1,000.00 per unit for a total of $2,500,000.00.

40.     Upon information and belief, Camelot Asset Holding, LLC was also controlled and owned indirectly by Southport entities and Burns.

41.     U.S. Bank conducted and reported the purchase of the Destra UITs in the Trust Account as an internal transaction with no outside broker involved.

42.     Before January 1, 2014, U.S. Bank knew or should have known that its affiliate, U.S. Trust, was the custodian of and is involved in the management of the Destra UITs and the Camelot Shares held in the Trust Account, and is also the trustee of the Destra Fund.  Thus, it was a conflict of interest for U.S. Bank to accept the affiliated assets into AIC's Trust Account.

43.     U.S. Bank issued a bank statement for the period from January 1, 2014 to January 31, 2014 which (i) reported the sale of the Bonds and the purchase of the Destra UITs and the Camelot Shares; (ii) listed the Destra UITs as "taxable bonds"; and (iii) reported the value of the Destra UITs of $9,391,423.49 and the Camelot Shares of $193,000.00.

44.     All of the Destra UITs were listed on the Trust Account bank statements sent to AIC with purported CUSIP[5] numbers which were invalid and false and which U.S. Bank knew or should have known were invalid and false before accepting these investments into the Trust Account.

45.     The January 2014 bank statement provided by U.S. Bank to AIC on the Trust Account indicated that the Destra Series IV and Destra Series V UITs, purportedly worth $5,000,000.00, had not been valued since November 23, 2013 and annotated that "[n]o current price was available."  U.S. Bank knew or should have known this value was not true,  and that AIC would rely on the valuation statements in reporting collateral value to state regulators and others.

46.     U.S. Bank's failure to ensure that the Destra UITs were in a form which were negotiable without the consent of Freestone or any other party, and contained valid CUSIPs, was in violation of Section 8(b) of the Trust Agreement.

47.     U.S. Bank also failed to follow paragraph 3(c) of the Trust Agreement with regard to the substitution of municipal bonds for Destra securities.

48.     U.S. Bank negligently, recklessly, willfully and/or wantonly allowed the purchase and substitution of the assets in the Trust Account without ensuring the ability of AIC to negotiate

---

[5] "CUSIP" is an acronym for the Committee on Uniform Securities Identification Procedures. CUSIPs are alphanumeric codes that identify financial instruments and are used to facilitate the clearance and settlement process of securities.

the Destra UITs and by U.S. Bank's failure to confirm the validity of the CUSIPs on the Destra UITs, in breach of its custodial and fiduciary obligations for the Trust Accounts.

49.     U.S. Bank negligently, recklessly, willfully, and/or wantonly failed to make a determination the Assets were in negotiable form prior to accepting them for deposit into the Trust Account in breach of its contractual and fiduciary duties.   If U.S. Bank did make such determination before accepting the Destra and Camelot Assets, then its failure to protect AIC's interest amounted to bad faith and gross negligence.  Upon information and belief, U.S. Bank knew or should have known that the Destra and Camelot Assets were controlled by entities affiliated with Freestone in contravention of the Trust Agreement.

50.     U.S. Bank negligently, recklessly, willfully, and/or wantonly allowed the purchase and substitution of the assets in the Trust Account without disclosure to AIC of Defendant's affiliate (U.S. Trust's) role as Trustee for the Destra Fund (as defined below), in breach of its custodial and fiduciary obligations for the Trust Accounts.

51.     U.S. Bank negligently, recklessly, willfully, and/or wantonly allowed the purchase and substitution of the assets in the Trust Account without disclosure to AIC of U.S. Bank's knowledge of the affiliated relationships between Freestone, the Southport entities, and the Destra UITs, and Freestone and Camelot Asset Holdings.

52.     U.S. Bank knew or should have known that the value of the Destra UITs was far less than reported to AIC on the bank statements for the Trust Account.

53.     U.S. Bank negligently, recklessly, willfully, and/or wantonly failed to disclose to AIC the actual value of the Destra UITs.

