IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Accident Insurance Company, Inc., a South Carolina Corporation, | ) ) ) | Civil Action No. 3:16-cv-02621-JMC |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| U.S. Bank National Association, | ) ) | |
| Defendant. | ) ) ) | **ORDER AND OPINION** |
| U.S. Bank National Association, | ) ) | |
| Third Party Plaintiff, | ) ) | |
| v. | ) ) | |
| Southport Lane Advisors, Southport Specialty Finance, Administrative Agency Services, and Alexander Chatfield Burns, | ) ) ) ) | |
| Third Party Defendants. | ) ) | |

Plaintiff Accident Insurance Company, Inc. filed this action against Defendant U.S. Bank National Association seeking monetary damages for breach of contract, breach of fiduciary duty, negligence/gross negligence, negligent misrepresentation, and civil conspiracy regarding a trust agreement.  (ECF No. 154 at 21 ¶ 116–25 ¶ 141.)

This matter is before the court on U.S. Bank's Motion for Summary Judgment on the basis that all claims alleged by AICI are time-barred based on the applicable statute of limitations.[1] (ECF No. 159.)  AICI opposes U.S. Bank's Motion in its entirety. (ECF No. 174.)  For the reasons set forth below, the court **DENIES WITHOUT PREJUDICE** U.S. Bank's Motion for Summary

---

[1] The court observes that this Order only addresses U.S. Bank's statute of limitations argument. The court will address the remaining aspects of U.S. Bank's Motion in a separate order(s).

Judgment based on the statute of limitations.

## I.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Starting in or about April 2013, AICI began participating in a fronted reinsurance program (the "Program") with Freestone Insurance Company ("Freestone"), formerly known as Dallas National Insurance Company.  (*See* ECF No. 154 at 5 ¶ 24 (explaining that in a fronted insurance program, the reinsurer (here, Freestone) bears the actual risk of program performance and the insurance company (here, AICI) receives a fee for allowing its name and paper to be used as the front).)  The Program was governed by a Program Agreement between AICI and Freestone.  (*See* ECF No. 159-5.)  The Program Agreement required Freestone to establish a segregated bank or trust account to secure its obligations.  (*See id.* at 6 ¶ 12 ("So long as AIC[I] shall have any loss exposure in respect of the Policies, there shall be established and maintained in a segregated bank or trust account . . . established for the benefit of AIC[I]. . . one or more reserve funds for Policy liabilities . . . to be funded by DNIC.").)  Therefore, on September 25, 2013, after AICI and Freestone had been running their fronted reinsurance program for approximately five months, they contracted with U.S. Bank through a Trust Agreement (ECF No. 159-4) to serve as the trustee for the trust that was created to support their reinsurance relationship (the "Trust Account").  (ECF No. 154 at 6 ¶ 26.)  The Trust Agreement, in which AICI is the Beneficiary, Freestone is the Grantor, and U.S. Bank is the Trustee, provided in relevant part that:

> WHEREAS, the Beneficiary desires the Grantor to secure payments of all amounts at any time and from time to time owing by the Grantor to the Beneficiary under or in connection with the Reinsurance Agreements;

(ECF No. 159-4 at 2.)

> Paragraph 2(b): The Assets shall consist only of cash (United States legal tender) and Eligible Securities (as hereinafter defined).  The Trustee shall have no duty or responsibility with respect to the qualification, character or valuation of the Assets deposited in the

Trust Account, except to determine whether the Assets are in such form that the Beneficiary, or the Trustee upon direction by the Beneficiary, may whenever necessary negotiate any such Assets without consent or signature from the Grantor or any other person or entity.

(ECF No. 159-4 at 3 ¶ 2(b).)

Paragraph 5(b): The Grantor may direct the Trustee to accept substitute Assets for other Assets held in the Trust Account.

(*Id.* at 4 ¶ 5(b).)

Paragraph 5(c): The Grantor represents and warrants that each Investment Order or Asset substitution will involve an investment in Eligible Securities satisfying the requirements of Applicable Law regarding investments in the Trust Account.  The Trustee has no responsibility for determining whether any Assets invested pursuant to an Investment Order or Asset substitution are made in Eligible Securities that comply with the requirements of Applicable Law regarding investments in the Trust Account.

(*Id.* ¶ 5(c).)

Paragraph 8(a): The Trustee shall furnish to Grantor and Beneficiary an accounting of all Assets in the Trust Account upon its inception and thereafter at intervals no less frequent than as of the end of each calendar month.  Such accounting shall include a statement of all Assets in the Trust Account and shall be given as soon as [] practicable, but in no event later than fifteen (15) days after such date.

