**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION**

| | | |
|---|---|---|
| Accident Insurance Company, Inc., a South Carolina Corporation, | ) ) ) | Civil Action No. 3:16-cv-02621-JMC |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| U.S. Bank National Association, | ) ) | |
| Defendant. | ) ) | |
| _____ | ) | **ORDER AND OPINION** |
| U.S. Bank National Association, | ) ) | |
| Third Party Plaintiff, | ) ) | |
| v. | ) ) | |
| Southport Lane Advisors, Southport Specialty Finance, Administrative Agency Services, and Alexander Chatfield Burns, | ) ) ) ) | |
| Third Party Defendants. | ) ) | |
| _____ | ) | |

Plaintiff Accident Insurance Company, Inc. ("AICI") filed this action against Defendant U.S. Bank National Association seeking monetary damages for breach of contract, breach of fiduciary duty, negligence/gross negligence, negligent misrepresentation, and civil conspiracy regarding a trust agreement. (ECF No. 154 at 21 ¶ 116–25 ¶ 141.)

This matter is before the court on U.S. Bank's Motion for Summary Judgment on the basis that AICI's civil conspiracy claim fails as a matter of law.[1] (ECF No. 159.) AICI opposes U.S. Bank's Motion in its entirety. (ECF No. 174.) For the reasons set forth below, the court **DENIES** U.S. Bank's Motion for Summary Judgment on AICI's claim for civil conspiracy.

---

[1] The court observes that this Order only addresses U.S. Bank's argument as to the civil conspiracy claim. The court will address the remaining aspects of U.S. Bank's Motion in a separate order(s).

# I.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Starting in or about April 2013, AICI began participating in a fronted reinsurance program (the "Program") with Freestone Insurance Company ("Freestone"), formerly known as Dallas National Insurance Company.  (*See* ECF No. 154 at 5 ¶ 24 (explaining that in a fronted insurance program, the reinsurer (here, Freestone) bears the actual risk of program performance and the insurance company (here, AICI) receives a fee for allowing its name and paper to be used as the front).)  The Program was governed by a Program Agreement between AICI and Freestone.  (*See* ECF No. 159-5.)  The Program Agreement required Freestone to establish a segregated bank or trust account to secure its obligations.  (*See id.* at 6 ¶ 12 ("So long as AIC[I] shall have any loss exposure in respect of the Policies, there shall be established and maintained in a segregated bank or trust account . . . established for the benefit of AIC[I]. . . one or more reserve funds for Policy liabilities . . . to be funded by DNIC.").)  Therefore, on September 25, 2013, after AICI and Freestone had been running their fronted reinsurance program for approximately five months, they contracted with U.S. Bank through a Trust Agreement (ECF No. 159-4) to serve as the trustee for the trust that was created to support their reinsurance relationship (the "Trust Account").  (ECF No. 154 at 6 ¶ 26.)

The Trust Agreement, in which AICI is the Beneficiary, Freestone is the Grantor, and U.S. Bank is the Trustee, provided in relevant part that:

> WHEREAS, the Beneficiary desires the Grantor to secure payments of all amounts at any time and from time to time owing by the Grantor to the Beneficiary under or in connection with the Reinsurance Agreements;

(ECF No. 159-4 at 2.)

> Paragraph 2(b): The Assets shall consist only of cash (United States legal tender) and Eligible Securities (as hereinafter defined).  The Trustee shall have no duty or responsibility with respect to the qualification, character or valuation of the Assets deposited in the

Trust Account, except to determine whether the Assets are in such form that the Beneficiary, or the Trustee upon direction by the Beneficiary, may whenever necessary negotiate any such Assets without consent or signature from the Grantor or any other person or entity.

(ECF No. 159-4 at 3 ¶ 2(b).)

Paragraph 5(b): The Grantor may direct the Trustee to accept substitute Assets for other Assets held in the Trust Account.

(*Id.* at 4 ¶ 5(b).)

