IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Accident Insurance Company, Inc., a South Carolina Corporation,<br><br>        Plaintiff,<br>   v.<br><br>U.S. Bank National Association,<br><br>        Defendant.<br><br>U.S. Bank National Association,<br><br>        Third Party Plaintiff,<br>   v.<br><br>Southport Lane Advisors, Southport Specialty Finance, Administrative Agency Services, and Alexander Chatfield Burns,<br><br>        Third Party Defendants. | Civil Action No. 3:16-cv-02621-JMC<br><br><br><br><br><br><br>**ORDER AND OPINION** |

     Plaintiff Accident Insurance Company, Inc. ("AICI") filed this action against Defendant U.S. Bank National Association seeking monetary damages for breach of contract, breach of fiduciary duty, negligence/gross negligence, negligent misrepresentation, and civil conspiracy regarding a trust agreement. (ECF No. 154 at 21 ¶ 116–25 ¶ 141.)

     This matter is before the court on U.S. Bank's Motion for Partial Summary Judgment (ECF No. 159) seeking a court-imposed cap on AICI's damages on the basis that its "actual damages, if any, are a maximum of $2.44 million."[1] (ECF No. 159-1 at 36.) AICI opposes U.S. Bank's Motion in its entirety. (ECF No. 174.) For the reasons set forth below, the court **DENIES** U.S. Bank's

---

[1] The court observes that this Order only addresses U.S. Bank's argument as to AICI's damages. The court has addressed the remaining aspects of U.S. Bank's Motion in separate orders. (*See* ECF Nos. 217, 223.)

1

Motion for Partial Summary Judgment as to AICI's damages.

I.     RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Starting in or about April 2013, AICI began participating in a fronted reinsurance program (the "Program") with Freestone Insurance Company ("Freestone"), formerly known as Dallas National Insurance Company. (*See* ECF No. 154 at 5 ¶ 24 (explaining that in a fronted insurance program, the reinsurer (here, Freestone) bears the actual risk of program performance and the insurance company (here, AICI) receives a fee for allowing its name and paper to be used as the front).) The Program was governed by a Program Agreement between AICI and Freestone. (*See* ECF No. 159-5.) The Program Agreement required Freestone to establish a segregated bank or trust account to secure its obligations. (*See id.* at 6 ¶ 12 ("So long as AIC[I] shall have any loss exposure in respect of the Policies, there shall be established and maintained in a segregated bank or trust account . . . established for the benefit of AIC[I]. . . one or more reserve funds for Policy liabilities . . . to be funded by DNIC.").) Therefore, on September 25, 2013, after AICI and Freestone had been running their fronted reinsurance program for approximately five months, they contracted with U.S. Bank through a Trust Agreement (ECF No. 159-4) to serve as the trustee for the trust that was created to support their reinsurance relationship (the "Trust Account"). (ECF No. 154 at 6 ¶ 26.)

The Trust Agreement, in which AICI is the Beneficiary, Freestone is the Grantor, and U.S. Bank is the Trustee, provided in relevant part that:

> WHEREAS, the Beneficiary desires the Grantor to secure payments of all amounts at any time and from time to time owing by the Grantor to the Beneficiary under or in connection with the Reinsurance Agreements;

(ECF No. 159-4 at 2.)

> Paragraph 2(b): The Assets shall consist only of cash (United States legal tender) and Eligible Securities (as hereinafter defined). The

> Trustee shall have no duty or responsibility with respect to the qualification, character or valuation of the Assets deposited in the Trust Account, except to determine whether the Assets are in such form that the Beneficiary, or the Trustee upon direction by the Beneficiary, may whenever necessary negotiate any such Assets without consent or signature from the Grantor or any other person or entity.

(ECF No. 159-4 at 3 ¶ 2(b).)

> Paragraph 5(b): The Grantor may direct the Trustee to accept substitute Assets for other Assets held in the Trust Account.

(*Id.* at 4 ¶ 5(b).)

> Paragraph 5(c): The Grantor represents and warrants that each Investment Order or Asset substitution will involve an investment in Eligible Securities satisfying the requirements of Applicable Law regarding investments in the Trust Account. The Trustee has no responsibility for determining whether any Assets invested pursuant to an Investment Order or Asset substitution are made in Eligible Securities that comply with the requirements of Applicable Law regarding investments in the Trust Account.

(*Id.* ¶ 5(c).)

