IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Accident Insurance Company, Inc., a South Carolina Corporation | ) ) ) |
| Plaintiff, | ) ) Civil Action No.: 3:16-cv-02621-JMC |
| v. | ) ) |
| U.S. Bank National Association, | ) ) **ORDER AND OPINION** |
| Defendant. | ) ) |
| U.S. Bank National Association, | ) ) |
| Third-Party Plaintiff, | ) ) |
| v. | ) ) |
| Southport Lane Advisors, Southport Specialty Finance, Administrative Agency Services, and Alexander Chatfield Burns, | ) ) ) ) |
| Third-Party Defendants. | ) ) |

Plaintiff Accident Insurance Company, Inc. ("AIC") filed this action against Defendant U.S. Bank National Association ("U.S. Bank") seeking monetary damages for breach of contract, breach of fiduciary duty, negligence/gross negligence, negligent misrepresentation, and civil conspiracy regarding a trust agreement. (ECF No. 154 at 21 ¶ 116–25 ¶ 141.)

This matter is before the court pursuant to U.S. Bank's Motion *in Limine* to Exclude Testimony and Evidence Related to Punitive Damages, filed on June 11, 2019. (ECF No. 257.) AIC filed a Response in Opposition to the Motion on June 25, 2019. (ECF No. 262.) Upon its review, the court concludes that all of AIC's claims are subject to the jurisdiction of the Delaware Court of Chancery, and, for the reasons set forth below, **GRANTS** U.S. Bank's Motion *in Limine*

1

to Exclude Testimony and Evidence Related to Punitive Damages (ECF No. 257).

## I.     JURISDICTION

This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, because the parties are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. (*See* ECF No. 154.) AIC is organized and incorporated in the State of South Carolina, with its principal place of business in Lexington County, South Carolina. (ECF No. 1 at 1.) U.S. Bank is a wholly owned subsidiary of U.S. Bancorp and is a national chartered bank with its principal place of business and headquarters in the State of Minnesota. (*Id.*) The court is satisfied the amount in controversy in this matter exceeds $75,000.00. (*Id.* at 2.)

## II.     ANALYSIS

The Trust Agreement at issue in this matter, in which AIC is the Beneficiary, and U.S. Bank is the Trustee, provides in relevant part that "[t]his Agreement shall be subject to and governed by the laws of the State of Delaware." (ECF No. 262-1 at 9 ¶ 13.) In the instant matter, the parties dispute whether AIC can be awarded punitive damages because if the case was properly heard in Delaware's Court of Chancery, it would not have jurisdiction to assess punitive damages. (ECF No. 257 at 1.)

A.     <u>The Parties' Arguments</u>

*1. U.S. Bank*

In its Motion, U.S. Bank argues that AIC should be precluded from "offering any testimony, evidence, or argument concerning punitive damages because Delaware law prohibits the recovery of punitive damages on [AIC]'s claims." (ECF No. 257 at 1.) In support of this argument, U.S. Bank asserts that exclusive jurisdiction over AIC's equitable claims would lie with

Delaware's Court of Chancery, and, absent express statutory authorization, the Court of Chancery has no jurisdiction to assess punitive damages. (*Id.* at 2 (citing *Prospect St. Energy, LLC v. Bhargava*, C/A No. N13C-08-203 WCC CCLD, 2016 WL 446202, at *6 (Del. Super. Ct. Jan. 27, 2016); *Cardone v. State Dep't of Corr.*, C/A No. 3370-VCN, 2008 WL 2447440, at *11 (Del. Ch. June 4, 2008)).) U.S. Bank further asserts that AIC's breach of fiduciary duty claim would properly be heard in the Court of Chancery because it is the quintessential equitable claim. (*Id.* (citing *Prospect St. Energy, LLC*, 2016 WL 446202, at *4).)

