IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Accident Insurance Company, Inc., a South Carolina Corporation,<br><br>  Plaintiff,<br><br>v.<br><br>U.S. Bank National Association,<br><br>  Defendant.<br>_____<br>U.S. Bank National Association,<br><br>  Third-Party Plaintiff,<br><br>v.<br><br>Southport Lane Advisors,<br>Southport Specialty Finance,<br>Administrative Agency Services,<br>and Alexander Chatfield Burns,<br><br>  Third-Party Defendants.<br>_____ | Civil Action No.: 3:16-cv-02621-JMC<br><br>**ORDER AND OPINION** |

Plaintiff Accident Insurance Company, Inc. ("Accident") filed this action against Defendant U.S. Bank National Association ("U.S. Bank") seeking monetary damages related to its allegedly deficient administration of a reinsurance trust account created pursuant to a written trust agreement. (ECF No. 154 at 21 ¶ 116–25 ¶ 141.)

This matter is before the court on Accident's Motion for a New Trial, Motion to Amend the Court's Finding of Facts and Conclusions of Law, and Motion to Alter or Amend Judgment pursuant to Rules 52 and 59 of the Federal Rules of Civil Procedure. (ECF No. 305.) U.S. Bank opposes Accident's Motion in its entirety. (ECF No. 308.) For the reasons stated below, the court **DENIES** Accident's Motion for a New Trial, Motion to Amend the Court's Finding of

1

Facts and Conclusions of Law, and Motion to Alter or Amend Judgment.

## I. RELEVANT BACKGROUND TO THE PENDING MOTION

In this matter, Accident alleged claims against U.S. Bank for breach of contract, breach of fiduciary duty, negligence/gross negligence, negligent misrepresentation, and civil conspiracy. (*See* ECF No. 154 at 21 ¶ 116–25 ¶ 141.) The parties' dispute centers on the provisions of their Trust Agreement, which provided in relevant part:

> Paragraph 1(a): The Grantor hereby creates a trust account for the sole use and benefit of the Beneficiary pursuant to the terms of this Agreement [].
>
> Paragraph 1(b): The rights and duties of the Grantor, the Beneficiary and the Trustee under this Agreement are not subject to any conditions or qualifications not set forth in the Agreement.
>
> Paragraph 2(a): The Trustee shall receive Assets from the Grantor, deposit the Assets into the Trust Account and hold the Assets in the Trust Account for safekeeping, subject to the terms of this Agreement. All Assets of the Trust Account shall be held by the Trustee in physical or customary book entry form at the Trustee's offices in the United States. The Trustee shall notify the Beneficiary and Grantor within ten (10) days of any deposits into the Trust Account.
>
> Paragraph 2(b): The Assets shall consist only of cash (United States legal tender) and Eligible Securities (as hereinafter defined). The Trustee shall have no duty or responsibility with respect to the qualification, character or valuation of the Assets deposited in the Trust Account, except to determine whether the Assets are in such form that the Beneficiary, or the Trustee upon direction by the Beneficiary, may whenever necessary negotiate any such Assets without consent or signature from the Grantor or any other person or entity.
>
> Paragraph 3(a): Without notice to or the consent of the Grantor, the Beneficiary shall have the right, at any time, to withdraw from the Trust Account, upon written notice to the Trustee (a "Withdrawal Notice"), such Assets as are specified in the Withdrawal Notice . . . . The Beneficiary need present no statement or document in addition to a Withdrawal Notice in order to withdraw any Assets.
>
> Paragraph 3(b): Upon receipt of a Withdrawal Notice, the Trustee shall immediately take any and all steps necessary to transfer absolutely and unequivocally to the Beneficiary or to its order all right, title and interest in the Assets being withdrawn, and shall deliver the physical custody of such Assets to or for the account of the Beneficiary as specified in the Withdrawal Notice. The Trustee shall notify the Grantor and Beneficiary within ten (10) days of any such

withdrawal from the Trust Account. The Beneficiary shall acknowledge receipt of any withdrawn Assets within five (5) days of such receipt.

Paragraph 5(a): Following notice to the Beneficiary, the Trustee shall surrender for payment all maturing Assets and all Assets called for redemption and deposit the proceeds of any such payments into the Trust Account. All such proceeds shall be Invested, as instructed by the Grantor or its designated investment advisor in Eligible Securities satisfying the requirements of Applicable Law regarding the investment of Assets in the Trust Account. Any instruction or order concerning such investment of Assets shall be referred to as an "Investment Order". The Trustee shall execute each Investment Order and settle securities transactions by itself or by means of an agent or broker. The Trustee shall not be responsible for any act or omission, or for the solvency, of any such agent or broker.