54.     U.S. Bank negligently, recklessly, willfully, and/or wantonly misrepresented the Destra UITs as "taxable bonds" on the bank statements sent to AIC.

11

55.     By February 28, 2014, the Trust Account had: (1) approximately $87.70 in cash; (2) Destra UITS purportedly worth $6,891,423.29, but worth far less; (3) Camelot Shares purportedly worth $193,000.00; and (4) Cook County II series A municipal bonds valued at $2,604,408.05.

56.     U.S. Bank allowed readily liquid and valuable assets held in the Trust Account to be sold and purchased the illiquid Destra UITs with little to no value to the advantage and interest of U.S. Bank.

57.     U.S. Bank also transferred into the AIC Trust Account more Destra funds with purported value of about $2.4 million in December 2015, without the consent or knowledge of the Plaintiff.   At the time of this transfer, U.S. Bank had filed its third party complaint in the case of *U.S. Bank v. Southport* (the *Companion* case) where the Bank alleges the Destra units were of little or no value.

58.     AIC has demanded that U.S. Bank tender the Assets in the Trust Account, but U.S. Bank has failed and refused to do so in violation of the Trust Agreement.   U.S. Bank has also failed to liquidate and negotiate such investments to mitigate AIC's damages resulting from U.S. Bank's wrongful conduct.

59.     AIC has demanded that U.S. Bank liquidate and negotiate the Destra UITs in the Trust Account, but U.S. Bank has failed and refused to liquidate and negotiate such investments stating that there was an issue with the documentation related to the transfer of the Destra UITs in the Trust Account.  U.S. Bank was responsible for ensuring that funds in the Trust Account were negotiable.

60.     U.S. Bank's refusal and inability to tender, liquidate and negotiate the Destra UITs are in violation of Section 8(b) of the Trust Agreement.

61.     U.S. Bank negligently, recklessly, willfully, and/or wantonly allowed the purchase and substitution of the assets in the Trust Account without ensuring the ability of AIC to negotiate the Destra UITs and by failing to properly document the transfer of the Destra UITs in the Trust Account, in breach of its custodial and fiduciary obligations for the Trust Account. U.S. Bank acted in bad faith.

### Destra Targeted Income Unit Trust Series

62.     Before January 1, 2014, U.S. Bank knew or should have known that its affiliate, U.S. Trust, acted as trustee for the Destra Targeted Income Unit Investment Trust ("Destra Fund").

63.     Series I, II and II of the Destra Fund were established in 2012 and registered with the United States Securities and Exchange Commission on October 1, 2012.

64.     Series IV and V of the Destra Funds were formed on November 21, 2013.

65.     Destra Fund is a unit investment trust. Generally, unit investment trusts offer a fixed, unmanaged portfolio, generally of stocks and bonds, as redeemable "units" to investors for a specific period of time. They are designed to provide capital appreciation and/or dividend income benefitting its investors. Each unit typically costs $1,000 and is sold to investors by brokers.

66.     Pursuant to the Standard Terms and Conditions of Trust for Destra Targeted Income Unit Investment Trust dated October 1, 2012 (the "Destra Fund Trust Agreement"), the "Depositor and Sponsor" of the Destra Fund was Destra Capital Investments, LLC, the "Evaluator and Supervisor" was Destra Capital Advisors, LLC, and the "Administrative Agent" was Administrative Agency Services, LLC.

67.     Administrative Agency Services, LLC ("AAS"), as the "Administrative Agent" of the Destra Funds was responsible for the valuation of the Portfolio Securities in the Destra Funds.

AAS was controlled by Burns.  Before January 1, 2014, U.S. Bank knew or should have known that its affiliate, U.S. Trust, was aware that Burns was the controlling party of AAS.

68.    Before January 1, 2014, U.S. Bank knew or should have known that AAS is, and at all relevant times herein was, also owned and controlled by Burns, who was also the controlling party of Freestone.