(ECF No. 159-4 at 5 ¶ 8(a).)

Paragraph 8(b): Before accepting any Asset for deposit to the Trust Account, the Trustee shall determine that such Asset is in such form that the Beneficiary whenever necessary may, or the Trustee upon direction by the Beneficiary will, negotiate such Asset without consent or signature from the Grantor or any person or entity other than the Trustee in accordance with the terms of this Agreement.

(*Id.* ¶ 8(b).)

Paragraph 12(f): The term "Eligible Securities" shall mean and include certificates of deposit issued by a United States bank and payable in United States legal tender and securities representing

3

> investments of the types specified in subsections (1), (2), (3), (4), (6), (8) and (10) of Section 1404(a) of [] New York Insurance Law; provided, however, that no such securities shall have been issued by a Parent or a Subsidiary of either the Grantor or the Beneficiary. Any deposit or investment direction by Grantor shall constitute a certification by Grantor to the Trustee that the Assets so deposited, or to be purchased pursuant to such investment directions, are Eligible Securities under Applicable insurance Law, and the Trustee shall be entitled to rely on Grantor's representation.

(*Id.* at 9 ¶ 12(f).)

> Paragraph 13: This Agreement shall be subject to and governed by the laws of the State of Delaware.

(*Id.* at 10 ¶ 13.)   From the inception of the Trust Account, U.S. Bank sent monthly account statements to AICI.  (*See, e.g.*, ECF Nos. 159-7–159-14.)

At the start of U.S. Bank's role as Trustee, the Trust Account did not hold any assets until December 2013, when Freestone deposited approximately $9.4 million in municipal bonds (New Mexico State Hospital Equipment Loan and Port of Seattle, Washington Revenue Refunding Intermediate Series A) into the Trust Account.  (ECF No. 159-7.)  In mid-January 2014, Freestone sold the aforementioned municipal bonds in the Trust Account and purchased units of Destra Targeted Income Unit Investment Trust ("Destra UIT") and membership interests in Camelot Assets Holding, LLC ("Camelot").  (ECF No. 159-8.)  In February 2014, Freestone withdrew $2.5 million of the Destra UIT and replaced it with approximately $2.6 million of municipal bonds (Cook County II Refunding Series A).  (ECF No. 159-9.)  Then in March 2014, Freestone deposited another $2.7 million of municipal bonds (Kentucky State Property and Buildings Commission Revenues Refunding Project Number 76 and Virginia St Hsg Dev Auth Commonwealth Mtge Series C) as additional collateral.  (ECF No. 159-10.)  As of March 31, 2014, the Trust Account held Destra UIT with a face value of approximately $6.9 million; Camelot shares of $193,000; and municipal bonds of approximately $5.3 million.  (*Id.*)  "In April 2014, Freestone

4

entered receivership with the Delaware Insurance Commissioner as Receiver" (*see* ECF No. 159-1 at 16) and "the Fronting Program was terminated and went into run-off."  (*Id.*; *see also* ECF No. 159-51 at 23:8714–88:21.)  In the April 1, 2014 to April 30, 2014 account statement to AICI, U.S. Bank reported that "the net asset value of the Destra Targeted Income Unit Investment Trust . . . as 'N/A' . . . [and] the Market Value/Price for the Destra units . . . is uncertain and should not be relied upon for any purpose."  (ECF No. 159-11 at 4.)

As a result of the foregoing asset distortion, AICI filed a Complaint against U.S. Bank on July 22, 2016, alleging claims for breach of contract, breach of fiduciary duty, negligence/gross negligence, negligent misrepresentation, and violation of Section 10(b) and Rule 10(b)-5 of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a–78jj.  (ECF No. 1 at 21 ¶ 115–30 ¶ 181.)  After the court denied its Motion to Dismiss (ECF No. 65), U.S. Bank answered the Complaint and filed a counterclaim against AICI for contractual indemnification.  (ECF No. 74.)  AICI answered U.S. Bank's counterclaim on November 22, 2017.  (ECF No. 89.)

While the parties were engaged in discovery, the court granted AICI leave on July 23, 2018, to file a First Amended Complaint alleging claims against U.S. Bank for breach of contract, breach of fiduciary duty, negligence/gross negligence, negligent misrepresentation, and civil conspiracy.  (ECF No. 154 at 21 ¶ 116–25 ¶ 141.)  After answering the Amended Complaint and filing counterclaims against AICI for contractual indemnification (ECF No. 155), U.S. Bank moved for summary judgment on November 2, 2018.  (ECF No. 159.)  AICI filed a Response Memorandum in Opposition to Defendant's Motion for Summary Judgment on December 13, 2018, to which U.S. Bank filed a Reply Memorandum in Support of Summary Judgment on January 2, 2019.  (ECF Nos. 174, 184.)