Paragraph 5(c): The Grantor represents and warrants that each Investment Order or Asset substitution will involve an investment in Eligible Securities satisfying the requirements of Applicable Law regarding investments in the Trust Account. The Trustee has no responsibility for determining whether any Assets invested pursuant to an Investment Order or Asset substitution are made in Eligible Securities that comply with the requirements of Applicable Law regarding investments in the Trust Account.

(*Id.* ¶ 5(c).)

Paragraph 8(a): The Trustee shall furnish to Grantor and Beneficiary an accounting of all Assets in the Trust Account upon its inception and thereafter at intervals no less frequent than as of the end of each calendar month. Such accounting shall include a statement of all Assets in the Trust Account and shall be given as soon as [] practicable, but in no event later than fifteen (15) days after such date.

(ECF No. 159-4 at 5 ¶ 8(a).)

Paragraph 8(b): Before accepting any Asset for deposit to the Trust Account, the Trustee shall determine that such Asset is in such form that the Beneficiary whenever necessary may, or the Trustee upon direction by the Beneficiary will, negotiate such Asset without consent or signature from the Grantor or any person or entity other than the Trustee in accordance with the terms of this Agreement.

(*Id.* ¶ 8(b).)

Paragraph 12(f): The term "Eligible Securities" shall mean and include certificates of deposit issued by a United States bank and payable in United States legal tender and securities representing

> investments of the types specified in subsections (1), (2), (3), (4), (6), (8) and (10) of Section 1404(a) of [] New York Insurance Law; provided, however, that no such securities shall have been issued by a Parent or a Subsidiary of either the Grantor or the Beneficiary. Any deposit or investment direction by Grantor shall constitute a certification by Grantor to the Trustee that the Assets so deposited, or to be purchased pursuant to such investment directions, are Eligible Securities under Applicable insurance Law, and the Trustee shall be entitled to rely on Grantor's representation.

(*Id.* at 9 ¶ 12(f).)

> Paragraph 13: This Agreement shall be subject to and governed by the laws of the State of Delaware.

(*Id.* at 10 ¶ 13.) From the inception of the Trust Account, U.S. Bank sent monthly account statements to AICI. (*See, e.g.*, ECF Nos. 159-7–159-14.)

At the start of U.S. Bank's role as Trustee, the Trust Account did not hold any assets until December 2013, when Freestone deposited approximately $9.4 million in municipal bonds (New Mexico State Hospital Equipment Loan and Port of Seattle, Washington Revenue Refunding Intermediate Series A) into the Trust Account. (ECF No. 159-7.) In mid-January 2014, Freestone sold the aforementioned municipal bonds in the Trust Account and purchased units of Destra Targeted Income Unit Investment Trust ("Destra UIT") and membership interests in Camelot Assets Holding, LLC ("Camelot"). (ECF No. 159-8.) In February 2014, Freestone withdrew $2.5 million of the Destra UIT and replaced it with approximately $2.6 million of municipal bonds (Cook County II Refunding Series A). (ECF No. 159-9.) Then in March 2014, Freestone deposited another $2.7 million of municipal bonds (Kentucky State Property and Buildings Commission Revenues Refunding Project Number 76 and Virginia St Hsg Dev Auth Commonwealth Mtge Series C) as additional collateral. (ECF No. 159-10.) As of March 31, 2014, the Trust Account held Destra UIT with a face value of approximately $6.9 million; Camelot shares of $193,000; and municipal bonds of approximately $5.3 million. (*Id.*) "In April 2014, Freestone

entered receivership with the Delaware Insurance Commissioner as Receiver" (*see* ECF No. 159-1 at 16) and "the Fronting Program was terminated and went into run-off." (*Id.*; *see also* ECF No. 159-51 at 23:8714–88:21.)  In the April 1, 2014 to April 30, 2014 account statement to AICI, U.S. Bank reported that "the net asset value of the Destra Targeted Income Unit Investment Trust . . . as 'N/A' . . . [and] the Market Value/Price for the Destra units . . . is uncertain and should not be relied upon for any purpose."  (ECF No. 159-11 at 4.)