> Paragraph 8(a): The Trustee shall furnish to Grantor and Beneficiary an accounting of all Assets in the Trust Account upon its inception and thereafter at intervals no less frequent than as of the end of each calendar month. Such accounting shall include a statement of all Assets in the Trust Account and shall be given as soon as [] practicable, but in no event later than fifteen (15) days after such date.

(ECF No. 159-4 at 5 ¶ 8(a).)

> Paragraph 8(b): Before accepting any Asset for deposit to the Trust Account, the Trustee shall determine that such Asset is in such form that the Beneficiary whenever necessary may, or the Trustee upon direction by the Beneficiary will, negotiate such Asset without consent or signature from the Grantor or any person or entity other than the Trustee in accordance with the terms of this Agreement.

(*Id.* ¶ 8(b).)

> Paragraph 12(f): The term "Eligible Securities" shall mean and include certificates of deposit issued by a United States bank and payable in United States legal tender and securities representing investments of the types specified in subsections (1), (2), (3), (4), (6), (8) and (10) of Section 1404(a) of [] New York Insurance Law; provided, however, that no such securities shall have been issued by a Parent or a Subsidiary of either the Grantor or the Beneficiary. Any deposit or investment direction by Grantor shall constitute a certification by Grantor to the Trustee that the Assets so deposited, or to be purchased pursuant to such investment directions, are Eligible Securities under Applicable insurance Law, and the Trustee shall be entitled to rely on Grantor's representation.

(*Id.* at 9 ¶ 12(f).)

> Paragraph 13: This Agreement shall be subject to and governed by the laws of the State of Delaware.

(*Id.* at 10 ¶ 13.) From the inception of the Trust Account, U.S. Bank sent monthly account statements to AICI. (*See, e.g.*, ECF Nos. 159-7–159-14.)

At the start of U.S. Bank's role as Trustee, the Trust Account did not hold any assets until December 2013, when Freestone deposited approximately $9.4 million in municipal bonds (New Mexico State Hospital Equipment Loan and Port of Seattle, Washington Revenue Refunding Intermediate Series A) into the Trust Account. (ECF No. 159-7.) In mid-January 2014, Freestone sold the aforementioned municipal bonds in the Trust Account and purchased units of Destra Targeted Income Unit Investment Trust ("Destra UIT") and membership interests in Camelot Assets Holding, LLC ("Camelot"). (ECF No. 159-8.) In February 2014, Freestone withdrew $2.5 million of the Destra UIT and replaced it with approximately $2.6 million of municipal bonds (Cook County II Refunding Series A). (ECF No. 159-9.) Then in March 2014, Freestone deposited another $2.7 million of municipal bonds (Kentucky State Property and Buildings Commission Revenues Refunding Project Number 76 and Virginia St Hsg Dev Auth Commonwealth Mtge Series C) as additional collateral. (ECF No. 159-10.) As of March 31, 2014,

the Trust Account held Destra UIT with a face value of approximately $6.9 million; Camelot shares of $193,000; and municipal bonds of approximately $5.3 million. (*Id.*) "In April 2014, Freestone entered receivership with the Delaware Insurance Commissioner as Receiver" (*see* ECF No. 159-1 at 16) and "the Fronting Program was terminated and went into run-off." (*Id.*; *see also* ECF No. 159-51 at 23:8714–88:21.) In the April 1, 2014 to April 30, 2014 account statement to AICI, U.S. Bank reported that "the net asset value of the Destra Targeted Income Unit Investment Trust . . . as 'N/A' . . . [and] the Market Value/Price for the Destra units . . . is uncertain and should not be relied upon for any purpose." (ECF No. 159-11 at 4.)

As a result of the foregoing asset distortion, AICI filed a Complaint against U.S. Bank on July 22, 2016, alleging claims for breach of contract, breach of fiduciary duty, negligence/gross negligence, negligent misrepresentation, and violation of Section 10(b) and Rule 10(b)-5 of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a–78jj. (ECF No. 1 at 21 ¶ 115–30 ¶ 181.) After the court denied its Motion to Dismiss (ECF No. 65), U.S. Bank answered the Complaint and filed a counterclaim against AICI for contractual indemnification. (ECF No. 74.) AICI answered U.S. Bank's counterclaim on November 22, 2017. (ECF No. 89.)