Additionally, U.S. Bank argues that AIC's negligence claims would properly be heard in the Court of Chancery because, under Delaware law, negligence claims sounding in equity must be pursued in the Court of Chancery. (*Id.* at 3. (citing *Prospect St. Energy, LLC*, 2016 WL 446202, at *7).) Moreover, U.S. Bank asserts that AIC's other claims, including for breach of contract, would also properly be heard in the Court of Chancery because it would have the discretion to assume jurisdiction over the entire dispute under the equitable clean-up doctrine. (*Id.* at 3–4 (citing *Getty Ref. & Mktg. Co. v. Park Oil, Inc.*, 385 A.2d 147, 149 (Del. Ch. 1978); *Those Certain Underwriters at Lloyd's v. Nat'l Installment Ins. Servs., Inc.*, No. 19804-NC, 2007 WL 2813774, at *3 (Del. Ch. Feb. 8, 2007) ("[I]t is settled law that when equity obtains jurisdiction over some portion of the controversy it will decide the whole controversy and give complete and final relief, even though that involves the grant of a purely law remedy such as a money judgment.") (citation omitted)).)

2. AIC

In its Opposition to U.S. Bank's Motion, AIC asserts that it should be allowed to recover punitive damages based on § 198 of the Restatement (Second) of Trusts, which provides that a trust beneficiary's breach of fiduciary duty claim is legal, and not equitable, if the trustee has a

3

duty to pay money immediately and unconditionally to the beneficiary. (ECF No. 262 at 3 (citing Restatement (Second) of Trusts §§ 197 and 198 (1959)).) AIC contends that its trust agreement required U.S. Bank to immediately transfer the assets at issue in the litigation, absolutely and unequivocally, to the beneficiary. (*Id.*) Therefore, AIC asserts that the exception would be applied in this case and its claims would be considered as legal rather than equitable.[1] (*Id.* at 3–4.)

Furthermore, AIC argues that it can still seek punitive damages in this court for breach of fiduciary duty. (*Id.* at 4.) In support of this argument, AIC asserts that federal procedural law is controlling and, therefore, Delaware procedural law foreclosing an award of punitive damages based on the jurisdiction of the Court of Chancery is inapplicable. (*Id.* at 4–5.) To this point, AIC states that it is seeking money damages and such a remedy is legal in nature. (*Id.* at 5.) Thus, AIC surmises that it is allowed to seek punitive damages under federal procedural law. (*Id.*)

Additionally, AIC argues that the clean-up doctrine is applied as a matter of judicial discretion and asserts that the Court of Chancery would not apply the doctrine in this case. (*Id.* at 6.) In this regard, AIC asserts that the court may refuse to apply Delaware law relating to punitive damages if its application is offensive to the public policy of South Carolina and prejudicial to the general interests of its citizens. (*Id.* at 8. (citing *Rauton v. Pullman Co.*, 191 S.E. 416, 422 (S.C. 1937)).) AIC contends that South Carolina holds trustees to the highest of fiduciary obligations and protects its citizen beneficiaries by providing a wide range of remedies against a trustee who fails to meet its obligations. (*Id.* at 8–9.) Accordingly, AIC asserts that the court should apply the public policy exception in this case. (*Id.*)

Finally, AIC argues that the choice-of-law provision of the trust agreement is too narrow

---

[1] Upon its review, the court finds that Delaware courts have not adopted the Restatement (Second) of Trusts § 198 exception, thus, we need not address AIC's argument regarding the exception.

4

to be applicable to its tort claims. (ECF No. 262 at 9.) AIC contends that in *Charleston Marine Containers, Inc. v. Sherwin-Williams Co.*, the United States District Court for the District of South Carolina concluded that a choice-of-law provision, similar to the provision in AIC's trust agreement, could be interpreted either to include or to not include tort claims. (*Id.* at 10 (citing *Charleston Marine Containers, Inc.*, 165 F. Supp. 3d 457, 469 (D.S.C. 2016)[2]).) AIC asserts that the choice-of-law provision in its trust agreement is narrowly worded like the provision in *Charleston Marine Containers, Inc.*, however, the agreement does not contain any other qualifiers that would extend the scope of the provision. (ECF No. 262 at 12.) Therefore, AIC asserts that the choice-of-law provision should not apply to its tort claims. (*Id.* at 9.)