Paragraph 5(b): The Grantor may direct the Trustee to accept substitute Assets for other Assets held in the Trust Account.

Paragraph 5(c): The Grantor represents and warrants that each Investment Order or Asset substitution will involve an investment in Eligible Securities satisfying the requirements of Applicable Law regarding investments in the Trust Account. The Trustee has no responsibility for determining whether any Assets invested pursuant to an Investment Order or Asset substitution are made in Eligible Securities that comply with the requirements of Applicable Law regarding investments in the Trust Account.

Paragraph 8(a): The Trustee shall furnish to Grantor and Beneficiary an accounting of all Assets in the Trust Account upon its inception and thereafter at intervals no less frequent than as of the end of each calendar month. Such accounting shall include a statement of all Assets in the Trust Account and shall be given as soon as [] practicable, but in no event later than fifteen (15) days after such date.

Paragraph 8(b): Before accepting any Asset for deposit to the Trust Account, the Trustee shall determine that such Asset is in such form that the Beneficiary whenever necessary may, or the Trustee upon direction by the Beneficiary will, negotiate such Asset without consent or signature from the Grantor or any person or entity other than the Trustee in accordance with the terms of this Agreement.

Paragraph 8(g): Unless otherwise provided in this Agreement, the Trustee is authorized to follow and rely upon all instructions given by officers named in any authorized signers list furnished to the Trustee from time to time by the Grantor and the Beneficiary, respectively, and by attorneys-in-fact acting under written authority furnished to the Trustee by the Grantor or the Beneficiary, including, without limitation, instructions given by letter, facsimile transmission, telegram, teletype, cablegram or electronic media, if the Trustee believes such instructions to be genuine and to have been signed, sent or presented by the proper party or

3

> parties. The Trustee shall not incur any liability to anyone resulting from actions taken by the Trustee in reliance in good faith on such instructions.
>
> Paragraph 8(i): The Trustee shall not be liable for any loss, liability, costs or expenses, (including reasonable attorney's fees and expenses) incurred or made arising out of or in connection with the performance of its duties hereunder in accordance with the provisions of this Agreement, unless such loss, liability, costs or expenses are caused by its own negligence, willful misconduct or lack of good faith.
>
> Paragraph 12(b): The term "Applicable Insurance Law" shall mean the law of the State of New York."
>
> Paragraph 12(f): The term "Eligible Securities" shall mean and include certificates of deposit issued by a United States bank and payable in United States legal tender and securities representing investments of the types specified in subsections (1), (2), (3), (4), (6), (8) and (10) of Section 1404(a) of [] New York Insurance Law; provided, however, that no such securities shall have been issued by a Parent or a Subsidiary of either the Grantor or the Beneficiary. Any deposit or investment direction by Grantor shall constitute a certification by Grantor to the Trustee that the Assets so deposited, or to be purchased pursuant to such investment directions, are Eligible Securities under Applicable insurance Law, and the Trustee shall be entitled to rely on Grantor's representation.
>
> Paragraph 13: This Agreement shall be subject to and governed by the laws of the State of Delaware.

(Def. Ex. No. 89.) After denying U.S. Bank's Motion for Summary Judgment as to Accident's claims (*see* ECF Nos. 223, 232), the court conducted a bench trial at which the parties presented evidence and argument starting on July 8 through July 12, 2019, and concluding on July 15, 2019. (ECF Nos. 275, 277–281, 286–291.) Specifically, the court heard live testimony from thirteen (13) witnesses and was read the deposition testimony of one (1) witness. The parties also stipulated to the admission of the reports of three (3) expert witnesses in lieu of live testimony. (*See* ECF No. 265.) On April 20, 2020, the court filed its Findings of Fact, Conclusions of Law, and Order (the "April Order"), concluding that judgment should be entered in favor of U.S. Bank on all of Accident's claims; and for Accident on U.S. Bank's counterclaim

for contractual indemnification.¹ (ECF No. 303 at 52–53.) Additionally, the court's April 20, 2020 Judgment stated that neither party shall take from the other on their respective claims. (*See* ECF No. 304.)

On May 18, 2020, Accident filed the instant Motion for a New Trial, Motion to Amend the Court's Findings of Facts and Conclusions of Law, and Motion to Alter or Amend Judgment. (ECF No. 305.) On June 15, 2020, U.S. Bank filed a Response to Accident's Motions contending that the court should deny the Motions in all respects. (ECF No. 308.)