69.    The Destra Fund was created for the alleged purpose of establishing an investment fund or security with value and was purportedly traded on open markets so as to have a fixed established value as a security.

70.    Before January 1, 2014, U.S. Bank knew or should have known that its affiliate, U.S. Trust, as Trustee of the Destra Fund, was obligated to evaluate the assets of the Destra Fund and to provide to the general public and to investors of that fund accurate and timely evaluations of the value of investments within the fund.

71.    Before January 1, 2014, U.S. Bank knew or should have known that its affiliate, U.S. Trust, as Trustee of the Destra Fund, was and is obligated to assess the validity and valuation of assets within the Destra Fund.

72.    Further, before January 1, 2014, U.S. Bank knew or should have known that its affiliate, U.S. Trust, was charged with the duty to report to the Securities and Exchange Commission ("SEC"), the general public, and specifically to the investors within the Destra Fund, the nature of the fund, the assets within the Destra Fund, and the valuation of assets.

73.    Before January 1, 2014, U.S. Bank knew or should have known that the same party who indirectly owned and controlled Freestone and the Southport entities, Burns, also owned and controlled AAS.

74.     Before January 1, 2014, U.S. Bank knew or should have known that its affiliate, U.S. Trust, received compensation for its services under the Destra Fund Trust Agreement and all trust agreements related to subsequent Series of the Destra Fund.

75.     In order to be included in the portfolio securities ("Portfolio Securities") of the Destra Fund, such investments required a rating of "A" or higher by a nationally recognized statistical rating organization, or if unrated, the investment had to be deemed by the Administrative Agent to be of comparable quality to securities rated "A" or higher.

76.     The first series of Destra Funds, Series I, consisted of Portfolio Securities of Extensor Capital Investment Partners II, LLC and TIO Series I, LLC, and senior debt security issued by Premium Wine Acquisitions, LLC.

77.     Upon further information and belief, Premium Wine Acquisitions, LLC is also affiliated with Burns and the Southport entities.

78.     In order to exchange a Portfolio Security within the Destra Fund, U.S. Trust is required to notify the holders of the units and, only upon acceptance of 100% of the holders of such units, U.S. Trust is authorized to accept such exchange.

79.     Destra Fund through its Trustee, U.S. Trust, issued Destra UITs.  The value of the Destra Units was based upon the initial represented value, the subsequent reported value of the assets of the Destra Fund, and the trades of Destra UITs.

80.     Pursuant to the Destra Fund Trust Agreement, the Portfolio Securities were to be deposited with U.S. Trust and then documentation delivered evidencing the ownership of the units.

81.     Before January 1, 2014, U.S. Bank knew or should have known that its affiliate, U.S. Trust, was required to prepare and file annual tax returns for each Series in the Destra Fund.

82.    Before January 1, 2014, U.S. Bank knew or should have known that its affiliate, U.S. Trust, was also required to notify the holders of the Destra UITs if the issuer of any of the Portfolio Securities shall be made to issue new securities or to exchange securities for Portfolio Securities and of the terms of such offer.

83.    Pursuant to Section 5.03 of the Destra Trust Agreement, holders of the Destra UITs were not allowed to "sell, exchange, assign, transfer, give, pledge, encumber, or hypothecate its Units" except for transfer of the Units to a "Qualified Purchaser acceptable to the Administrative Agent."

84.    Pursuant to Section 3.08 of the Destra Trust Agreement:

In the event an offer by the issuer of any of the Portfolio Securities shall be made to issue new securities, or to exchange securities, for Portfolio Securities, the Administrative Agent shall direct [U.S. Trust] in writing to notify the holders of the Units of the terms of such offer. Upon the direction of no less than 100% of such holders, [U.S. Trust] shall accept such offer ... In the event less than 100% of such holders direct [U.S. Trust] to accept such offer, [U.S. Trust] shall reject such offer.

85.    The Portfolio Securities in the Destra Funds were exchanged over time and new Destra Unit Series were created, all with the knowledge of U.S. Trust and U.S. Bank.