On February 19, 2019, the court heard oral argument from the parties on the instant Motion.

(ECF No. 216.)

## II.    JURISDICTION

The District Court has subject matter jurisdiction over this action, pursuant to 28 U.S.C. § 1332, because the parties are citizens of different states and the amount in controversy exceeds $75,000.00.  AICI is an insurance company organized under the laws of South Carolina with its principal place of business in Lexington County, South Carolina.  (ECF No. 154 at 1 ¶ 1.)  U.S. Bank is a national banking association with its principal place of business in Minneapolis, Minnesota.  (*Id.* ¶ 2; *see also* ECF No. 155 at 2 ¶ 2.)  The court is satisfied that the amount in controversy exceeds $75,000.00, exclusive of interest and costs.  (*See* ECF No. 154.)

## III.    LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law.  *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248–49 (1986). A genuine question of material fact exists where, after reviewing the record, the court finds that a reasonable jury could return a verdict for the nonmoving party. *Newport News Holdings Corp. v. Virtual City Vision*, 650 F.3d 423, 434 (4th Cir. 2011).

In ruling on a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party.  *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990).  The non-moving party may not oppose a motion for summary judgment with mere allegations or denial of the movant's pleading, but instead must "set forth specific facts" demonstrating a genuine issue for trial.  Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Shealy v.*

*Winston*, 929 F.2d 1009, 1012 (4th Cir. 1991).  All that is required is that "sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  *Anderson*, 477 U.S. at 249.

## IV.    ANALYSIS

In its Motion, U.S. Bank asserts that it is entitled to summary judgment because "all of Accident's claims are time-barred."  (ECF No. 184 at 6.)

1.    The Parties' Arguments

AICI initiated this action on July 22, 2016.  (*See* ECF No. 1.)  U.S. Bank moves for summary judgment arguing that all of AICI's claims in the Complaint were untimely filed under the one-year statute of limitations for breach of trust set forth in the South Carolina Trust Code ("SCTC" or "Trust Code").[2]  (ECF No. 159-1 at 24–25 (citing S.C. Code Ann. § 62-7-1005 (2013)[3]).)  In support of its position, U.S. Bank contends that AICI knew about its alleged claims against U.S. Bank by March 2015 at the latest.  (*Id.* at 31 (citing ECF Nos. 159-25, 159-26).)  Moreover, U.S. Bank argues that because breach of trust is defined in the SCTC as any "violation

---

[2] The SCTC is Article 7 of the South Carolina Probate Code.

[3] S.C. Code Ann. § 62-7-1005 (2013) provides as follows:

> (a) Unless previously barred by adjudication, consent, or limitation, **a beneficiary may not commence a proceeding against a trustee for breach of trust more than one year after the date the beneficiary or a representative of the beneficiary was sent a report that adequately disclosed the existence of a potential claim for breach of trust**.  (b) A report adequately discloses the existence of a potential claim for breach of trust if it provides sufficient information so that the beneficiary or representative knows of the potential claim or should have inquired into its existence.  (c) If subsection (a) does not apply, a judicial proceeding by a beneficiary or on behalf of a beneficiary against a trustee for breach of trust must be commenced within three years after the first to occur of: (1) the removal, resignation, or death of the trustee; (2) the termination of the beneficiary's interest in the trust; or (3) the termination of the trust.

*Id.* (emphasis added).

by a trustee of a duty the trustee owes to a beneficiary," citing S.C. Code Ann. § 62-7-1001(a) (2009), the SCTC's statute of limitations applies to all of AICI's claims and it cannot avoid that application "by attaching a different label to its claims." (ECF No. 159-1 at 25 (citing *Ducharme v. Ducharme*, 850 N.W.2d 607 (Mich. Ct. App. 2014)).)

In response to U.S. Bank's statute of limitations argument, AICI asserts that the SCTC does not apply to "security arrangements . . . and trusts for the primary purpose of paying debts." (ECF No. 174 at 22 (citing S.C. Code Ann. § 62-7-102 (2016)).) In this regard, AICI argues that because "[t]he trust at issue in this case involves a security agreement and/or trust for the primary purpose of paying debts," its claims are not foreclosed by the SCTC's one-year statute of limitations. (*Id.*) AICI further argues that even if the SCTC's one-year statute of limitations was applicable to its claims, they are still timely filed because the reports cited by U.S. Bank were not the type of documentation required under the statute to sufficiently trigger the running of the limitations period. (*Id.* at 23 (citing S.C. Code 62-7-1005(a) (2013)).)