As a result of the foregoing asset distortion, AICI filed a Complaint against U.S. Bank on July 22, 2016, alleging claims for breach of contract, breach of fiduciary duty, negligence/gross negligence, negligent misrepresentation, and violation of Section 10(b) and Rule 10(b)-5 of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a–78jj.  (ECF No. 1 at 21 ¶ 115–30 ¶ 181.)  After the court denied its Motion to Dismiss (ECF No. 65), U.S. Bank answered the Complaint and filed a counterclaim against AICI for contractual indemnification.  (ECF No. 74.)  AICI answered U.S. Bank's counterclaim on November 22, 2017.  (ECF No. 89.)

While the parties were engaged in discovery, the court granted AICI leave on July 23, 2018, to file a First Amended Complaint alleging claims against U.S. Bank for breach of contract, breach of fiduciary duty, negligence/gross negligence, negligent misrepresentation, and civil conspiracy.  (ECF No. 154 at 21 ¶ 116–25 ¶ 141.)  After answering the Amended Complaint and filing counterclaims against AICI for contractual indemnification (ECF No. 155), U.S. Bank moved for summary judgment on November 2, 2018.  (ECF No. 159.)  AICI filed a Response Memorandum in Opposition to Defendant's Motion for Summary Judgment on December 13, 2018, to which U.S. Bank filed a Reply Memorandum in Support of Summary Judgment on January 2, 2019.  (ECF Nos. 174, 184.)

On February 19, 2019, the court heard oral argument from the parties on the instant Motion.

(ECF No. 216.)

## II.    JURISDICTION

This court has subject matter jurisdiction over this action, pursuant to 28 U.S.C. § 1332, because the parties are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.  (*See* ECF No. 154.)  AICI is an insurance company organized under the laws of South Carolina with its principal place of business in Lexington County, South Carolina.  (ECF No. 154 at 1 ¶ 1.)  U.S. Bank is a national banking association with its principal place of business in Minneapolis, Minnesota.  (*Id.* ¶ 2; *see also* ECF No. 155 at 2 ¶ 2.)

## III.    LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law.  *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248–49 (1986). A genuine question of material fact exists where, after reviewing the record, the court finds that a reasonable trier of fact could return a verdict for the nonmoving party. *Newport News Holdings Corp. v. Virtual City Vision*, 650 F.3d 423, 434 (4th Cir. 2011).

In ruling on a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party.  *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990).  The non-moving party may not oppose a motion for summary judgment with mere allegations or denial of the movant's pleading, but instead must "set forth specific facts" demonstrating a genuine issue for trial.  Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Shealy v.*

*Winston*, 929 F.2d 1009, 1012 (4th Cir. 1991).  All that is required is that "sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  *Anderson*, 477 U.S. at 249.

## IV.    ANALYSIS

In this matter, the parties dispute whether U.S. Bank is entitled to summary judgment on AICI's claim for civil conspiracy.

1.    <u>The Parties' Arguments</u>

In support of its Motion, U.S. Bank argues that as to the three co-conspirators identified in the First Amended Complaint–U.S. Bank Fund Services, U.S. Bank Trust, and the Southport entities (*see* ECF No. 154 at 24 ¶ 138)–AICI "has not alleged and cannot prove any underlying wrongs that would support imposing secondary liability on [Defendant] U.S. Bank."  (ECF No. 159-1 at 32–33.)  Specifically, as to the allegations of conspiracy involving the Southport entities, U.S. Bank argues that the conspiracy claim fails because AICI's main evidence relies on two government investigations–"(1) a 2015 Consent Order between U.S. Bank and the Office of the Comptroller of the Currency (the "OCC Consent Order"); and (2) a 2018 Deferred Prosecution Agreement between U.S. Bancorp, the parent of U.S. Bank, and the Office of the United States Attorney for the Southern District of New York (the "DPA")–which neither reference, mention, or connect U.S. Bank to the Southport entities or their principal, Alexander Chatfield Burns.  (ECF No. 184 at 9–10.)  U.S. Bank further argues that AICI's remaining evidence of a conspiracy involving Southport is either "unsupported or contradicted" by other sparse evidence offered by AICI.  (*Id.* at 10–11.)