While the parties were engaged in discovery, the court granted AICI leave on July 23, 2018, to file a First Amended Complaint alleging claims against U.S. Bank for breach of contract, breach of fiduciary duty, negligence/gross negligence, negligent misrepresentation, and civil conspiracy. (ECF No. 154 at 21 ¶ 116–25 ¶ 141.) After answering the Amended Complaint and filing counterclaims against AICI for contractual indemnification (ECF No. 155), U.S. Bank moved for summary judgment on November 2, 2018. (ECF No. 159.) AICI filed a Response Memorandum in Opposition to Defendant's Motion for Summary Judgment on December 13, 2018, to which U.S. Bank filed a Reply Memorandum in Support of Summary Judgment on

January 2, 2019. (ECF Nos. 174, 184.)

On February 19, 2019, the court heard oral argument from the parties on the instant Motion. (ECF No. 216.)

## II. JURISDICTION

This court has subject matter jurisdiction over this action, pursuant to 28 U.S.C. § 1332, because the parties are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. (*See* ECF No. 154.) AICI is an insurance company organized under the laws of South Carolina with its principal place of business in Lexington County, South Carolina. (ECF No. 154 at 1 ¶ 1.) U.S. Bank is a national banking association with its principal place of business in Minneapolis, Minnesota. (*Id.* ¶ 2; *see also* ECF No. 155 at 2 ¶ 2.)

## III. LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248–49 (1986). A genuine question of material fact exists where, after reviewing the record, the court finds that a reasonable trier of fact could return a verdict for the nonmoving party. *Newport News Holdings Corp. v. Virtual City Vision*, 650 F.3d 423, 434 (4th Cir. 2011).

In ruling on a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990). The non-moving party may not oppose a motion for summary judgment with mere allegations or denial of the movant's pleading, but instead must "set forth specific facts"

demonstrating a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Shealy v. Winston*, 929 F.2d 1009, 1012 (4th Cir. 1991). All that is required is that "sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 249.

### IV. ANALYSIS

In this matter, the parties dispute whether U.S. Bank is entitled to partial summary judgment on AICI's alleged damages figure.

1. <u>The Parties' Arguments</u>

U.S. Bank first asserts it is entitled to partial summary judgment setting a damages cap for AICI because U.S. Bank's expert, Timothy H. Hart, demonstrated that AICI has not suffered any actual damages. (*See* ECF No. 159-3.) As support for this assertion, U.S. Bank points out that under the provisions of the Trust Agreement, AICI "incurs harm only to the extent there is a collateral shortfall and it must make out-of-pocket payments for policy liabilities that should have been secured." (ECF No. 159-1 at 37 (citing *Fin. Cas. & Sur., Inc. v. Zouvelos*, 12 Civ. 3476 (AMD) (RLM), 2017 WL 1184106, at *17 (E.D.N.Y. Mar. 29, 2017) (where plaintiff alleged that defendant mishandled and wrongfully depleted collateral, measuring damages by the amount of collateral shortfall compared to plaintiff's outstanding obligations to indemnitors); *Isr. Disc. Bank of N.Y. v. First State Depository Co., LLC*, C/A No. 7237-VCP, 2013 WL 2326875, at *23-24, *27 (Del. Ch. May 29, 2013) (where plaintiff alleged the wrongful release and conversion of loan collateral, measuring damages by amount of collateral shortfall compared to outstanding loan balance)).) As a result, U.S. Bank argues that AICI's "damages as of today are zero," because it

7

"has not suffered any out-of-pocket losses and instead boasts a collateral cushion of at least $1.22 million." (ECF No. 159-1 at 38.)

U.S. Bank next asserts that a damages cap is appropriate because Hart established that AICI's future damages, "if any, are a maximum of $2.44 million (excluding reductions for the value of the Destra UIT and Camelot shares in the Trust Account)." (*Id.* at 36 (referencing ECF No. 159-3 ("Based on my calculations, setting aside Accident's failure to mitigate, the maximum alleged damages that Accident may incur in the future from a lack of proper collateral ranges between $1.09 million[] and $2.25 million.")).) As support for Hart's conclusion, U.S. Bank specifies that to estimate future damages, the relevant factors are "(1) the known case reserves that have been set aside to pay existing claims; and (2) IBNR, the anticipated payments to be made on unreported claims." (ECF No. 159-1 at 40.) In applying these factors to this case, U.S. Bank asserts that AICI has "known case reserves of $2.22 million as of September 26, 2018" (*id.*), and "[t]he only evidence in the record of IBNR is as of December 31, 2017—which does not account for claims paid in 2018 and Accident's updated case reserves." (*Id.* at 41.) Therefore, U.S. Bank argues that AICI's "estimate of future damages" is based on speculation because "the highest amount of actual damages going forward that Accident can demonstrate is $1 million." (ECF No. 159-1 at 40–1; *see also* ECF No. 159-1 at 41 n.11 ("Collateral cushion of $1.22 million minus known case reserves of $2.22 million equals []$1 million[].").)