B.   The Court's Review

In a diversity suit, federal courts must apply the rules of the forum state when addressing choice-of-law questions. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). South Carolina choice-of-law rules dictate that the court must apply the law specified in a contract. *See Bannister v. Shepherd*, 4 S.E.2d 7, 9 (S.C. 1939); *Livingston v. Atl. Coast Line R.R. Co.*, 180 S.E. 343, 345

---

[2] In *Charleston Marine Containers, Inc.*, the court considered two prior cases that analyzed similar choice-of-law provisions in regard to tort claims and concluded that tort claims were covered by the choice-of-law provisions due to their broad wording. *Charleston Marine Containers, Inc.*, 165 F. Supp. 3d at 468–69; *see also Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 628 (4th Cir. 1999) (finding that the choice-of-law provision in the agreement was sufficiently broad to encompass contract-related tort claims); *Palmetto Health Credit Union v. Open Sols. Inc.*, No. 3:08-cv-3848, 2010 WL 2710551, at *2 (D.S.C. July 7, 2010), *clarified on denial of reconsideration*, No. 3:08-cv-3848, 2010 WL 3521609 (D.S.C. Sept. 7, 2010) (finding that plaintiff's unfair trade practices claim was governed by the choice-of-law provision based on its sufficient relation to the agreement). Based on its analysis, the court in *Charleston Marine Containers, Inc.* held that the choice of law provision which stated that the "[Supply Agreement] is governed by the laws of the State of Ohio," together with a separate provision that stated the agreement represented the "entire agreement between the parties [] with reference to the subject matter hereof," was sufficient to conclude that alleged negligent misrepresentations were part of the subject matter of the agreement and therefore covered by its choice-of-law provision and governed by the laws of the State of Ohio. *Charleston Marine Containers, Inc.*, 165 F. Supp. 3d at 469.

(S.C. 1935). In the instant case, the trust agreement between the parties indicates that it shall be subject to and governed by the laws of the State of Delaware. (ECF No. 262-1 at 9 ¶ 13.) Despite the aforementioned provision, AIC argues that Delaware law does not control the resolution of the instant dispute.

Upon its review, the court observes that AIC is correct that "federal courts sitting in diversity apply . . . federal procedural law." (ECF No. 262 at 4–5 (citation omitted).) However, while AIC fails to cite to any case law specifying either what federal procedural law or how it would require this court to allow punitive damages, numerous other courts have expressly concluded that state law governs the issue of whether punitive damages are permitted. *See, e.g.*, *Buchwald v. Renco Group*, 539 B.R. 31, 53 (S.D.N.Y. 2015) ("The availability of punitive damages on state claims in federal courts is generally governed by state law under *Erie*.") (citing *Browning–Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 278–79 (1989)); *Jenkins v. Immedia, Inc.*, C/A No. 13-cv-00327-CMA-KLM, 2019 WL 1875501, at *5 (D. Colo. April 25, 2019) (holding that state substantive law applied to Plaintiff's claim for punitive damages in assessing whether punitive damages were permitted); *Ayres v. AG Processing, Inc.*, 04-2060-DJW, 2015 WL 1799261, at *3 (D. Kan. July 22, 2005) ("Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law. The issue of whether punitive damages are permitted is governed by state substantive law."). Therefore, the court concludes that the application of Delaware law is appropriate in precluding an award of punitive damages based on the jurisdiction of the Delaware Court of Chancery. *Cf. Buchwald*, 539 B.R. at 54 ("The Court will not order an award of punitive damages wholly unavailable to a plaintiff litigating in Delaware courts based on some sleight-of-hand that makes Delaware law on punitive damages different in federal court than state court.").

As to AIC's arguments regarding Delaware's clean-up doctrine, the court concludes that the Delaware Court of Chancery would have applied the doctrine and assumed jurisdiction over all of AIC's claims. Under Delaware's clean-up doctrine, the Court of Chancery may assert its discretion to assume jurisdiction over all claims when legal claims are intertwined with equitable claims. *Getty Ref. & Mktg Co.*, 385 A.2d at 149. In deciding whether to assume jurisdiction, the Court of Chancery must consider if exercising the assumption will:

> resolve a factual issue which must be determined in the proceedings; [] avoid multiplicity of suits; [] promote judicial efficiency; to do full justice; [] avoid great expense; [] afford complete relief in one action; and [] overcome insufficient modes of procedure at law. Of great importance is whether the facts involved in the equitable counts and in the legal counts are so intertwined as to make it undesirable or impossible to sever them.