## II.     LEGAL STANDARD²

A.     <u>Motion for New Trial under Rule 59(a)</u>

A motion for a new trial under Rule 59(a) may be granted "on all or some of the issues . . . to any party . . . for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a). This rule allows a trial court to set aside the verdict and order a new trial only if "(1) the verdict is against the clear weight of the evidence, or (2) is based upon evidence which is false, or (3) will result in a miscarriage of justice even though there may be substantial evidence which would prevent the direction of a verdict." *Atlas Food Sys. & Servs. Inc. v. Crane Nat'l Vendors, Inc.*, 99 F.3d 587, 594 (4th Cir. 1996). In evaluating a motion for a new trial, the district court has the discretion to "weigh the evidence and consider the credibility of witnesses." *Knussman v. Maryland*, 272 F.3d 625, 647 (4th Cir. 2001); *Swentek v. USAIR, Inc.*, 830 F.2d 552, 559 (4th Cir. 1987).

B.     <u>Motion to Alter or Amend a Judgment under Rule 59(e)</u>

Rule 59 allows a party to seek an alteration or amendment of a previous order of the

---

¹ The April Order contains a vast recitation of the relevant factual and procedural background of the matter and is incorporated herein by reference. (*See* ECF No. 303 at 4 ¶ 1–17 ¶ 52.)
² Because the court sits in diversity jurisdiction, it must apply federal procedural law. *See, e.g.*, *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996).

court. Fed. R. Civ. P. 59(e). Under Rule 59(e), a court may "alter or amend the judgment if the movant shows either (1) an intervening change in the controlling law, (2) new evidence that was not available at trial, or (3) that there has been a clear error of law or a manifest injustice." *Robinson v. Wix Filtration Corp.*, 599 F.3d 403, 407 (4th Cir. 2010); *see also Collison v. Int'l Chem. Workers Union*, 34 F.3d 233, 235 (4th Cir. 1994). It is the moving party's burden to establish one of these three grounds in order to obtain relief. *Loren Data Corp. v. GXS, Inc.*, 501 F. App'x 275, 285 (4th Cir. 2012). The decision whether to reconsider an order under Rule 59(e) is within the sound discretion of the district court. *Hughes v. Bedsole*, 48 F.3d 1376, 1382 (4th Cir. 1995). A motion to reconsider should not be used as a "vehicle for rearguing the law, raising new arguments, or petitioning a court to change its mind." *Lyles v. Reynolds*, C/A No. 4:14-1063-TMC, 2016 WL 1427324, at *1 (D.S.C. Apr. 12, 2016) (citing *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008)).

C.     Motion to Alter or Amend a Judgment under Rule 52(b)

Rule 52(b) provides that "on a party's motion filed no later than 28 days after entry of judgment, the court may amend its findings—or make additional findings—and may amend the judgment accordingly." Fed. R. Civ. P. 52(b). "Although Rule 52(b) does not provide a specific standard for review of such motions, the Fourth Circuit has recognized three grounds on which a court may alter or amend an earlier judgment: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct clear error of law or prevent manifest injustice." *Stogsdill v. Keck*, C/A No. 3:12-cv-0007-JFA, 2015 WL 3396821, at *1 (D.S.C. May 26, 2015) (citations omitted). "A motion pursuant to Rule 52(b), just like a Rule 59(e) motion, may properly seek to correct manifest errors of law or fact or to present newly discovered evidence." *Id.* (citation omitted). "It is not the intention or purpose of

6

Rule[] 52(b) . . . to permit parties to 'relitigate old matters,' or 'give an unhappy litigant one additional chance to sway the judge.'" *Id.* (citations omitted).

### III.     ANALYSIS

In its Motions, Accident identifies seven (7) assertions of alleged error in the court's April Order.[3] The court addresses each of Accident's specific criticisms below.

A.     The Court Should Have Applied South Carolina Substantive Law To Accident's Fiduciary Duty And Tort Claims[4]

*1.    The Parties' Arguments*

Accident argues that the court erred by applying Delaware substantive law to its claims for breach of fiduciary duty, negligence/gross negligence, negligent misrepresentation, and civil conspiracy. (ECF No. 305 at 15.) In support of this argument, Accident contends that the choice of law provision in the parties' Trust Agreement is not broad enough to extend "to tort claims arising outside of the agreement."[5] (*Id.* at 17 (citing *Charleston Marine Containers, Inc. v. Sherwin-Williams Co.*, 165 F. Supp. 3d 457, 469 (D.S.C. 2016); *Palmetto Health Credit Union v. Open Sols. Inc.*, No. 3:08-cv-3848, 2010 WL 2710551, at *2 (D.S.C. July 7, 2010); *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 628 (4th Cir.1999)).) Therefore, Accident believes that "South Carolina law applies to those claims because the harm was incurred by

---

[3] The court observes that Accident did not specify which of Rules 52 or 59 were applicable to each individual assertion of error. However, in the headings for six (6) out of the seven (7) assertions of error, Accident stated that it was seeking to amend the April Order's findings of fact and/or legal conclusions. (*See* ECF No. 305 at 5, 8, 13, 20, 23.) This is in contrast to Accident's general request that "the [c]ourt grant a new trial or, in the alternative, amend its findings of fact and conclusions of law to conform to the preponderance of evidence presented at trial." (*Id.* at 3.)