86.    Before January 1, 2014, U.S. Bank knew or should have known that it could not accept Destra UITs that were created and managed by an affiliated entity, like U.S. Trust.

87.    Before January 1, 2014, U.S. Bank knew or should have known that its affiliate, U.S. Trust, reported the purported value of the Destra Fund.  The document in which the valuations are set forth is Form N-SAR Semi-Annual Report to Registered Investment Companies. This form was filed with the Securities and Exchange Commission for the years 2012, 2013, and 2014 (collectively "Valuation Statements").  U.S. Bank knew or should have known that U.S. Trust represented the value of the Destra Fund to be in excess of $195 million for the year 2012, $338 million in 2013, and an "unknown value" in 2014.

16

88.    Pursuant to SEC regulations, U.S. Trust reported valuations of the Destra Fund in reports sworn to and executed by officers of U.S. Trust, and U.S. Bank had knowledge of this before it accepted Destra into AIC's Trust Account.

89.    AIC avers that all investments and assets of the Destra Fund were worthless and of no real value.  For example, an asset within the fund with a purported valuation of $120 million dollars was a painting allegedly painted by the Italian artist Michelangelo Merisi da Caravaggio known as "David Holding the Head of Goliath."

90.    Before January 1, 2014, U.S. Bank knew or should have known that its affiliate, U.S. Trust, as Trustee of the Destra Fund, represented that the Destra Fund held, possessed, and owned the painting, and established and reported the Caravaggio painting to have a value in excess of $120 million dollars. In or about December 2017, a secured creditor in Florida foreclosed on its interest in the painting and took ownership of it.  So, not only was the painting worthless but it was no longer even part of the Destra Fund.

91.    Before January 1, 2014, U.S. Bank knew or should have known that its affiliate, U.S. Trust failed in its fiduciary duties to evaluate the validity, provenance, and value of the Caravaggio painting.  Upon information and belief, no reputable person or entity has recognized the painting as a work of the artist, nor has any expert or evaluator of art determined the validity or valuation of the painting.  Upon information and belief, the painting is worthless.

92.    Before January 1, 2014, U.S. Bank knew or should have known that its affiliate, U.S. Trust's values expressed in the Valuation Statements were fabricated and misleading.

93.    Every quarter beginning in October 2012, U.S. Bank through its affiliate U.S. Bank Fund Services, LLC provided the net asset values (NAV) of the Destra units to NASDAQ which was the basis of U.S. Bank's valuation on the Trust Account bank statements. Unlike most

securities trade on NASDAQ, U.S. Bank knew or should have known the Destra units were never traded publicly but instead were valued solely by the affiliate U.S. Bank Fund Services, LLC. AAS did not provide values of the Destra units, but instead those NAVs were calculated by U.S. Bank Fund Services, LLC., an affiliate and co-conspirator of U.S. Bank.

94.     Before January 1, 2014, U.S. Bank knew or should have known that the assets within the Destra Fund were valueless and/or illiquid because the funds were never sold or traded upon any established or recognized market.

95.     Before January 1, 2014, U.S. Bank knew or should have known that its affiliate, U.S. Trust, provided incorrect Valuation Statements, thereby creating false values for the Destra UITs while knowing that the valuations would be relied upon by third parties and regulatory agencies.

96.     Before January 1, 2014, U.S. Bank knew or should have known that AIC would rely upon these valuations in determining the value of the securities held in the Trust Account.

97.     AIC did, in fact, rely on these valuations in determining the value of the Destra Funds held in the Trust Account.

98.     Upon information and belief, U.S. Bank or its affiliates were the majority unit holders of the Destra Fund prior to the transfer of the Destra UITs to the Trust Account.

99.     Before January 1, 2014, U.S. Bank knew or should have known that its affiliate, U.S. Trust, in cooperation and in association with U.S. Bank, "sold" Destra units to Freestone.

100.     Before January 1, 2014, U.S. Bank knew or should have known sales of Destra UITs to Freestone were at overinflated values.