In Reply, U.S. Bank argues that the Trust Agreement was neither a trust "for the primary purpose of paying debts" nor a "'security arrangement' under the statute." (ECF No. 184 at 7.)

2.    The Court's Review

To resolve the instant Motion, the court must ascertain whether the SCTC is applicable to the parties' Trust Account created by their Trust Agreement.[4] In this regard, the court observes that the scope of the SCTC is set forth in the following statute:

---

[4] The court observes that the parties do not appear to dispute the application of South Carolina law to this analysis even though the Trust Agreement contains a choice of law provision providing that the law of Delaware governs the Trust Agreement. Because this action is premised on diversity jurisdiction (*see supra* at 6), the court must apply the law of the forum state (*i.e.*, South Carolina) to procedural issues and statute of limitations issues are generally procedural. *See Stern v. Shelley*, 781 F. Supp. 2d 281, 284 (D.S.C. 2011); *Thornton v. Cessna Aircraft Co.*, 703 F. Supp. 1228, 1230 (D.S.C. 1988).

This article applies to express trusts, charitable or noncharitable, and trusts created pursuant to a statute, judgment, or decree that requires the trust to be administered in the manner of an express trust. The term 'express trust' includes both testamentary and inter vivos trusts, regardless of whether the trustee is required to account to the probate court, and includes, but is not limited to, all trusts defined in Section 62-1-201(49).  This article does not apply to constructive trusts, resulting trusts, conservatorships administered by conservators as defined in Section 62-1-201(6), administration of decedent's estates, all multiple party accounts referred to in Section 62-6-101 *et seq.*, custodial arrangements, business trusts providing for certificates to be issued to beneficiaries, common trust funds, voting trusts, security arrangements, liquidation trusts, and trusts for the primary purpose of paying debts, dividends, interest, salaries, wages, profits, pensions, or employee benefits of any kind, or any arrangement under which a person is nominee or escrowee for another.

S.C. Code Ann. § 62-7-102 (2016).  In interpreting this statute, the court must "ascertain and effectuate the intent of the legislature."[5]  *CPRE, LLC v. Greenville County Assessor*, 716 S.E.2d 877, 881 (S.C. 2011) (defining the primary rule of statutory interpretation (citing *Sloan v. Hardee*, 640 S.E.2d 457, 459 (S.C. 2007)).  "In doing so, [][the court] must give the words found in the statute their 'plain and ordinary meaning without resort to subtle or forced construction to limit or expand the statute's operation.'"  *Id.* (citing *Sloan*, 640 S.E.2d at 459).

The court observes that the parties' dispute centers around whether the Trust Account is either a "security arrangement" or a "trust[] for the primary purpose of paying debts." *See* § 62-

---

[5] Additionally, the court notes that it was unable to locate a South Carolina appellate court decision analyzing § 62-7-102.  As a federal court sitting in diversity, this court "must predict how the South Carolina Supreme Court would decide the issue." *Allstate Ins. Co. v. Electrolux Home Prods., Inc.*, C/A No.: 4:16-cv-03666-RBH, 2017 WL 2216298, at *5 (D.S.C. May 19, 2017) (citing *Private Mortg. Inv. Servs., Inc. v. Hotel & Club Assocs., Inc.*, 296 F.3d 308, 312 (4th Cir. 2002) ("As a federal court sitting in diversity, we have an obligation to apply the jurisprudence of South Carolina's highest court, the South Carolina Supreme Court.  But in a situation where the South Carolina Supreme Court has spoken neither directly nor indirectly on the particular issue before us, we are called upon to predict how that court would rule if presented with the issue." (internal footnote and citations omitted))).  "In predicting a ruling by the South Carolina Supreme Court, [the Court] may also consider, inter alia: restatements of the law, treatises, and well considered dicta," *id.*, "as well as the practices of other states." *Id.* (quoting *St. Paul Fire & Marine Ins. Co. v. Am. Int'l Specialty Lines Ins. Co.*, 365 F.3d 263, 272 (4th Cir. 2004) (internal quotation marks omitted)).

7-102.   As to the former, the court observes that the SCTC does not expressly define the term

"security arrangement."    However, in the South Carolina Probate Code, the South Carolina

General Assembly, by defining "security interest" as "any conveyance, agreement, or arrangement

in which personal property is used as security," provides guidance for this court to conclude that

the arrangement in "security arrangement" is interchangeable with interest, conveyance, or

agreement.   *See* S.C. Code Ann. § 62-1-201(41) (2013).   Therefore, the court finds that the plain

and ordinary meaning of "security arrangement" is an agreement, interest, or conveyance in which

personal property is used as security.