U.S. Bank next argues that because U.S. Bank Trust and U.S. Fund Services are wholly-owned subsidiaries of U.S. Bank (*see* ECF No. 159-47), AICI's civil conspiracy claims involving

these entities fail because U.S. Bank "cannot conspire with its wholly-owned subsidiaries." (ECF No. 159-1 at 32, 34 (citing, *e.g.*, *In re Transamerica Airlines, Inc.*, No. Civ.A. 1039-N, 2006 WL 587846, at *6 (Del Ch. Feb. 28, 2006) ("[A] corporation generally cannot be deemed to have conspired with its wholly owned subsidiary, or its officers and agents.")).)

Finally, U.S. Bank argues that AICI has failed to present any evidence that U.S. Bank had an explicit agreement or a "meeting of the minds" with any of the three entities cited "to perform unlawful acts in order to withhold trust assets." (*Id.* at 32.) In this regard, U.S. Bank asserts that AICI "cannot point to any document or testimony that supports, in the slightest, the notion that U.S. Bank reached 'explicit agreement' with any Southport entity (much less its wholly-owned subsidiaries, U.S. Bank Trust and Fund Services) to withhold assets from Accident." (*Id.* at 35.)

Citing to Delaware case law and this court's Order allowing it "to amend the Complaint to include a cause of action for civil conspiracy" (*see* ECF No. 142 at 11), AICI opposes the Motion for Summary Judgment arguing that it has properly asserted an actionable tort by the alleged co-conspirators because "U.S. Bank, its lines of business and affiliates, as well as Burns and his Southport entities knowingly pursued tortious conduct in transactions leading to and including the funding/misuse of the trust assets." (ECF No. 174 at 25.) AICI further argues that it has demonstrated "many instances of [Defendant] U.S. Bank working with U.S. Bank Trust and the Southport entities to sell the valuable assets held in trust, with Plaintiff having no knowledge of these illegal transfers." (*Id.*) Moreover, AICI argues that its evidence does not either need to meet an "elevated burden of proof for civil conspiracy" or "require an explicit agreement." (*Id.* at 26.) Finally, AICI argues that under Delaware case law, "Defendant [U.S. Bank] can be held liable for the actions of Burns and Southport" and entities with common ownership can conspire illegally with one another. (*Id.* at 27 (citing, *e.g.*, *Allied Capital Corp. v. GC-Sun Holdings, L.P.*, 910 A.2d

1020, 1036, 1038 n.37, 1044–45 (Del. Ch. 2006)).

In Reply, U.S. Bank argues as follows that the *Allied Capital* decision is not contrary to its arguments:

> First, the weight of Delaware authority holds that parent entities cannot conspire with wholly-owned subsidiaries. Second, the reasoning of *Allied Capital Corp.* supports application of the rule against intra-corporate conspiracies. In *Allied Capital Corp.*, the court declined to adopt a per se rule holding that a parent entity and wholly-owned subsidiary could not conspire as a matter of law in favor of a context-specific application. 910 A.2d at 1037, 1040-41. However, the court recognized "[t]he bona fide concern [] that every breach of contract, tort or other case involving a controlled subsidiary will become a vehicle to sue controllers." *Id.* at 1040. The court further recognized that the rule against intra-corporate conspiracies would often apply when a parent and subsidiary "share common economic interests." *Id.* at 1042. Accident has presented no evidence that the economic interests of U.S. Bank Trust or Fund Services diverged from the economic interests of U.S. Bank. Accordingly, even under the reasoning of *Allied Capital Corp.*, the rule that a parent entity cannot conspire with its wholly-owned subsidiary should apply.

(ECF No. 184 at 13.)