Citing to the Supplemental Expert Report (ECF No. 176-3) of its expert, Roy Strickland, AICI argues that summary judgment is not warranted because it has suffered damages in the amount of $8,451,595 "to a reasonable degree of accounting certainty." (ECF No. 174 at 29.) In support of its argument, AICI specifies that its estimate consists of the following categories of damages: (1) "Lost Front Fee," (2) "Fronting Program Losses incurred by AIC[I]," and (3)

8

"Fronting Program Extra Expenses incurred by AIC[I]." (*Id.* at 30.) AICI further argues that because damages are "less about what the beneficiary lost and more about deterring . . . the misconduct" (*id.* at 29), "Defendant's arguments concerning lack of damages and the assertion that damages should be capped, are without merit." (*Id.* at 30.)

In its Reply, U.S. Bank argues that the court should not consider Strickland's Supplemental Expert Report because it violates Rule 26(a)(2), is the subject of two (2) pending Motions in Limine (*see* ECF Nos. 176, 177), and contains new damages theories unsupported by the evidence. (ECF No. 184 at 15–17.)

2. <u>The Court's Review</u>

The court observes that both AICI and U.S. Bank submitted experts' reports addressing damages issues and presenting different perspectives on AICI's damages claims. (*See* ECF Nos. 159-3, 211-28.) In its Motion, U.S. Bank in essence seeks a ruling that its expert's opinion as to damages is more credible than the opinion offered by AICI's expert.

Upon its review, the court observes that in applying Delaware law, as stipulated in the choice-of-law provision of the Trust Agreement (*see* ECF No. 159-4 at 10 ¶ 13), it is apparent that U.S. Bank is seeking resolution at summary judgment of an issue that generally is reserved for the factfinder at trial, as demonstrated by the following:

> It is thus apparent that, of necessity, the jury had to decide an issue of fact raised by the conflict in the [] opinions given by the expert witnesses. In addition, since the plaintiff's experts relied upon the oral representations made to them by the plaintiff, it is apparent that the jury had to determine the credibility of the plaintiff's oral representations. If it found them not to be trustworthy, then there was no evidence for the plaintiff on the issue of damages for personal injury. The resolving of such a question lies solely within the province of a jury.

*Debernard v. Reed*, 277 A.2d 684, 685 (Del. 1971); *e.g.*, *Ateliers de la Haute-Garonne v. Broetje Automation-USA Inc.*, C/A No. 09-598-LPS, 2011 WL 4351600, at *3 (D. Del. Sept. 16, 2011) ("While recognizing the parties' arguments and concerns, the Court concludes there is a sufficient

basis for the damages experts' opinions, such that any shortcomings or deficiencies are issues of weight and credibility—to be determined by the factfinder—rather than issues of admissibility. At trial, the parties can challenge the damages experts' opinions through cross examination and the presentation of contrary evidence to assist the factfinder in determining the proper amount of damages, if any, that should be awarded in this case." (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993)); *see also Sales Res., Inc. v. All. Foods, Inc.*, Nos. 4:08cv0732 TCM, 4:09cv0666 TCM, 2010 WL 5184943, at *31 (E.D. Mo. Dec. 15, 2010) ("Nothing in the present record indicates that a damages award is not possible if Plaintiffs are successful in proving at trial their claims and related damages. The parties' disagreement on the amount and basis of any such award are properly matters for resolution at trial.). The court further observes that even if it excludes AICI's Supplemental Expert Report, the parties' damages figures are diametrically opposed. (*Compare* ECF No. 159-3, *with* ECF No. 176-1.) Accordingly, the court is not persuaded that U.S. Bank is entitled to a pre-trial cap on AICI's damages.

## V. CONCLUSION

Upon careful consideration of the record and the parties' arguments, the court **DENIES** Defendant U.S. Bank National Association's Motion for Partial Summary Judgment as to Plaintiff Accident Insurance Company, Inc.'s estimated damages. (ECF No. 159.)

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

April 11, 2019
Columbia, South Carolina