*Id.* at 150.

In the present case, the facts involved in all of the claims are so intertwined as to imply that, had this case been brought in Delaware, the Court of Chancery would have exercised the clean-up doctrine and assumed jurisdiction over all claims. All of AIC's claims against U.S. Bank are based on the same factual allegations in its First Amended Complaint (ECF No. 154) regarding inappropriate investment substitutions made by U.S. Bank as trustee of AIC's trust account. Thus, the court affirms the application of the clean-up doctrine in this case.

In response to AIC's argument concerning application of the *Rauton* public policy exception, the court finds that the application of Delaware law, in this case, does not offend South Carolina public policy and, therefore, declines to apply the exception. The South Carolina Supreme Court clarified in *Rauton v. Pullman Co.* that, to justify a court in refusing to enforce the law of another state, it must appear that the law is "against good morals or natural justice, or that for some other such reason the enforcement of it would be prejudicial to the general interests of [the state's] own citizens." *Rauton*, 191 S.E. at 422. The South Carolina Supreme Court "has never utilized the

[*Rauton*] public policy exception to avoid application of foreign laws which prevent South Carolina citizens from recovering for a wrong." *Thornton v. Cessna Aircraft Co.*, 886 F.2d 85, 88 (4th Cir. 1989). In *Dawkins v. State*, the Supreme Court of South Carolina asserted that "[t]he 'good morals or natural justice' of [South Carolina] are not violated when foreign law is applied to preclude a tort action for money damages, whether against an individual or the State, even if recovery may be had upon application of South Carolina law." 412 S.E.2d 407, 408 (S.C. 1991) (quoting *Rauton*, 191 S.E. at 422). Accordingly, the court declines to apply the public policy exception in this case.

Finally, upon its review, the court observes that the trust agreement involved in this matter does, in fact, contain a provision that extends the scope of the choice-of-law provision, similar to the one at issue in *Charleston Marine Containers, Inc.*, 165 F. Supp. 3d at 469. The trust agreement between AIC and U.S. Bank contains a choice-of-law provision that states the agreement "shall be subject to and governed by the laws of the State of Delaware[,]" as well as a separate provision which states that the agreement "constitutes the entire agreement among the Parties relating to the subject matter hereof . . .."[3] (ECF No. 262-1 at 9 ¶¶ 13, 16.) The court finds that AIC's argument is without merit and concludes that all of AIC's claims are subject to the trust agreement's choice-of-law provision.[4]

---

[3] AIC also acknowledges the court in *Charleston Marine Containers, Inc.* reasoned that the negligent misrepresentation claim could reasonably be regarded as "ancillary to, but not part of, the agreement" because the agreement did not explicitly obligate the defendant to provide any representations regarding the products. (ECF No. 262 at 10 (quoting *Charleston Marine Containers, Inc.*, 165 F. Supp. 3d. at 469).) Upon its review, the court finds that any arguments arising therefrom, asserting that AIC's negligent misrepresentation claim may be ancillary to the agreement, are without merit based on ¶ 8(a) of the agreement which requires U.S. Bank to provide AIC with a monthly accounting of the assets in the account. (ECF No. 159-4 at 4 ¶ 8(a).)

[4] Based on the court's conclusion that AIC's argument on the scope of the choice-of-law provision is without merit, it need not address AIC's arguments regarding the applicability of South Carolina law to its tort claims. (ECF No. 262 at 12–14.)

### III. CONCLUSION

Upon careful consideration of the record, the parties' arguments, and relevant case law, the court **GRANTS** U.S. Bank's Motion *in Limine* to Exclude Testimony and Evidence Related to Punitive Damages (ECF. No. 257).

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

July 3, 2019
Columbia, South Carolina