[4] The court observes that this specific assertion of error is the fourth out of seven (7) alleged by Accident. However, because the choice of law argument made by Accident is referenced in at least one other assertion of error, the court will address this alleged error first. (*See, e.g.*, ECF No. 305 at 20.)

[5] The choice of law provision in the parties' Trust Agreement states that "[t]his Agreement shall be subject to and governed by the laws of the State of Delaware." (Def. Ex. No. 89 at 008977 ¶ 13.)

Accident in South Carolina [and u]nder traditional South Carolina choice of law principles, the state's substantive law in which the injury occurred typically governs a tort action." (*Id.* at 18 (citing *Bannister v. Hertz Corp.*, 450 S.E.2d 629 (S.C. Ct. App. 1994); *Dawkins v. State*, 412 S.E.2d 407 (S.C. 1991)).) Accordingly, Accident seeks to have the court "amend its conclusions of law to apply the proper substantive law and reconsider its ruling on each claim in light of South Carolina substantive law." (*Id.* at 19.)

In response to Accident's choice of law contentions, U.S. Bank argues that the court did not err in applying Delaware substantive law to Accident's claims for breach of fiduciary duty, negligence/gross negligence, negligent misrepresentation, and civil conspiracy because "the Trust Agreement's choice of law clause covers all of Accident's claims." (ECF No. 308 at 13.) U.S. Bank asserts in support of this argument that the application of Delaware substantive law was appropriate because "[u]nder South Carolina choice of law principles, the substantive law governing a tort action is determined by the state in which the injury occurred, commonly referred to as the lex loci delicti rule." (*Id.* at 14 (citing *Rogers v. Lee*, 777 S.E.2d 402, 405 (S.C. Ct. App. 2015)).) In this regard, U.S. Bank argues that Delaware law governs because the harm Accident suffered was conducted in Wilmington, Delaware at U.S. Bank's office even though it "suffered the resulting losses in South Carolina." (*Id.* (citing ECF No. 305 at 18).) Finally, U.S. Bank takes the position that even if its substantive arguments fail, the court did not err because Accident waived any argument that Delaware law is inapplicable "[b]y affirmatively, intentionally, and unambiguously asserting that Delaware law applies—both during closing and in its post-trial submission." (*Id.* at 12.)

    2. *The Court's Review*

The court observes that it previously addressed this issue in an Order entered on July 3,

8

2019, wherein it found as follows:

> Finally, upon its review, the court observes that the trust agreement involved in this matter does, in fact, contain a provision that extends the scope of the choice-of-law provision, similar to the one at issue in *Charleston Marine Containers, Inc.*, 165 F. Supp. 3d at 469. The trust agreement between AIC and U.S. Bank contains a choice-of-law provision that states the agreement "shall be subject to and governed by the laws of the State of Delaware[,]" as well as a separate provision which states that the agreement "constitutes the entire agreement among the Parties relating to the subject matter hereof . . .." (ECF No. 262-1 at 9 ¶¶ 13, 16.) The court finds that AIC's argument is without merit and concludes that all of AIC's claims are subject to the trust agreement's choice-of-law provision.

(ECF No. 270 at 8.) Accident did not seek reconsideration of the court's July 3, 2019 Order and, therefore, the court finds that the instant Motion is an impermissible relitigation of old matters under Rules 52 and 59. *See Stogsdill v. Keck*, C/A No. 3:12-cv-0007-JFA, 2015 WL 3396821, at *1 (D.S.C. May 26, 2015) ("It is not the intention or purpose of Rules 52(b) and 59(e) to permit parties to 'relitigate old matters,' or 'give an unhappy litigant one additional chance to sway the judge,'" (internal and external citations omitted)).