101.     The majority of Freestone's investments were comprised of the Destra UITs immediately prior to the July 2014 liquidation of Freestone.

102.    Other than U.S. Bank and/or its affiliate, the only other holders of the Destra UITs were Southport Specialty Finance ("SSF") (another entity affiliated with Burns), AIC, Freestone, and another insurance company with a fronting arrangement with Freestone: Companion Insurance Company of South Carolina.

103.    Given the relationship among U.S. Bank, U.S. Trust, Freestone, the Destra Fund, the Southport Lane entities, SSF, AAS, and Burns, U.S. Bank knew or should have known that the value of the Destra UITs as represented in its own bank statements to AIC were overinflated. Plaintiff AIC had no knowledge of this information until about six months after the substitution of Eligible Assets for Destra and Camelot assets had already occurred.

104.    U.S. Bank engaged in self-dealing and bad faith in that it accepted Destra Funds that were valueless and illiquid and in which its affiliate, U.S. Trust, acted and was compensated as the trustee.

105.    As trustee under the Trust Agreement, U.S. Bank has negligently, grossly negligently, recklessly, and intentionally violated its duties as trustee in all of the ways set out above, including falsely stating values of assets within the Destra Fund and in failing to disclose the relationship between U.S. Bank, U.S. Trust, Freestone, the Destra Fund, the Southport Lane entities, SSF, AAS, and Burns, all to the detriment of AIC.

106.    In addition, U.S. Bank acted in bad faith.

107.    Given the relationship among U.S. Bank, U.S. Trust, Freestone, the Destra Fund, the Southport Lane entities, SSF, AAS, and Burns, U.S. Bank should have never accepted those assets into the Trust Account.

## The Rehabilitation and Liquidation of Freestone

108.    On April 28, 2014, the Court of Chancery of the State of Delaware ("Delaware Court") placed Freestone in rehabilitation and appointed the Insurance Commissioner for the State of Delaware, the Honorable Karen Weldin Stewart, CIR-ML, as the statutory receiver ("Receiver") of Freestone.

109.    On June 11, 2014, the Receiver filed a Verified Petition for the Entry of Liquidation and Injunction Order with the Court.

110.    On July 22, 2014, the Delaware Court entered a Liquidation and Injunction Order ("Liquidation Order") placing Freestone in liquidation pursuant to 18 Del. C. §§ 5905, 5906, and 5910(b).

111.    The Delaware Court found that Freestone's impairment, insolvency, unsound condition, and hazardous condition continued to exist and that further efforts to rehabilitate Freestone would be useless. The Liquidation Order continued the appointment of the Commissioner and her successors as Receiver and continued to vest the Receiver with "all right, title and interest in, of, and to the property of Freestone."

112.    The collapse and insolvency of Freestone was the direct result of Freestone owning assets known as "Destra" that were determined by the Court of Chancery to be illiquid and of no value.

113.    As a direct and proximate result of U.S. Bank's breach of the Trust Agreement by acceptance and substitution of the Bonds and cash with Destra UITs and the Camelot Shares, and failure to provide negotiable securities in the Trust Account, AIC was denied access to adequate collateral for the Program Agreement.  The purpose of the Trust Account of AIC with U.S. Bank

was to protect AIC in the event Freestone failed to meet its obligations under the agreements between AIC and Freestone.

114.    Freestone collapsed and is no longer able to honor its obligations under the Program Agreement, and AIC has been required and will continue to be required to insure, adjust, and pay claims using its own dollars for those insurance policies covered by the Program Agreement. Because the Destra Funds are worthless, AIC now must pay claims from its own funds that otherwise would be paid by the funds in the Trust Account.

115.    As a direct and proximate cause of U.S. Bank's negligent, grossly negligent, reckless, willful, and/or wanton conduct described above and its failure to adhere to its fiduciary obligations as a trustee to AIC pursuant to the Trust Agreement, AIC has suffered actual damages, direct and indirect, special, incidental, and consequential damages in excess of $75,000, and it is entitled to recover all such damages, and to be awarded punitive damages and lost profits.