Having defined "security arrangement" in a manner consistent with how it believes the

South Carolina General Assembly and/or the South Carolina appellate courts would, the court

further observes that the South Carolina Probate Code provides definitions of "property"[6] and

"security."[7]   In light of these definitions in combination with the provision of the Trust Agreement

providing that "[t]he Trustee shall receive Assets from the Grantor, deposit the Assets into the

Trust Account and hold the Assets in the Trust Account for safekeeping" (*see* ECF No. 159-4 at 2

¶ 2(a)), the court finds that the Trust Account is a "security arrangement" because the Trust

Agreement contemplates Freestone providing personal property consisting of cash and "Eligible

Securities" as security.   (*See* ECF No. 159-4 at 3 ¶ 2(b).)

---

[6] "'Property' includes both real and personal property or any interest therein and means anything that may be the subject of ownership."  S.C. Code Ann. § 62-1-201(37) (2013).

[7] "'Security' includes any note, stock, treasury stock, bond, debenture, evidence of indebtedness, certificate of interest, or participation in an oil, gas, or mining title or lease or in payments out of production under such a title or lease, collateral trust certificate, transferable share, voting trust certificate or, in general, any interest or instrument commonly known as a security or any certificate of interest or participation, any temporary or interim certificate, receipt or certificate of deposit for, or any warrant or right to subscribe to or purchase, any of the foregoing.  S.C. Code Ann. § 62-1-201(41) (2013).

Next, in attempting to determine whether the Trust Account is a "trust[] for the primary purpose of paying debts," the court observes that "primary purpose" and "paying debts" are also not defined in the SCTC. Upon consideration of the plain meaning of "paying debts"[8] and "primary purpose,"[9] the court is unable to determine from the language of the Trust Agreement that the "primary purpose" of the Trust Account was to pay debts. As support for this conclusion, the court points to the recital of the Trust Agreement which identifies several reasons for the Trust Account's existence:

> WHEREAS, the Beneficiary, as the ceding company and the Grantor, as reinsurer, have entered into certain Reinsurance Agreements listed on Schedule A hereto (the "Reinsurance Agreements"); and
>
> WHEREAS, the Beneficiary desires the Grantor to secure payments of all amounts at any time and from time to time owing by the Grantor to the Beneficiary under or in connection with the Reinsurance Agreements; and
>
> WHEREAS, the Grantor desires to transfer to the Trustee for deposit into a trust account established hereby Eligible Assets and under the terms and conditions as the Grantor and Beneficiary, in their sole discretion, deem necessary; and
>
> WHEREAS, the Trustee has agreed to act as Trustee hereunder, and to hold such Assets in trust in the trust account for the sole use and benefit of the Beneficiary; and
>
> WHEREAS, this Agreement sets forth the duties and powers of the Trustee with respect to the trust account established hereby;

(ECF No. 159-4 at 2.)

Upon review of the foregoing recital clauses in conjunction with the parties' evidentiary presentations regarding this issue, the court finds neither party has demonstrated the lack of a

---

[8] A plain meaning of "paying debts" is to give "a specific sum of money due by agreement or otherwise." *See* Debt, *Black's Law Dictionary* (10th ed. 2014); Pay, https://dictionary.cambridge .org/us/dictionary/english/pay (last visited Feb. 27, 2019).

[9] A plain meaning of "primary purpose" is the "principal reason for which something exists." Primary, https://www.dictionary.com/browse/primary (last visited Feb. 27, 2019); Purpose, https://www. dictionary.com/browse/purpose?s=t (last visited Feb. 27, 2019).

genuine dispute of material fact.  Accordingly, the court is unable to conclude based on the evidence presented whether the Trust Account created by the Trust Agreement was a "trust[] for the primary purpose of paying debts."

## V.     CONCLUSION

Because the South Carolina Trust Code is inapplicable to "security arrangements," the court agrees with Plaintiff Accident Insurance Company, Inc. that its claims are not subject to the one-year statute of limitations specified in S.C. Code Ann. § 62-7-1005 (2013).  Accordingly, the court **DENIES WITHOUT PREJUDICE** Defendant U.S. Bank National Association's Motion for Summary Judgment based on the statute of limitations.  (ECF No. 159.)

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Judge

February 28, 2019
Columbia, South Carolina

12