2.    The Court's Review

"Civil conspiracy requires the combination of two or more persons for an unlawful purpose or for the accomplishment of a lawful purpose by unlawful means, which conspiracy results in damages." *In re Asbestos Litig.*, C/A No. 16-308-LPS-SRF, 2017 WL 6334980, at *6 (D. Del. Dec. 12, 2017) (citing *Nutt v. A.C. & S. Co.*, 517 A.2d 690, 694 (Del. Super. Ct. 1986)). Under Delaware common law, the elements for a claim of civil conspiracy are as follows: "(1) a confederation or combination of two or more persons[2]; (2) an unlawful act done in furtherance of

---

[2] "A 'confederation or combination' of people for purposes of a civil conspiracy claim means that there is a 'meeting of the minds between or among such persons,' and that 'meeting of the minds' relates to the allegedly improper object or course of conduct to be accomplished." *Wayman Fire Prot., Inc. v. Premium Fire & Sec., LLC*, C.A. No. 7866-VCP, 2014 WL 897223, at*24 (Del Ch. Mar. 5, 2014) (quoting *Microsoft Corp. v. Amphus, Inc.*, C.A. No. 8092-VCP, 2013 WL 5899003, at *15 (Del. Ch. Oct. 31, 2013)). "To prove a conspiracy, however, it is not necessary that there be an express agreement." *Empire Fin. Servs., Inc. v. Bank of N.Y. (Del)*, 900 A.2d 92, 97 (Del. 2006).

the conspiracy[3]; and (3) damages resulting from the action of the parties to the conspiracy." *MacQueen v. Union Carbide Corp.*, C/A No. 13-831-LPS-CJB Consol., 2018 WL 2729122, at *3 (D. Del. June 6, 2018) (citing, *e.g.*, *AeroGlobal Capital Mgmt., LLC v. Cirrus Indus., Inc.*, 871 A.2d 428, 437 n.8 (Del. 2005)). "Civil conspiracy is not an independent cause of action in Delaware, but requires an underlying wrong which would be actionable absent the conspiracy." *In re Asbestos Litig.*, 2017 WL 6334980, at *6 (citing, *e.g.*, *Phoenix Canada Oil Co. v. Texaco, Inc.*, 560 F. Supp. 1372, 1388 (D. Del. 1983)).

Upon its review, the court observes that AICI's evidence demonstrates a triable issue of fact regarding whether U.S. Bank was part of a combination of two or more entities, that carried out an unlawful act in furtherance of such combination thereby causing AICI damages. Specifically, the court is persuaded that viewing the evidence in the light most favorable to AICI, AICI has set forth specific evidence of communications between U.S. Bank (including its subsidiaries) and the Southport entities that the trier of fact–which in a bench trial is the court– could infer a nefarious agreement to utilize the value-deficient Destra UITS as an eligible asset for the Trust Account. (*See, e.g.*, ECF Nos. 211-17, 211-21.) These communications are deemed sufficient because the Delaware appellate courts have not required plaintiffs alleging civil conspiracy to demonstrate either an express agreement or any direct evidence. *See Empire Fin. Servs., Inc. v. Bank of N.Y. (Del)*, 900 A.2d 92, 97 n.16 (Del. 2006) ("[T]he conspirators' 'agreement need not be expressed in words and may be implied and understood to exist from the conduct itself.'" (quoting Restatement (Second) of Torts § 876(a) cmt. a)).

As to the remaining elements of a civil conspiracy claim, the court finds that breach of

---

[3] "Although the elements of a claim for civil conspiracy are flexible, it is essential that there be an underlying wrongful act, such as a tort or a statutory violation." *Tani v. FPL/Next Era Energy*, 811 F. Supp. 2d 1004, 1025 (D. Del. 2011) (citing *Empire Fin. Servs.*, 900 A.2d at 97.

fiduciary duty in Delaware is an independent tort that can give rise to a civil conspiracy claim, *see, e.g., OptimisCorp v. Waite*, C.A. No. 8773-VCP, 2015 WL 5147038, at *56 (Del. Ch. Aug. 26, 2015) (observing that breach of fiduciary duty claims can form the basis of civil conspiracy), and AICI has set forth sufficient facts to support a damages verdict in its favor.  For these reasons, the court denies U.S. Bank's Motion for Summary Judgment as to AICI's claim for civil conspiracy.

## V.     CONCLUSION

Upon careful consideration of the record and the parties' arguments, the court **DENIES** Defendant U.S. Bank National Association's Motion for Summary Judgment as to Plaintiff Accident Insurance Company, Inc.'s cause of action for civil conspiracy.  (ECF No. 159.)

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Judge

March 22, 2019
Columbia, South Carolina