Notwithstanding the aforementioned conclusion, the court in the *Charleston Marine Containers* case interpreted choice of law and entire agreement[6] provisions similar to the ones in the parties' Trust Agreement at issue in this matter and found that it was reasonable to conclude either that tort claims were part of the "subject matter of the agreement" or, in the alternative, to decide that they fell "outside the scope of the agreement's choice of law provision and is therefore governed under South Carolina law." *Charleston Marine Containers*, 165 F. Supp. 3d

---

[6] "In contract law, an integration clause–also sometimes called a merger clause or an entire agreement clause–is a provision that states that the terms of a contract are the complete and final agreement between the parties." *Integration clause*, https://www.law.cornell.edu/wex/integration_clause (last visited Mar. 15, 2021). The entire agreement provision of the parties' Trust Agreement provided that "[t]his Agreement constitutes the entire agreement among the Parties relating to the subject matter hereof, and there are no understandings or agreements, conditions or qualifications relative to this Agreement that are not fully expressed in this Agreement." (Def. Ex. No. 89 at 008977 ¶ 16.)

at 469 ("[T]he court finds that either interpretation is reasonable, . . . .").[7] Therefore, upon its consideration of the foregoing, the court finds that it did not err in concluding that Accident's claims for breach of fiduciary duty, negligence/gross negligence, negligent misrepresentation, and civil conspiracy were covered by the choice of law provision in the parties' Trust Agreement. *E.g.*, *CitiSculpt, LLC v. Advanced Commercial Credit Int'l (ACI) Ltd.*, Civil Action No.: 6:17-cv-69-BHH, 2017 WL 660833, at *2 (D.S.C. Feb. 17, 2017) ("South Carolina generally respects choice of law provisions, . . . and appears to recognize that a contract's choice of law provision can extend to tort claims." (quoting *Charleston Marine Containers*, 165 F. Supp. 3d at 468–69)).

B. <u>The April Order's Legal Conclusions Should Be Amended Based On The Duties And Rights Imposed By Paragraphs 2(a) And 8(g) Of The Trust Agreement</u>

   *1. The Parties' Arguments*

Accident contends that the court erred by relying "on [P]aragraph 8(g) as the basis for its conclusions of law that U.S. Bank did not violate Paragraph 2(a) of the Trust Agreement." (ECF No. 305 at 5.) In support of this contention, Accident asserts that "[n]othing in Paragraph 8(g) gives Dallas National the right to control trust assets" and it "was not allowed to direct or control

---

[7] In *Charleston Marine Containers, Inc.*, the court considered two prior cases that analyzed similar choice-of-law provisions in regard to tort claims and concluded that tort claims were covered by the choice-of-law provisions due to their broad wording. *Charleston Marine Containers, Inc.*, 165 F. Supp. 3d at 468–69; *see also Hitachi Credit*, 166 F.3d at 628 (finding that the choice-of-law provision in the agreement was sufficiently broad to encompass contract-related tort claims); *Palmetto Health*, 2010 WL 2710551, at *2 (finding that plaintiff's unfair trade practices claim was governed by the choice-of-law provision based on its sufficient relation to the agreement). Based on its analysis, the court in *Charleston Marine Containers, Inc.* held that the choice of law provision which stated that the "[Supply Agreement] is governed by the laws of the State of Ohio," together with a separate provision that stated the agreement represented the "entire agreement between the parties [] with reference to the subject matter hereof," was sufficient to conclude that alleged negligent misrepresentations were part of the subject matter of the agreement and therefore covered by its choice-of-law provision and governed by the laws of the State of Ohio. *Charleston Marine Containers, Inc.*, 165 F. Supp. 3d at 469.

10

any asset movement in the trust account, except for: []asset deposit (Paragraph 2(a)); []asset redemption and investment of redeemed proceeds (Paragraph 5(a)); and []asset substitution (Paragraph 5(b))." (ECF No. 305 at 6.) Accident further asserts that because "U.S. Bank knew Dallas National lacked authority to direct the sale of the municipal bonds," U.S. Bank knowingly violated the Trust Agreement when it allowed Dallas National "to move municipal bonds out of the trust account in January 2014." (*Id.* at 6, 8.)

U.S. Bank responds arguing that there was sufficient trial evidence establishing "that Dallas National and its investment advisor were empowered to manage and direct account trading and investments, without exception." (ECF No. 308 at 7 (citations omitted).) As a result, U.S. Bank asserts that "[t]he court's finding that U.S. Bank acted in good faith and therefore did not breach paragraph 2(a) of the Trust Agreement was not clearly erroneous." (*Id.* at 8 (citation omitted).)

2. *The Court's Review*

Dallas National was the grantor specified in the Trust Agreement. (*See* Def. Ex. No. 89 at 008969.) In the April Order, the court determined that Dallas National directed the selling of New Mexico municipal bonds on January 13, 2014, and Port of Seattle municipal bonds on January 14, 2014. (*See* ECF No. 303 at 36 ¶ 102 (citations omitted).) The court further determined that Dallas National's actions did not result in a breach of Paragraph 2(a) by U.S. Bank based on a plain language reading of the Paragraph 8(g) of the Trust Agreement. (*Id.* at 36 ¶ 103–37 ¶ 105.) Accident contends that the court's finding was erroneous because Paragraph 8(g) did not provide Dallas National with the ability to sell the aforementioned municipal bonds of which U.S. Bank had knowledge. (*See* ECF No. 305 at 6–7.)