## FIRST CAUSE OF ACTION
### (Breach of Contract)

116.    AIC incorporates paragraphs 1 through 113 as if restated herein.

117.    Pursuant to the Trust Agreement, U.S. Bank is obligated to meet the following contractual obligations:

> Before accepting any Asset for deposit to the Trust Account, the Trustee shall determine that such Asset is in such form that [AIC] when necessary may, or the Trustee upon such direction by [AIC] will, negotiate such Asset without the consent or signature from [Freestone] or any person or entity other than [U.S. Bank] in accordance with the terms of this Agreement.

(Docket No. 1, at Ex. 2, ¶ 8(a), (b)).

118.    U.S. Bank breached its contractual obligations to AIC by accepting the Destra UITs in the Trust Account without validating the CUSIP numbers listed identified by U.S. Bank and by failing to ensure that documentation of the transfer of the Destra UITs such that the Destra UITs

were negotiable without the consent or signature from Freestone or any without the consent or signature from [Freestone] or any person or entity other than [U.S. Bank] in accordance with the terms of this Agreement.  The breach was negligent, willful, and in bad faith.

119.    AIC has met all of its obligations under the Trust Agreement.

120.    As a direct and proximate result of U.S. Bank's breach of contract, AIC has suffered damages in excess of $75,000, including the loss of the value of its collateral, loss of ability to promptly enforce its legal rights with respect to Freestone and the transactions in the Trust Account, loss of the use of its capital, operating losses, and other losses in amounts to be proven at trial.

## SECOND CAUSE OF ACTION
### (Breach of Fiduciary Duty)

121.    AIC incorporates paragraphs 1 through 120 as if restated herein.

122.    U.S. Bank, due to its special relationship of trust with AIC, owed AIC a fiduciary duty in connection with the collateral and the Trust Accounts since December of 2013.

123.    In 2014, U.S. Bank breached its fiduciary duty by:
   a.    Failing to determine and ensure that each Asset it accepted in the Trust Account was in such form that it could be negotiated whenever necessary without consent or signature from anyone besides U.S. Bank before it accepted the Asset;

   b.    Failing to disclose the relationship between its affiliate, U.S. Trust, AAS, Burns, the Southport entities, the Destra Fund, and Freestone, in breach of the duty of loyalty U.S. Bank owed to AIC;

   c.    Failing to disclose to AIC that the Destra Funds were valueless and did not constitute "Eligible Assets" when, upon information and belief, U.S. Bank was aware of such fact; and

   d.    Misrepresenting the Destra UITs as "taxable bonds" in the bank statements to AIC.

124.     As a direct and proximate result of U.S. Bank's breach of its fiduciary duties, AIC has suffered damages in excess of $75,000, including the loss of the value of its collateral, loss of ability to promptly enforce its legal rights with respect to Freestone and the transactions in the Trust Account, loss of the use of its capital, operating losses, lost profits, reputational harm, and other losses in amounts to be proven at trial.  The breach was negligent, willful, and in bad faith.

## THIRD CAUSE OF ACTION
### (Negligence/Gross Negligence)

125.     AIC incorporates paragraphs 1 through 124 as if restated herein.

126.     U.S. Bank owed AIC, as the beneficiary of the Trust Account, a duty to exercise reasonable care in its role as Trustee.

127.     In 2014, U.S. Bank breached its duty to AIC by:

   a.     negligently, grossly negligently, recklessly, willfully, and wantonly accepting non-negotiable Assets in the Trust Account;

   b.     negligently, grossly negligently, recklessly, willfully, and wantonly failing to disclose the relationship between its affiliate, U.S. Trust, AAS, Burns, the Southport entities, the Destra Fund, and Freestone;

   c.     negligently, grossly negligently, recklessly, willfully, and wantonly failing to disclose to AIC that the Destra Funds were valueless and did not constitute "Eligible Assets" when U.S. Bank was aware or should have been aware of such fact; and

   d.     Misrepresenting the Destra UITs as "taxable bonds" in the bank statements to AIC.