Accident's argument, while well-conceived, only is persuasive if the remaining

11

provisions of the Trust Agreement are ignored. *Cf. Stonewall Ins. Co. v. E.I. du Pont de Nemours & Co.*, 996 A.2d 1254, 1260 (Del. 2010) ("[A] single clause or paragraph of a contract cannot be read in isolation, but must be read in context." (citations omitted)). Paragraph 8(g) authorized U.S. Bank to rely in good faith upon instructions received from authorized officers of Dallas National. Accident could have presumably prevented Dallas National's actions by not allowing this provision into the Trust Agreement. *E.g.*, *Plaze, Inc. v. Callas*, C.A. No. 2018-0721-TMR, 2019 WL 1028110, at *5 (Del. Ch. Feb. 28, 2019) ("If [a party] wanted a contractual right . . . then he should have contracted for it." (citation omitted)).[8] Furthermore, as the trier of fact, the court weighed the evidence, drew reasonable inferences, and explained in the April Order why a plain reading of the Trust Agreement, including Paragraph 8(g), did not lead to a conclusion that U.S. Bank breached Paragraph 2(a). Therefore, the court finds that Accident has not demonstrated that the analysis in the April Order was erroneous warranting a new trial or amendment of the April Order.

C.  The April Order's Legal Conclusions Should Be Amended Based On The Duties Imposed By Paragraphs 2(b) And 8(b) Of The Trust Agreement

   *1. The Parties' Arguments*

Accident asserts that the court erred by defining "negotiable" in terms inconsistent with substantive Delaware law and Delaware contract interpretation principles. (ECF No. 305 at 8, 9 (citing *Wooleyhan v. Green*, 155 A. 602, 603 (Del. Super. 1931) (Negotiable "applies to any written instrument given as a security, usually for the payment of money, which may be transferred by indorsement or delivery, vesting in the party to whom it is transferred or delivered

---

[8] "Delaware follows the objective theory of contracts." *Plaze, Inc.*, 2019 WL 1028110, at *4. "Under Delaware law, courts interpret contracts to mean what they objectively say." *Id.* (citation omitted). "[T]he court looks to the most objective indicia of that intent: the words found in the written instrument." *Id.* "[T]he court ascribes to the words their common or ordinary meaning, and interprets them as would an objectively reasonable third-party observer." *Id.* (citation omitted).

a legal title upon which he can support a suit in his own name." (citation omitted))).) Accident further asserts that based on the evidence submitted at trial (*see* ECF No. 305 at 11–12), the "[c]ourt should have concluded 'negotiable' is linked to transferability," and if it had, the court would have found that "U.S. Bank failed to meet its duty to determine whether Destra UITs were transferrable and, therefore, "negotiable" as required by the Trust Agreement." (*Id.* at 10, 11.) Moreover, Accident asserts that "[h]ad U.S. Bank conducted the proper review and determined Destra UITs were not negotiable as required by the Trust Agreement, then U.S. Bank had the further obligation to refuse acceptance of the Destra UITs into the trust." (ECF No. 312 at 2.) Consequently, the court should amend the April Order "to note the correct definition of 'negotiable' and to find the preponderance of the evidence shows U.S. Bank failed to perform its duties pursuant to Trust Agreement Paragraphs 2(b) and 8(b)." (ECF No. 305 at 13.)

U.S. Bank defends the April Order asserting that the court appropriately "made findings as to what the appropriate steps were with respect to the Destra UIT[s], and whether U.S. Bank took those steps." (ECF No. 308 at 8–9.) U.S. Bank next asserts that "the court reached all the factual findings necessary to conclude that U.S. Bank made the required determination and 'did not breach its obligations under paragraphs 8(b) and 2(b) . . . based on the perceived lack of negotiability of Destra UITs.'" (ECF No. 308 at 10 (citing ECF No. 303 at 31 ¶ 63).) Finally, U.S. Bank declares that as a result, "[h]aving found that U.S. Bank took the steps to make the determination required by contract, the court did not err—much less clearly err—in finding no breach of paragraphs 8(b) and 2(b)." (ECF No. 308 at 11.)

    2. *The Court's Review*

In the April Order, the court considered the plain language of Paragraphs 2(b) and 8(b) and concluded that these provisions only required U.S. Bank to initially determine whether an

13

asset could be negotiated and, once that determination was made, they did not necessitate any further action. (*See* ECF No. 303 at 29 ¶ 52–31 ¶ 63.) Accident spends a signification portion of its Motion and Reply arguing that the definition of the term "negotiable" should have been determinative of whether U.S. Bank breached these provisions.