128.     As a direct and proximate result of U.S. Bank's negligence and gross negligence, AIC has suffered damages in excess of $75,000, including the loss of the value of its collateral, loss of ability to promptly enforce its legal rights with respect to Freestone and the transactions in the Trust Account, loss of the use of its capital, operating losses, lost profits, reputational harm, and other losses in amounts to be proven at trial.  U.S. Bank's conduct was negligent, willful, and in bad faith.

## FOURTH CAUSE OF ACTION
### (Negligent Misrepresentation)

129.    AIC incorporates paragraphs 1 through 128 as if restated herein.

130.    U.S. Bank repeatedly made false representations to AIC, including but not limited to: (a) misrepresenting the value of the Destra UITs; (b) misrepresenting that the Destra UITs were "taxable bonds" and constituted "Eligible Assets"; (c) misrepresenting that it was acting as a fiduciary for AIC, when in fact, it was only looking out for the best interests of itself and U.S. Trust.

131.    U.S. Bank had a pecuniary interest in making the above misrepresentations to AIC.

132.    U.S. Bank owed AIC a duty to use reasonable care when making representations on these matters.

133.    U.S. Bank negligently or grossly negligently made the above misrepresentations.

134.    AIC justifiably relied on the above misrepresentations.

135.    As the direct and proximate result of U.S. Bank's misrepresentations, AIC has suffered pecuniary loss, including but not limited to, having to insure, adjust, and pay claims from its own funds rather than out of the collateral in the Trust Account.

## FIFTH CAUSE OF ACTION
### (Civil Conspiracy)

136.    AIC incorporates paragraphs 1 through 135 as if restated herein.

137.    U.S. Bank engaged in a scheme with two or more persons or entities to withhold assets of the Trust Account from AIC.

138.    Those co-conspirators are U.S. Bank Fund Services, LLC, U.S. Trust and Southport entities and any others that discovery may identify.

139.     There was an object to be accomplished in this scheme, and U.S. Bank had a meeting of the minds with co-conspirators relating to the course of action.

140.     U.S. Bank combined with its co-conspirators to engage in one or more unlawful acts in furtherance of the conspiracy.

141.     As a direct and proximate result, AIC suffered damages in excess of $75,000, including the loss of the value of its collateral, loss of ability to promptly enforce its legal rights with respect to Freestone and the transactions in the Trust Account, loss of the use of its capital, operating losses, lost profits, reputational harm, and other losses in amounts to be proven at trial.

## **PRAYER FOR RELIEF**

Wherefore, AIC respectfully asks the Court to enter judgment in favor of AIC and award actual damages, special damages, consequential damages including lost profits, punitive damages, the costs of this action, attorneys' fees, prejudgment interest, post judgment interest, and other such relief as the Court may deem just and proper.  AIC withdraws its prior request for a jury trial.

**SIGNATURE BLOCK CONTAINED ON FOLLOWING PAGE**

**MCGOWAN HOOD & FELDER, LLC**

s/ Susan F. Campbell
Susan F. Campbell (Fed Id. 9002)
232 King Street
Georgetown, South Carolina 29440
(843) 833-8082-Tel.
(843) 833-8092-Fax
scampbell@mcgowanhood.com

Chad A. McGowan (Fed Id. 6620)
1539 Health Care Drive
Rock Hill, SC 29732
(803) 327-7800 Tel.
(803) 328-5656 Fax
cmcgowan@mcgowanhood.com

**OXENDINE LAW GROUP, PC**
John Weimann Oxendine
4370 Peachtree Road NE, First Floor
Atlanta, GA 30319
(404) 734-5738
jwolaw@gmail.com
*PRO HAC VICE*

**ATTORNEYS FOR PLAINTIFF**

Georgetown, South Carolina

September 6, 2016