Upon its consideration, the court observes that even if it erred in how it defined negotiability, the error was harmless because it does not change the ultimate resolution of this issue in U.S. Bank's favor. *See Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 738–39 (Del. 2006) (observing that a failure to "look to dictionaries for assistance in determining the plain meaning of terms which are not defined in a contract" is harmless if the correct definition fails to change the outcome). Ultimately, the court found in the April Order that the issue of negotiability lacks such significance because neither Paragraph 2(b) nor 8(b) specified required actions for U.S. Bank to take if the asset was determined to not be negotiable. (*See* ECF No. 303 at 31 ¶¶ 60–62.) Accident argues that U.S. Bank had an obligation to refuse acceptance of an asset lacking in negotiability, but the court determined that a plain reading of the Trust Agreement did not support that conclusion. *See* Lorillard, 903 A.2d at 730 ("When interpreting a contract, the role of a court is to effectuate the parties' intent. In doing so, we are constrained by a combination of the parties' words and the plain meaning of those words where no special meaning is intended."). Even after consideration of Accident's impassioned arguments, the court is not persuaded that it committed error in finding that U.S. Bank did not breach Paragraphs 2(b) and 8(b) of the Trust Agreement.

D.  <u>The April Order's Legal Conclusions Should Be Amended To Reflect Evidence Demonstrating U.S. Bank's Breach Of Paragraph 3(b) Of The Trust Agreement</u>

   1. *The Parties' Arguments*

Accident contends that the court erred in failing to find that U.S. Bank breached the

duties imposed by Paragraph 3(b) of the parties' Trust Agreement.  (ECF No. 305 at 14.)  To this point, Accident argues that U.S. Bank failed to "'immediately' take 'any and all' steps toward transfer [of assets to Accident] after receiving a withdrawal notice." (*Id.* at 15.)

U.S. Bank asserts that "[t]here was no error" in the April Order regarding a breach of Paragraph 3(b) because there was ample evidence to support the court's finding that U.S. Bank's actions were affected by "Accident's continuing failure to contact Southport as U.S. Bank requested." (ECF No. 308 at 11, 12.)

    *2. The Court's Review*

In the April Order, the court ultimately found "that the greater weight of the evidence demonstrates that U.S. Bank did take all steps necessary to transfer assets requested in Accident's withdrawal notice." (ECF No. 303 at 33 ¶ 80.)  To reach this conclusion, the court laid out the evidence that supported finding U.S. Bank did not breach Paragraph 3(b) of the Trust Agreement. (*See* ECF No. 303 at 32 ¶ 69–34 ¶ 81.)  In its Motions, Accident disagrees with the court's assessment claiming that "there was more U.S. Bank could and should have done." (ECF No. 305 at 14.)

Upon its review, the court observes that "[w]hile another fact finder might disagree with the [c]ourt's credibility determinations, the possibility of such disagreement is not a sufficient basis to grant a Rule 52(b) Motion." *Ashraf-Hassan v. Embassy of Fr.*, 185 F. Supp. 3d 94, 111 (D.D.C. 2016).  "Rule 52(b) imposes a 'heavy burden' on the moving party 'to demonstrate clear error.'" *Id.* (internal citation omitted).  Upon consideration of the arguments presented, the court is not persuaded that it committed error in determining that U.S. Bank did not breach Paragraph 3(b) of the Trust Agreement.

15

E.      <u>The April Order's Legal Conclusions Should Be Amended To Find That U.S. Bank Breached Its Fiduciary Duties</u>

    *1. The Parties' Arguments*

Relying entirely on South Carolina law (*see* ECF No. 305 at 20–22), Accident argues that the court erred by not finding that U.S. Bank breached fiduciary duties owed to Accident when it "failed to inform Accident about U.S. Bank's substantial financial ties to Southport entities." (*Id.* at 20.) Accident asserts that U.S. Bank failed to communicate "pertinent and potentially harmful" information and such failure was "not an act of good faith." (*Id.* at 21–22.) Therefore, Accident requests that the "the [c]ourt amend its conclusions of law in light of applicable South Carolina law on fiduciary duty to recognize U.S. Bank's failure in their duty of candor to communicate crucial information known by U.S. Bank while administering the trust." (*Id.* at 22.)

U.S. Bank responds to Accident's arguments by first pointing out the "extensive evidence" presented at trial that demonstrates "there was nothing to disclose about any purported 'conflict of interest'" based on U.S. Bank's relationship with Southport entities. (ECF No. 308 at 16–17.) U.S. Bank next argues that under the law of either South Carolina or Delaware, "[t]here was no error, much less clear error" resulting from the court weighing the evidence presented and finding that U.S. Bank did not breach any fiduciary duty. (*Id.* at 17 (citations omitted).)

    *2. The Court's Review*

The premise of this assertion of error by Accident is that the court should have applied South Carolina law to its claim for breach of fiduciary duty. As explained above, the court believes it correctly ruled that Delaware law was applicable to Accident's claim for breach of fiduciary duty. Therefore, because it is not persuaded that it applied the wrong law to Accident's

16

claim for breach of fiduciary duty, the court finds that Accident is not entitled to relief under Rules 52 and/or 59 regarding this claim.

F.   The April Order's Legal Conclusions Should Be Amended Regarding Accident's Claims For Breach Of Fiduciary Duty And Negligence/Gross Negligence

*1. The Parties' Arguments*

Accident contends that because the court "found U.S. Bank was aware there were substantive restrictions on transferring Destra UITs" (*see* ECF No. 303 at 31 ¶ 60), the court erred in not concluding that U.S. Bank breached its fiduciary duties and was negligent/grossly negligent. (ECF No. 305 at 23 (citations omitted).) Accident further specifies that U.S. Bank violated its duties "when it accepted assets it knew did not meet the admission threshold stated in the Trust Agreement" and failed "to inform Accident of the restrictions on Destra UITs transfers while knowing that having access to easily transferable assets was Accident's entire purpose for the trust." (*Id.* (citing *Alderman v. Cooper*, 185 S.E.2d 809, 813 (S.C. 1971) (noting negligence claim available against trustee); *McNeil v. McNeil*, 798 A.2d 503, 509 (Del. 2002) ("Generally, a trustee must act as the reasonable and prudent person in managing the trust")).)

U.S. Bank opposes this specific argument reiterating that the court did not err because pursuant to the Trust Agreement, "U.S. Bank was entitled to follow and rely on the instructions of Dallas National's authorized signers." (ECF No. 308 at 20 (citation omitted).)

*2. The Court's Review*

In this assertion of error, Accident argues that as a result of one (1) specific finding regarding Destra UITs, the court should have reached a different conclusion regarding Accident's claims for breach of fiduciary duty and negligence/gross negligence. This argument completely disregards the specific analysis conducted by the court regarding the viability of these claims under Delaware law when they are duplicative of other claims. (*See* ECF No. 303

17

at 40 ¶ 123–45 ¶ 157.)  The court does not find any merit in this argument and is persuaded it is the type of claim deemed inappropriate under Rules 52 and 59.  *See Stogsdill*, 2015 WL 3396821, at *1 ("It is not the intention or purpose of Rules 52(b) and 59(e) to . . . give an unhappy litigant one additional chance to sway the judge. (citation omitted)).

G.  The April Order's Findings Of Fact And Conclusions Of Law Should Be Amended As To Accident's Damages

   *1. The Parties' Arguments*

Accident asserts that the April Order does not "properly reflect the evidence presented at trial," and, therefore, the court "should amend its findings of fact and conclusions of law, credit Mr. Strickland's expert testimony as credible, and award Accident actual damages on its contract, fiduciary duty, and negligence/gross negligence claims" in the amount of $7,207,963. (ECF No. 305 at 23, 24.)

U.S. Bank disagrees arguing that the April Order was "free of clear error" and Accident's arguments "ignore[] entirely the extensive evidence on mitigation and damages that U.S. Bank presented at trial, including the testimony of multiple experts, which would reduce any award to zero." (ECF No. 308 at 20.)

   *2. The Court's Review*

Under Rules 52(b) and Rule 59(e), the court has discretion and need not grant a motion unless there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.  *See* Fed. R. Civ. P. 52(b), 59(e). Accident does not rely on an intervening change of law or the availability of new evidence to support its claim for an amended damages amount.  Thus, the court must only determine whether it needs to correct a clear error or prevent manifest injustice.

In the April Order, the court awarded Accident $0 in damages.  (*See* ECF No. 303 at 51 ¶

188.) Above, the court considered, but found not meritorious, Accident's claims that the court erred in finding for U.S. Bank on Accident's claims for breach of fiduciary duty, negligence/gross negligence, negligent misrepresentation, and civil conspiracy. Therefore, the court is not persuaded that it should amend the Judgment of $0 in damages resulting from the April Order.

## IV.     CONCLUSION

For the foregoing reasons, the court **DENIES** Accident Insurance Company, Inc.'s Motion for a New Trial, Motion to Amend the Court's Finding of Facts and Conclusions of Law, and Motion to Alter or Amend Judgment. (ECF No. 305.)

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

March 31, 2021
Columbia, South Carolina